Andrew L. Deutsch   **JUDGE CASTEL**
Christine M. Jaskiewicz
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone (212) 335-4500
Facsimile (212) 335-4501

Attorneys for Plaintiff
The Associated Press

## 08 CV 00323



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

THE ASSOCIATED PRESS,                              07 Civ. _____

                           Plaintiff,        :

     - against -                             :     **COMPLAINT**

ALL HEADLINE NEWS CORP., AHN MEDIA            :    **Trial by Jury Demanded**
CORP., W. JEFFREY BROWN and DANIELLE          :
GEORGE,                                       :

                           Defendants.        :

------------------------------------------------------------- x

      Plaintiff, The Associated Press ("**AP**"), by its attorneys, DLA Piper US LLP, for its

complaint against defendants All Headline News Corp., AHN Media Corp. (collectively,

"**AHN**"), W. Jeffrey Brown ("**Brown**"), and Danielle George ("**George**") (collectively,

"**Defendants**"), hereby alleges as follows:

**Nature Of This Action**

     1.    This is an action for: (i) "hot-news" misappropriation under New York State

common law; (ii) copyright infringement in violation of 17 U.S.C. §§ 101 and 501 *et seq.*; (iii)

improper removal or alteration of copyright management information in violation of 17 U.S.C.

§§ 1202 *et seq.*; (iv) infringement of AP's registered trademarks in violation of Section 32 of the

Lanham Act, 15 U.S.C. § 1114; (v) violation of Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a); (vi) unfair competition under New York State common law, and (vii) breach of

contract.

2.     AP is one of the world's oldest and largest news organizations.  AP, directly and

through its subsidiaries and affiliates, spends hundreds of millions of dollars each year to employ

journalists, editors and technical personnel to get access to news and to gather. report, package

and transmit news stories from every country in the world.  Clients of AP's news services

include thousands of U.S. newspapers, magazines and broadcasters, Internet services such as

news portals and distributors, corporate news and information services providers and media

outlets and distributors in 112 other countries.  AP makes it news services available directly and

through its subsidiaries and affiliates.  AP's news stories are considered the "gold standard" of

objective journalism.

3.     In recent years, with the growth of the Internet as a new medium, AP has licensed

its clients to place AP's news stories on their own Internet Web sites, and these sites attract

millions of viewers each day.  Those stories contain an AP byline.  In addition, AP requires its

clients to include, in the terms of service of their Web sites, a clear notice to users that AP

material may not be published, broadcast, rewritten for broadcast or publication or redistributed

directly or indirectly in any medium.

4.     On information and belief, Brown is the chief executive officer and sole owner of

AHN and George is the managing editor of AHN.  AHN calls itself a "news service."  However,

on information and belief, AHN has no reporters and is simply a vehicle for copying news

reports and misappropriating news gathered and reported by real news services such as AP.

5.     On information and belief, Defendants hire poorly paid individuals and instruct

them to "surf the Web" and copy breaking news stories from Internet news Web sites.  On

information and belief, Defendants direct these individuals to quickly prepare news stories for AHN's "news service" by either copying news stories found on the Internet or rewriting such stories. On information and belief, Defendants instruct these individuals to disguise the fact that the rewritten stories are not original to or licensed by AHN by deleting the copyright and other identifying information contained in the original stories. On information and belief, AHN then resells the copied or rewritten news stories in competition with AP and other legitimate news services to a base of clients that include newspapers, Internet Web portals, Internet Web sites, digital signage networks, and other redistributors of news content. On information and belief, AHN also displays many of these copied or rewritten stories on its own Web site.

6.    On information and belief, many of the stories that are copied or rewritten by AHN's employees are authored by AP's experienced journalists and editors. The time-sensitive news in those stories has been gathered through AP's substantial investment in its journalistic infrastructure and processes, and AP owns the copyright in those stories.

7.    On information and belief, when copying or rewriting AP stories, AHN often omits any attribution to AP, thus deceiving its clients and readers into believing that those stories were independently reported by AHN employees. In some instances, AHN cites AP as a source, thus falsely suggesting that it is licensed by AP to redistribute AP news stories.

8.    By systematically copying, rewriting, displaying and redistributing AP's news stories without AP's permission, Defendants are willfully infringing AP's copyrights in those stories. In addition, Defendants are free-riding on the substantial investment and effort that AP makes in generating accurate, time-sensitive news reports, and using those reports to operate a "news service" that directly competes with AP's own news service. This constitutes illegal "hot-news" misappropriation under New York State common law.

- 3 -

9.      Defendants are also intentionally altering or removing copyright management information appearing in AP reports, in violation of the Digital Millennium Copyright Act.

10.     Defendants are also infringing upon AP's federally registered trademarks by using AP's registered trademark in connection with the sale and offering for sale of the AHN "news service," thereby causing confusion and mistake among the clients and potential clients of the AHN "news service." They are also violating Section 43(a) of the Lanham Act and New York's common-law prohibition against unfair competition by making false designations of origin and false representations of fact that are likely to cause actual and potential clients and the public to believe that AP has approved and licensed AHN to copy and rewrite AP news reports.

11.     AP seeks an injunction preliminarily and permanently enjoining Defendants from continuing their unlawful and damaging conduct, and following trial, an award of compensatory and punitive damages against Defendants.

**The Parties**

12.     AP is, and, at all times relevant to this complaint has been, a not-for-profit membership corporation, organized and existing under the laws of the State of New York, with its principal place of business located at 450 West 33rd Street, New York, New York.

13.     On information and belief, defendant All Headline News Corp. is a privately held corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 2701 Okeechobee Boulevard, West Palm Beach, Florida.

14.     On information and belief, defendant AHN Media Corp. is a privately held corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 2701 Okeechobee Boulevard, West Palm Beach, Florida.

15.     On information and belief, Brown is an individual residing at 922A Honey Tree Lane, Wellington, Florida.

16.     On information and belief, George is an individual residing at 5410 Harriet Place, West Palm Beach, Florida.

17.     On information and belief, AHN has offices and regional bureaus in South Florida, New York, Washington, D.C., Las Vegas, Denver, and Europe and Asia. On information and belief, AHN has an office in this state and district located at 1230 Avenue of the Americas, Rockefeller Center, 7th Floor, New York, New York 10020.

**Jurisdiction And Venue**

18.     This Court has jurisdiction over the subject matter of this action pursuant to (a) 28 U.S.C. § 1331; (b) 28 U.S.C. § 1332, in that this is an action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs; (c) 28 U.S.C. § 1338; and (d) 28 U.S.C. § 1367.

19.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

20.     This Court has personal jurisdiction over each of the Defendants because (a) they do business in this state, (b) they provide and transmit, or offer to provide and transmit, the infringing AHN "news service" to clients and potential clients in this district and state, (c) they provide and transmit the infringing AHN "news service" to Internet Web sites that are run on computer servers located in this district and state, and (d) they distribute and direct the infringing AHN "news service" to users located within this district and state. In addition, it has personal jurisdiction over AHN pursuant to CPLR § 302(a).

**Facts Relevant To All Claims**

**A.     The Business Of AP**

21.     Founded in 1846, AP today is the oldest and largest news agency in the world, serving as the gold standard for news gathering and reporting. On any given day, more than half the world's population sees news from AP. In the United States alone, AP serves more than

5,000 radio and television stations and over 1,700 newspapers. In addition, AP has newspaper, radio, television and other news outlets in 112 foreign countries.

22.     AP employs a news staff that is unparalleled in the news business. It has over 4,000 editorial, communications and administrative employees working worldwide in over 240 bureaus in nearly 100 countries. About 3,000 of AP's worldwide staff are journalists.

23.     AP invests vast resources, including substantial amounts of time, money, effort, talent and creativity, in gathering the news and creating original reports and accounts of the news. These investments are made throughout the world. As stated in an article in the December 2007/January 2008 *American Journalism Review* (Exhibit 1), "For years, the AP has been flying in the face of a prevailing industry trend. While others are pulling out of foreign locales, the wire service has made worldwide expansion part of a master plan for future growth." The article outlines how AP has "doubled its reporting power in China," opened new bureaus in many foreign countries, and has invested millions of dollars to upgrade communications between its bureaus.

24.     AP's investments are not limited to time and money. AP reporters and photographers often put their lives in jeopardy to gain access to and report from dangerous and unstable regions. Thirty-two AP journalists have lost their lives while gathering news since AP was established. Since 2005 alone, more than 19 AP journalists have been incarcerated or otherwise detained, and at least 23 have been harassed, intimidated or beaten.

25.     Access to news is a crucial focus for journalists, who must be present to the greatest extent possible at the moment when news occurs. They must travel quickly to the place where news is expected to happen, overcome any obstacles and endure any hardships or risks required to reach a position where the event may be observed, and be equipped to record and transmit their original material immediately to an AP bureau or editing or distribution center.

Such access may require exercise of great skill, ingenuity and improvisation, or, in some cases

even litigation, in order to evade or overcome resistance by those in control of a news venue.  AP

invests substantial resources, including legal expenses, to make sure that its reporters are able to

gain access to the sources of news, and gather and transmit news.

     26.    As a result, AP has earned the reputation of being an accurate, reliable, balanced

and unique source of news and information, providing original reports and accounts of news.  To

date, AP has received 49 Pulitzer Prizes, the largest number for any news organization for the

categories in which AP can compete.

**B.**    **AP's News Services**

     27.    AP, directly and through its subsidiaries and affiliates, supplies its news services

to its regular members (which includes U.S. newspapers), its associate members (which include

many broadcast media companies) and other persons and entities which are not members of AP,

but which subscribe to one or more of AP's services for publication, aggregation, syndication,

distribution or other authorized purposes.

     28.    There is a great public appetite for news.  As a result, timely, breaking, objective

and accurate news reports are of substantial importance to many businesses, including

newspapers, broadcasters, Internet portals and other Web sites, and proprietors, aggregators,

syndicators and distributors of news services, displays and tickers.  Because the timeliness,

comprehensiveness, quality and reliability of AP news reports is well known, potential users of

these reports have been willing to pay and do pay valuable consideration for licenses to receive

and republish these AP reports.  As a result, AP has licensed, and continues to license, its news

reports to a vast array of customers under a variety of arrangements.

     29.    For example, many media businesses, including newspapers, magazines,

television and radio stations, as well as Internet Web portals and other Web sites, either do not

employ newsgathering or reporting staffs, or only have local reporters. In order to obtain the timely, breaking international, national, state, and local news that their viewers and readers desire to read or hear, those businesses subscribe to a news service such as those provided by AP. Most of these companies subscribe to only one such news service.

30.     AP, either directly or through its subsidiaries and affiliates, provides services to customers under a variety of arrangements. For example, news services may be offered for consideration on a subscription basis, or on a single transaction or a la carte basis. For example, and without limitation, AP provides its copyrighted and proprietary works to licensees through services known as AP NewsBriefs, AP Alerts, AP Topic Reports, AP Online and AP Hosted Custom News.

31.     Members and associate members ("**AP Members**" or "**Members**") and others may subscribe to various services provided by AP and its subsidiaries and affiliates through which AP delivers news, information, and original reports and accounts gathered and authored by AP. AP Members and subscribers include U.S. newspaper and broadcast members of the AP news cooperative, non-U.S. news agencies and newspapers, and commercial subscribers, including, without limitation, search engines, online portals, online news services, owners of news tickers and displays, online service providers of other kinds and news aggregation services that serve corporations, professional services firms and information service providers. AP Members and subscribers pay a fee to AP for delivery and a license to use these services. AP Members and subscribers are also required to sign agreements that limit the uses they may make of the news, information, reports and accounts provided by AP.

32.     When transmitted by AP to its Members and subscribers, each AP story contains copyright management information, as that term is defined in 17 U.S.C. § 1202(c), including identification of AP as the author and/or copyright owner of the story, and symbols, such as

"AP," which refer to such information. This information ordinarily appears in AP stories when they are republished or redisplayed by AP Members and subscribers.

33.     In addition, where AP material is republished by an AP licensee on its Web site, AP requires that licensee to insert a notice to users of the Web Site that the AP material on the Web site may not be published, broadcast, rewritten for broadcast or publication or redistributed directly or indirectly in any medium. This notice and condition is intended for the protection of AP's proprietary rights in its news stories and other material carried on the licensee Web site.

34.     To meet the needs of its clients and potential clients, AP has invested significant amounts to develop an unequalled state-by-state and country-by-country newsgathering infrastructure (the "**AP Bureaus**") that allows AP to provide a continuous stream of individual stories, news reports and summaries of current state, regional, national and international news and information taking place anywhere in the world (the "**AP Wires**"). Furthermore, the AP Bureaus provide the input and initial editing of a significant amount of material for the AP Wires.

35.     AP Members and subscribers can choose to receive the full news-stream carried on the AP Wires, or, to receive only certain segments of the news-stream. The consideration received from licensees will vary depending on various licensing factors.

36.     The revenue that AP receives from licensing its news text, photo, audio, video and graphics is used to expand and enhance AP's news gathering activities, news reporting capabilities and news distribution services that AP provides to all AP Members, subscribers and other licensees.

37.     AP gathers, reports and transmits news through the AP Wires on a continuous basis – 24 hours a day, 365 days a year. The news reports are delivered to AP Members and

subscribers via a variety of means such as satellite link and password-protected Internet connection.

38.     AP creates many of the dispatches transmitted in the AP Wires from news and information gathered by AP reporters: (1) assigned to AP Bureaus located in each particular state; (2) working in AP's Washington, D.C., bureau where news concerns federal governmental action affecting the state; or (3) working in AP Bureaus abroad where international news may be of interest in a particular state.  The texts of these dispatches are the product of the creative expression of AP's reporters and editors and of their creative organization and selection of the facts unearthed by the reporters.

39.     The remainder of the dispatches transmitted in the AP Wires are created by AP reporters and editors on the basis of news of spontaneous origin furnished by AP Members under the news cooperative's arrangements with the AP Members.  In these instances, while AP reporters and editors start with the information provided by AP Members (often supplemented by AP's reporting, editing, fact-checking and other follow-up), the text of the AP dispatches is almost always the result of the creative expression of AP's personnel and their own organization and selection of the facts.

40.     The editing process for text reports at AP begins with the assignment of a story to a reporter and continues until the story's distribution.  It includes consultations between editor and reporter on how the assignment should be handled and how the story should be written. Reporters may be asked several times to gather additional facts and to re-draft a story before the editor is satisfied that it is as complete and well executed as possible.  AP's editors must also make rapid decisions on the selection, arrangement, style and presentation of the information contained in a story written by an AP reporter, and make sure that it conforms with AP's editorial policies and the authoritative *The Associated Press Stylebook*.  Editors then conduct

additional reviews for completeness, balance and accuracy before releasing the story for distribution.

41.     Thus, all of AP's news reports are original and creative works created through significant economic, professional, and personal investment, expense, and sacrifice by AP.

**C.     AP's Registered Copyrights And Trademarks**

42.     AP has registered its copyrights in some of its news reports and images with the U.S. Copyright Office.  For example, all of AP's news reports and images transmitted on the AP Wires for the following dates have been registered with the Copyright Office under the Copyright Registration Certificates indicated below (the "**Copyrighted Works**"):

| | |
|---|---|
| September 28, 2007 | TX 6-814-000 |
| September 29, 2007 | TX 6-814-030 |
| September 30, 2007 | TX 6-814-026 |
| October 11, 2007 | TX 6-814-023 |
| October 15, 2007 | TX 6-814-009 |

True copies of these Copyright Registration Certificates are attached as Exhibits 2-6.

43.     AP holds many United States Trademark Registrations, including but not limited to the following marks for goods and services, and has continuously used those marks in interstate commerce from the first use in commerce date shown in said registrations through and including the date of this complaint:

| Mark | Goods/Services | Date of Registration | Registration Number |
|---|---|---|---|
| AP | News reports and news dispatches | 8/27/63 | 755,564 |
| AP | News agency services providing news reports, photographs, dispatches, newspaper features, broadcast features, and press releases | 7/24/84 | 1,287,428 |
| ASSOCIATED PRESS | News agency services providing news reports, photographs, dispatches, newspaper features, broadcast features, and press releases | 5/14/85 | 1,336,023 |
| THE ASSOCIATED PRESS | News stories and news photographs | 1/23/45 | 411,547 |

True copies of the registration certificates are attached as Exhibits 7-10.

    **D.**    **The AHN "News Service"**

    44.    Defendant AHN claims to be a news and content syndication and distribution corporation headquartered in Wellington, Florida. On information and belief, Brown is the chief executive officer and sole owner of the AHN entities, and George is employed as the "managing editor" of AHN.

    45.    AP and AHN entered into a contract in December 2003 under which AHN was to receive AP's Online News Briefs service (the "**Contract**"). A true copy of the Contract is attached as Exhibit 11.

    46.    Under the terms of the Contract, for a fee of $500 per month, AHN was permitted to use the first two paragraphs of stories located on AP Online. AHN's rights were expressly limited to the right to republish these paragraphs on its www.allheadlinenews.com Web site (the "**AHN Web Site**").

47.     Despite the limitations of use set forth in the Contract, AHN repeatedly used more content than was permissible under the Contract, and improperly used stories for distribution outside the AHN Web Site, including syndicated feeds.

48.     As a result, AP terminated the Contract on March 31, 2005.

49.     Under the Contract, there is due and owing from AHN to AP the unpaid balance of $4,198.84.

50.     Since March 31, 2005, AHN has not been licensed to make any use of AP content.

51.     On the AHN Web Site, AHN claims that it sells news services worldwide to (i) Web sites, including Internet portals, (ii) newspapers, (iii) digital signage networks, (iv) TV/radio stations, (v) magazines, (vi) charities, (vii) governmental entities, and (viii) educational institutions.  AP sells its news services to, and seeks new customers for its news services from, the same customer base.

52.     AHN markets its news and content service on the AHN Web Site as "The news and content you want, in the format that you need, at a price that you can afford."

53.     On information and belief, Defendants do not employ any reporters or news gatherers to conduct newsgathering services on AHN's own behalf.  Instead, Defendants recruit "writers" ("**AHN Writers**") by posting advertisements on, among other places, the job bulletin boards of journalism schools and on the AHN Web Site.

54.     On information and belief, Defendants instruct AHN Writers to use their personal computers from their homes or work sites to "surf the Web" and locate breaking, "hot" news stories that are published on legitimate and authorized news Web sites.  Many of these stories originate with AP and are carried on the Internet Web sites of AP customers, pursuant to licenses from AP as described above.  Reuse of these stories is restricted or prohibited by the terms of

- 13 -

service of those Web sites as alleged in Paragraph 33 hereof.  On information and belief, Defendants instruct the AHN Writers to copy these stories and then rewrite them, using the same news content as in the originals.  On information and belief, the AHN Writers are instructed by Defendants to copy portions of the original stories or paraphrase the originals by rewriting the stories using the news content of the originals.  On information and belief, where an original story is copied in whole or part, the AHN Writers are told by Defendants to attribute the directly-copied portion to the original source (except for Reuters), but are expressly instructed not to attribute to the original source parts of stories that are paraphrased or rewritten.

55.    As a result of Defendants' instructions, when AHN carries a story on its "news service" that has been copied or rewritten from an AP story, the AHN story intentionally omits the copyright management information contained in the original AP story.

56.    On information and belief, AHN Writers do no independent research and newsgathering in preparing news stories, and typically prepare ten to fifteen stories a day from news stories copied or rewritten from the Internet.  On information and belief, after an AHN Writer has prepared a story by copying or rewriting an original, he or she uploads it to AHN, where it is copied onto the servers and caches of AHN's computers.  On information and belief, the story is then reviewed by an AHN "editor," who typically makes no changes to the content of the story but simply corrects typographical and grammatical errors.  On information and belief, the stories are then aggregated by AHN into a news feed which it then distributes to its customers and displayed and/or distributed via AHN's servers.

57.    On information and belief, stories are posted by AHN on the AHN Web Site and are distributed by AHN to its own customers for republication within approximately fifteen minutes of being uploaded to AHN by AHN Writers.  On information and belief, the stories carried on AHN's "news service" regularly appear in the publications, broadcasts, Web sites, and

displays of AHN's customers at the same time that the AP stories from which the AHN Writers originally copied or rewrote appear in the publications, broadcasts, Web sites, and displays of AP Members and subscribers. Thus, the AHN "news service" competes directly with AP and other legitimate news services.

58.     As alleged above, AHN has not held a license from AP to make use of AP services since March 31, 2005. Nevertheless, on information and belief, after that date, Defendants have falsely told AHN Writers that AHN has a license from AP to copy, rewrite, display, and republish material carried on the AP Wires. On information and belief, the AHN Writers are further falsely told by Defendants that because the AHN Writers cannot obtain access to AHN's licensed AP Wires feed by virtue of their working remotely, the AHN Writers are to obtain AP material by copying stories from AP Member and subscriber Web sites and that such copying is legally permissible. In addition, on information and belief, Defendants have falsely told AHN Writers that it is legally permissible for them to (a) copy portions of any published news story verbatim if the originator of the published story is credited, and (b) create stories for AHN by systematically copying the news content of published news stories and rewriting or paraphrasing the original stories without crediting the news service that created the original stories. As a result of these instructions, AHN Writers, acting under the direction and control of Defendants, and/or Defendants themselves systematically remove or alter the identification of AP as author and copyright owner contained within the original AP stories.

59.     Moreover, on information and belief, Defendants pay AHN Writers wages which are substantially less than the pay of reporters in the United States, and in fact have often failed to pay the AHN Writers wages which are due to them. In addition, on information and belief, because U.S.-based AHN Writers have repeatedly complained to the Defendants and government authorities about Defendants' failure to pay them wages due, AHN is now recruiting new AHN

Writers in the Philippines and Malaysia, where wage rates are lower still.  As a result of maintaining no real reporting staff and underpaying or not paying AHN Writers, AHN has a cost of doing business which is far less than any legitimate news service, including AP.

60.    On information and belief, Defendants have deceived and caused confusion among the customers and potential customers of AHN by, among other things, (a) representing to them that news stories supplied by AHN originate with the "news division" of AHN, when in fact AHN does no original reporting and the stories carried on the AHN "news service" are copied or rewritten from AP and other third-party news reports published on the Internet, (b) concealing the actual origin of the news carried on the AHN "news service" by systematically deleting copyright management information from the original reports that identify the source of the information, and (c) representing, in words or substance, that AHN has permission to commercially republish and redistribute reports from AP, when in fact AHN has had no such permission since March 31, 2005.

**E.    Defendants' Infringements Of AP's Copyrights**

61.    AP owns copyright registrations for each of the Copyrighted Works.

62.    Included within the Copyrighted Works are the following AP news stories (the "AP Stories"):

- Ahmadinejad Invites Bush to Speak At A University If He Vistits Iran Sometime. (registered within TX 6-814-000);

- Sri Lankan Military Says it Sank 3 Tamil Tiger Boats In Lengthy Sea Battle. (registered within TX 6-814-000);

- AOL To Cut 2,000 Jobs, Including 1,200 in U.S., As It Transforms Into Online Ad Company.  (registered within TX 6-814-009);

- 8 Foot Alligator That Killed Elderly Woman Captured In Georgia Pond Police Say. (registered within TX 6-814-023);

- Surrogate Mother Gives Birth To Her Own Twin Grandchildren. (registered within TX 6-814-026);

- Inspection Squads To Seek Out Dirty Toilets In Malaysian State's Tourist Spots. (registered within TX 6-814-030).

True copies of the AP Stories are attached as Exhibits 12-17.

63.    On information and belief, AP Members and subscribers, acting under license from AP, have copied, transmitted, and caused to be displayed the AP Stories on their Internet Web sites, from which they can be read and copied by anyone using an Internet browser program.

64.    On information and belief, AHN Writers, acting under the direction and control of Defendants and without the permission of AP or AP Members or subscribers, have accessed the AP Stories carried on AP Member and subscriber Web sites, copied some or all of the expression contained within said AP Stories, and incorporated that copied expression in stories prepared for the AHN "news service." On information and belief, the AHN Writers have then transmitted those stories to AHN, where they have been copied and stored on AHN's computers. On information and belief, AHN has then further copied the stories, prepared edited versions thereof, transmitted the stories as edited to customers of AHN, and has caused the stories to be displayed on the AHN Web Site. On information and belief, customers of AHN have copied the stories and caused them to be displayed in a variety of media, including Internet Web sites and signage. True copies of AHN's stories taken from the AP Stories are attached as Exhibits 18-23.

65.    On information and belief, through similar acts and practices, Defendants have similarly infringed or caused to be infringed AP's copyrights in AP news stories hundreds if not thousands of times.

66.    The acts of Defendants, as described above, constitute willful infringement of AP's copyrights in the Copyrighted Works and intentional removal or alteration of copyright management information from the Copyrighted Works.

**F.    Defendants' Misappropriation Of AP "Hot-News" Content**

67.    The AHN "news service" is in reality a means for Defendants to free-ride on the investments of AP and others in gathering and reporting timely news.  AP's charges to AP Members and subscribers for its news services reflect the cost of developing and maintaining a substantial worldwide newsgathering, reporting and distribution infrastructure and process.  However, on information and belief, Defendants do not maintain any newsgathering infrastructure and engage in no independent reporting.  As alleged above, Defendants pay the AHN Writers low or no wages to copy news reports from Internet Web sites, and are now "off-shoring" preparation of AHN news stories to the Philippines and Malaysia at even lower wage rates.  As a result, on information and belief, Defendants are able to offer their "news service" to customers and potential customers at a price that is far lower than AP can offer for its services.

68.    Defendants' improper conduct, as alleged above, is likely to usurp AP's business relationships and opportunities.  AHN's "news service" directly competes with AP's own services.  Both services are sold to the same potential customer base.  Most customers of a news service only carry one service.  When a company or entity decides to subscribe to AHN's "news service," this effectively excludes AP from selling its service to that company or entity.

69.    Defendants' use of AP's news content free-rides on AP's costly efforts to gather information and create, edit and transmit news reports.  If Defendants are not enjoined from

misappropriating AP's efforts and investments in this manner, the acts of Defendants and other free-riders will so reduce AP's incentive to gather and report the news that the existence and/or quality of the news services that AP provides to AP Members, subscribers and other licensees, and thereby to the public, will be substantially threatened.

## FIRST CAUSE OF ACTION
### ("Hot-News" Misappropriation Under New York Common Law)

70.    AP repeats and realleges each and every allegation in Paragraphs 1 through 69 of this complaint as if fully set forth herein.

71.    AP collects and gathers newsworthy information, creates and edits its news reports, and transmits its news reports at substantial economic, professional and personal cost.

72.    The value of the newsworthy information that AP gathers, reports and transmits is highly time sensitive.

73.    Defendants' use of AP news stories containing the news that AP gathers, reports and transmits, as described above, constitutes free-riding on AP's significant and costly efforts to collect, report and transmit newsworthy information.

74.    Defendants use AP news stories to create a "news service" which is sold to the same customer base for AP's own news services.  As a result, Defendants' "news service" directly competes with AP's own news services.

75.    If Defendants and others are allowed to continue their free ride on AP's significant and costly efforts to gather, report and transmit newsworthy information, the incentives for AP to produce its news services will be substantially reduced, and this will in turn jeopardize the quality and/or existence of AP's news services.

76.    Defendants' acts, as alleged above, constitute "hot-news" misappropriation under the common law of New York State.

77. As alleged above, Defendants have acted in bad faith, maliciously, willfully, wantonly, and without due regard for AP's rights.

78. AP is entitled to recover compensatory damages and punitive damages, in an amount to be determined at trial, for Defendants' "hot-news" misappropriation.

79. Defendants' acts of "hot-news" misappropriation are causing, and, unless restrained by this Court, will continue to cause, irreparable injury to AP not fully compensable in monetary damages. AP is entitled to a preliminary and permanent injunction enjoining Defendants from further acts of "hot-news" misappropriation.

## SECOND CAUSE OF ACTION
### (Copyright Infringement)

80. AP repeats and realleges each and every allegation in Paragraphs 1 through 79 of this complaint as if fully set forth herein.

81. AP is the sole proprietor of all right, title and interest in and to the copyrights of each of the Copyrighted Works. As provided by 17 U.S.C. § 106, AP has the exclusive right to reproduce, redistribute, display, and prepare derivative works from the Copyrighted Works.

82. As alleged above, Defendants have infringed AP's copyrights in each of the Copyrighted Works, by (i) unlawfully reproducing, transmitting, and displaying, and causing and inducing others to reproduce, transmit, and display, substantial portions of the expressions contained within the Copyrighted Works, without the permission of AP, and (ii) creating, and causing and inducing others to create, derivative works which incorporate or are based upon the expressions contained within the Copyrighted Works and reproducing, transmitting, and displaying, and causing and inducing others to reproduce, transmit, and display, such derivative works, all in violation of AP's exclusive rights under 17 U.S.C. § 106.

83.    Defendants' infringements were and are willful, were and are executed with full knowledge of AP's copyrights, and were and are committed in conscious disregard for AP's exclusive rights in the Copyrighted Works.

84.    AP is entitled to recover from Defendants the profits made by them from infringements of the Copyrighted Works and AP's damages therefrom, or, at AP's election, statutory damages pursuant to 17 U.S.C. § 504.

85.    AP is also entitled to recover costs and attorneys' fees from Defendants pursuant to 17 U.S.C. § 505.

86.    Defendants' infringements of copyright have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to AP not fully compensable in monetary damages.  AP is therefore entitled to a preliminary and permanent injunction enjoining Defendants from further infringements of copyright.

## THIRD CAUSE OF ACTION
### (Removal Or Alteration Of Copyright Management Information)

87.    AP repeats and realleges each and every allegation in Paragraphs 1 through 86 of this complaint as if fully set forth herein.

88.    AP includes a credit line to AP in all of its news reports.

89.    The inclusion of AP's name in all of its news reports is "copyright management information," as defined in 17 U.S.C. § 1202(c).

90.    Defendants, without authority of AP or the law, have intentionally removed and/or altered and have caused and induced others to remove and/or alter copyright management information from AP news reports, including the Copyrighted Works, and have thereafter distributed said works, having reasonable grounds to know that such acts will induce, enable,

facilitate or conceal an infringement of copyright under Title 17, United States Code, in violation of 17 U.S.C. § 1202(b)(1) and (3).

91.     Defendants' removal or alteration of copyright management information from AP news reports, including the Copyrighted Works, and subsequent distribution of the reports, including the Copyrighted Works, as alleged above, was and is willful and intentional, and was and is executed with full knowledge of AP's rights under copyright law, and in disregard of AP's rights.

92.     AP is entitled to recover its actual damages suffered as a result of the violation and any profits of Defendants attributable to the violation and not taken into account in computing actual damages, or, at AP's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

93.     AP is entitled to recover costs and attorneys' fees from Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5).

94.     Defendants' violations of 17 U.S.C. § 1202(b)(1) and (3) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to AP not fully compensable in monetary damages.  Pursuant to 17 U.S.C. § 1203(b)(1), AP is entitled to a preliminary and permanent injunction enjoining Defendants from further such violations.

### FOURTH CAUSE OF ACTION
**(Infringement Of Registered Trademark:  15 U.S.C. § 1114)**

95.     AP repeats and realleges each and every allegation in Paragraphs 1 through 94 of this complaint as if fully set forth herein.

96.     AP owns valid and incontestable United States Trademark Registrations in "AP," "ASSOCIATED PRESS," and "THE ASSOCIATED PRESS," as alleged in Paragraph 43 hereof.

97.    Defendants' acts, as alleged above, constitute the use in United States commerce without the consent of AP of a reproduction, counterfeit, copy, or colorable imitation of one or more of AP's registered marks in connection with the sale, offering for sale, distribution or advertising of the AHN "news service," in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

98.    AP is entitled to recover Defendants' profits and three times the actual damages sustained by AP from said violations, as well as the costs of this action.

99.    Defendants' violations of 15 U.S.C. § 1114(1) are willful and intentional and render this case "exceptional" within the meaning of 15 U.S.C. § 1117(a).  AP is therefore entitled to recover its reasonable attorneys' fees incurred in this action.

100.   Defendants' violations of 15 U.S.C. § 1114(1) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to AP not fully compensable in monetary damages.  AP is entitled to a preliminary and permanent injunction enjoining Defendants from further violations thereof.

## FIFTH CAUSE OF ACTION
### (Violation of 15 U.S.C. § 1125(a))

101.   AP repeats and realleges each and every allegation in Paragraphs 1 through 100 of this complaint as if fully set forth herein.

102.   As alleged above, Defendants falsely represent to AHN customers and potential customers, in commercial advertising and promotion, that AHN is legally permitted to receive, transmit, rewrite, republish, and display news content from AP and to license customers of AHN to receive, transmit, rewrite, republish and display such content.

103.   Such representations are false. In reality, Defendants have no license or other permission from AP to receive, transmit, rewrite, republish, or display AP's news reports or license others to do so.

104.   These false and misleading representations are material to the decisions of customers and potential customers to purchase the AHN "news service" rather than AP's news services. Because, as alleged above, AHN maintains no journalistic infrastructure, it has a very low cost of doing business. Thus, it can offer its "news service" to customers at a price that is lower than AP can offer its news service to the same customer. A customer which believes it can purchase the same high-quality AP news reports from AHN at a price that is lower than AP can offer the same news reports is likely to purchase from AHN rather than AP.

105.   Defendants sell the AHN "news service" in interstate commerce and the AHN Web Site is available to users throughout the United States.

106.   Defendants' false and misleading descriptions and representations of fact and false designations of origin in connection with the AHN "news service" are intended to, tend to, and do cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' services in that the public and others are likely to wrongly believe that Defendants' services are provided by AP, or are sponsored by, or approved by, or licensed by, or affiliated with or in some way legitimately connected with AP. In addition, Defendants' false and misleading descriptions and representations of fact and false designations of origin in commercial advertising or promotion of the AHN "news service" misrepresent the nature, characteristics, and qualities of Defendants' services, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

107.    AP has no control over the quality of the services offered by Defendants, and because of the confusion as to the source, origin or sponsorship created by Defendants, the valuable goodwill associated with AP is at the mercy of Defendants.

108.    AP is entitled to recover Defendants' profits and three times the actual damages sustained by AP from said violations, as well as the costs of this action.

109.    Defendants' violations of 15 U.S.C. § 1125(a) are willful and intentional and render this case "exceptional" within the meaning of 15 U.S.C. § 1117(a).  AP is therefore entitled to recover its reasonable attorneys' fees incurred in this action.

110.    Defendants' violations of 15 U.S.C. § 1125(a) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to AP not fully compensable in monetary damages.  AP is entitled to a preliminary and permanent injunction enjoining Defendants from further violations thereof.

## SIXTH CAUSE OF ACTION
### (Unfair Competition Under New York Common Law)

111.    AP repeats and realleges each and every allegation in Paragraphs 1 through 110 of this complaint as if fully set forth herein.

112.    Defendants' (1) false and misleading representations to customers and potential customers that AHN is legally permitted to receive, transmit, rewrite, republish, and display news content from AP and to license customers of AHN to receive, transmit, rewrite, republish and display such content, and (2) concealment from customers and potential customers of the fact that AHN maintains no real reporting staff and that many of the news stories carried on the AHN "news service" are copied or paraphrased from AP stories, constitute unfair competition in violation of AP's rights under New York State common law.

113.    AP has been damaged by such acts of unfair competition.

114.    As alleged above, Defendants have acted in bad faith, maliciously, willfully, wantonly, and without due regard for AP's rights.

115.    AP is entitled to recover compensatory damages and punitive damages, in an amount to be determined at trial, for Defendants' acts of unfair competition.

116.    Defendants' acts of unfair competition are causing, and, unless restrained by this Court, will continue to cause, irreparable injury to AP that is not fully compensable in monetary damages.  AP is entitled to a preliminary and permanent injunction enjoining Defendants from further acts of unfair competition.

## SEVENTH CAUSE OF ACTION
### (Breaches Of Contract)

117.    AP repeats and realleges each and every allegation in Paragraphs 1 through 116 of this complaint as if fully set forth herein.

118.    There is due and owing to AP from AHN, under the Contract, an unpaid balance of $4,198.84, plus contractual interest on the unpaid balance at the lower of one percent per month or the maximum rate permitted by law, from March 31, 2005, which AHN has failed and refused to pay, despite due demand therefor.

119.    On information and belief, the terms of service of the Web sites from which AHN Writers, acting under the direction or control of Defendants, copy and paraphrase AP stories, provide, as a contractual condition for use of those Web sites, that the AP material on the Web sites may not be published, broadcast, rewritten for broadcast or publication or redistributed directly or indirectly in any medium.  Use of such Web sites by users constitutes assent to this contractual condition.

120.    AP is an intended third-party beneficiary of this contractual condition.

121.   On information and belief, Defendants are or should be aware of this contractual condition and are bound thereby.

122.   By directing AHN Writers to copy and rewrite AP stories carried on such Web sites, and by thereafter publishing, broadcasting, rewriting for broadcast or publication and redistributing such AP stories directly or indirectly, without the consent of AP, Defendants have breached this contractual condition, to AP's damage.

123.   AP is entitled to recover compensatory damages for such breaches, in an amount to be determined at trial.

124.   Defendants' breaches of contract are causing, and, unless restrained by this Court, will continue to cause, irreparable injury to AP that is not fully compensable in monetary damages.  AP is entitled to a preliminary and permanent injunction enjoining Defendants from further breaches of contract.

WHEREFORE, AP demands judgment against Defendants as follows:

a.   Preliminarily and permanently restraining Defendants from (i) misappropriating AP's "hot-news" content; (ii) infringing AP's copyrights; (iii) removing or altering AP's copyright management information; (iv) infringing AP's registered trademarks; (v) violating Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (vi) committing further acts of unfair competition against AP; and (vii) committing further breaches of contract regarding the publishing, broadcasting, rewriting for broadcast or publication and redistributing AP material directly or indirectly, without the consent of AP;

b.   Ordering Defendants to delete all copyrighted materials owned by AP and AP news reports from computers under Defendants' control;

      c.      Awarding AP its actual damages (with respect to the First, Second, Third, Sixth and Seventh Causes of Action) and three times its actual damages (with respect to the Fourth and Fifth Causes of Action), in an amount to be determined at trial;

      d.      Awarding AP the profits made by Defendants attributable to their violations to the extent not taken into account in computing AP's actual damages;

      e.      Awarding AP, on its First and Sixth Causes of Action, punitive damages, in an amount to be determined at trial;

      f.      Awarding AP its costs of this action, including reasonable attorneys' fees;

      g.      Directing Defendants to file with this Court within 30 days after the entry of final judgment a written statement, under oath, setting forth in detail the manner in which they have complied with the Judgment of the Court; and

      h.      Awarding AP such other and further relief which this Court deems just, proper and equitable.

Dated:    New York, New York
           January 14, 2008

DLA PIPER US LLP

By: _____
      Andrew L. Deutsch
      Christine M. Jackiewicz
1251 Avenue of the Americas
New York, New York 10020
Telephone (212) 335-4500
Facsimile (212) 335-4501
andrew.deutsch@dlapiper.com

*Attorneys for Plaintiff*
*The Associated Press*