Eric A. Prager (EP-0964)
Atul R. Singh (AS-0873)
Robert L. Jacobson
DARBY & DARBY P.C.
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:  212.527.7700
Facsimile:  212.527.7701
Email:  eprager@darbylaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THE ASSOCIATED PRESS,                         :
                                              :
                    *Plaintiff*,              :        No. 1:08-CV-000323 (PKC)
                                              :              ECF CASE
          v.                                  :
                                              :
ALL HEADLINE NEWS CORP., ET AL.,              :
                                              :
                    *Defendants*.             :
------------------------------------------------------------x

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS
# UNDER FEDERAL RULE OF CIVIL PROCEDURE 12

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................................1

II.     STANDARD OF LAW............................................................................................2

III.    ARGUMENT ..........................................................................................................3

        A.      Misappropriation (Count I).........................................................................3

                1.      Florida Substantive Law Controls the State Law Claims ...........3

                2.      Florida Does Not Recognize a Cause of Action for
                        "Misappropriation" under the Facts as Pleaded..........................7

        B.      Trademark Infringement and False Designation of Origin (Counts
                IV, V and VI) ............................................................................................10

                1.      "Citing AP as a Source"...........................................................10

                2.      "Omission of Attribution".........................................................12

        C.      Digital Millennium Copyright Act (Count III) .........................................15

        D.      Breach of Contract (Count VII) ................................................................17

        E.      The Complaint Fails to Allege Any Basis for Individual Liability
                Or Personal Jurisdiction Against Defendants Brown and George.......................18

                1.      No Individual Liability ..............................................................18

                2.      No Personal Jurisdiction ...........................................................19

IV.     CONCLUSION.....................................................................................................21

## I.    INTRODUCTION

This case is an attempt by Plaintiff Associated Press to crush by weight of litigation a small company that it views as a competitor in the business of online news distribution.  Most counts of the Complaint simply fail to state a claim upon which relief can be granted.  The remaining claims will fall after discovery.

The Complaint alleges that Defendants have provided a news service in which they have written *their own news articles* based on facts first reported by Plaintiff.  The fundamental premise of copyright law is that the law protects only specific copyrighted expression, not the facts that underlie the expression.  "That there can be no valid copyright in facts is universally understood.  The most fundamental axiom of copyright law is that 'no author may copyright his ideas or the facts he narrates.'"  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344-45 (1991) (quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 556 (1985)).  The Supreme Court and Congress have determined that unless specific expression is protected under copyright law, free competition is favored over exclusionary rights.

Ninety years ago in International News Service v. Associated Press, 248 U.S. 215 (1918), the Supreme Court emphasized that news articles reported facts and therefore were entitled to limited protection under copyright law.  It specifically held that the defendant's conduct in copying facts from the plaintiff and using them as the basis for its own rewritten news articles *did not constitute* copyright infringement.  Id. at 233-35.  "The news element – the information respecting current events contained in the literary production – is not the creation of the writer, but is a report of matters that ordinarily are publici juris; it is the history of the day."  Feist, 499 U.S. at 353-54 (quoting International News Service, 248 U.S. at 234).  At the same time, the Court took the view that news articles could – under the law of unfair competition – receive

protection not only for their expression but also, under limited circumstances, for their facts. <u>See</u> <u>International News Service</u>, 248 U.S. at 234-46.

Today, it is beyond dispute that facts, including reporting on current events in news articles, cannot be protected under copyright law. "The same is true of all facts — scientific, historical, biographical, and news of the day. 'They may not be copyrighted and are part of the public domain available to every person.'" <u>Feist</u>, 499 U.S. at 348 (quoting <u>Miller v. Universal</u> <u>City Studios, Inc.</u>, 650 F. 2d 1365, 1368 (5th Cir. 1981)). "This result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art." <u>Id.</u> at 350.

Even Plaintiff appears to recognize that its theory of copyright infringement is flawed, as Plaintiff undertakes to recast the facts under a variety of additional theories of tort and contract liability. In Count I, Plaintiff alleges a theory of so-called "misappropriation" of public facts under New York tort law. In Count III, Plaintiff alleges a theory under the Digital Millennium Copyright Act. In Counts IV through VI, it alleges various causes of action under trademark law. In Count VII, it alleges breach of a contract to which no Defendant currently before the Court is a party. The core copyright infringement claim in Count II can be addressed following discovery; there is no basis, however, to retain the other causes of action; they should be dismissed under Rule 12(b)(6) for the reasons stated below.

## II.    STANDARD OF LAW

"On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." <u>Novak</u> <u>v. Scarborough Alliance Corp.</u>, 481 F. Supp. 2d 289, 291 (S.D.N.Y. 2007); <u>see also</u> <u>Erickson v.</u> <u>Pardus</u>, 127 S. Ct. 2197 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint"). "Dismissal is proper if,

accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (quotations and citations omitted). "In addition to the facts set forth in the complaint, as noted, the Court may also consider documents attached to the complaint or incorporated by reference into the complaint, as well as matters of public record." Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 399 (S.D.N.Y. 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); see also Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## III.   ARGUMENT

### A.   MISAPPROPRIATION (COUNT I)

Count I of the Complaint should be dismissed for failure to state a claim. This count alleges a cause of action for so-called "misappropriation" under New York common law. See Complaint ¶¶ 70-79. However, the state law claims in this case are controlled by the substantive law of Florida, not New York, and Florida law does not recognize a cause of action for "misappropriation" under the fact alleged in the Complaint.

#### 1.   Florida Substantive Law Controls the State Law Claims

The state law claims, of course, sound in diversity jurisdiction, and as to such claims, courts undertake a conflict-of-law analysis under the conflict jurisprudence of the forum state, namely New York. See Torah Soft, Ltd. v. Drosnin, 224 F. Supp. 2d 704, 719 (S.D.N.Y. 2002)

("In a diversity case such as this, the federal court will apply the choice of law rules of the forum state, in this case New York.").

New York applies an "interest analysis" for determining the choice of law for claims of unfair competition.  Torah Soft, Ltd. v. Drosnin, 224 F. Supp. 2d 704, 719 (S.D.N.Y. 2002) ("New York applies an 'interest analysis' to its choice of law, under which the law of the jurisdiction having the greatest interest in the litigation controls."); see also Stewart v. World Wrestling Fedn. Entm't, Inc., 2004 U.S. Dist. LEXIS 26533, *4-6 (S.D.N.Y. Jan. 11, 2005) ("the choice of law for tort causes of action is based upon the place which has the most significant contacts with the matter in dispute, thereby giving the place with the most interest in the problem paramount control over the legal issues arising in the case.") (quoting Elgin Sweeper Co. v. Melson, Inc., 884 F. Supp. 641, 650 n.12 (N.D.N.Y. 1995)).

In the present dispute, Florida has the most significant interest in the case.  All of the alleged tortious conduct occurred in Florida.  The accused articles were commissioned by AHN in Florida and were published by AHN through its Internet service that is both hosted in and controlled from Florida.  See Complaint ¶¶ 5-8, 51-79.  Since the conduct at issue occurred (if at all) within Florida, Florida has the most significant relationship to the events of this suit and the greater interest in the application of its own laws.  See Torah Soft, 224 F. Supp. 2d at 720 ("the law of unfair competition is conduct regulating . . . the locus of the tort will be the dominant consideration").

Defendants are all citizens of Florida, and the AHN corporate entities were incorporated in Florida.  Complaint ¶¶ 13-17.  It so happens that Defendant All Headline News Corp. no longer exists, but it was a Florida corporation.  Declaration of W. Jeffrey Brown ¶ 2 (submitted herewith).  The only business office of Defendant AHN Media is located in Florida, and AHN

transacts all of its business from Florida.[1]  Brown Decl. ¶ 7.  Although AHN has freelance employees around the country and abroad who report the news and write articles, these writers generally work out of their own homes or offices.  <u>See</u> Complaint ¶ 54.

Defendants do not have any particular connection with New York.  AHN Media does not have any offices in New York, any bank accounts or other assets in New York, any employees in New York, or any substantial business relationships with companies in New York.  Brown Decl. ¶ 6.  Although AHN has customers around the world, including customers in New York, AHN does not have any greater relationship with New York than it does with any other state.  <u>Id.</u> What is more, the Complaint does not allege that any AHN customer in New York ever received the articles in question.

Importantly, the Complaint does not allege torts that arise out of specific contacts with New York, such as a contractual relationship with Plaintiff in New York.  <u>Cf.</u> <u>Stewart</u>, 2004 U.S. Dist. LEXIS 26533, *4-6 (finding that New York law applied for a business dispute concerning a contract that was negotiated between the parties in New York and where the defendant had substantial operations in New York).  Although the Complaint alleges that the parties had a contractual relationship several years ago (an incorrect assertion, as explained below), the Complaint also states that Plaintiff terminated the contract in March 2005, long before the specific acts alleged in the Complaint occurred.  <u>See</u> Complaint ¶¶ 45-50.  As explained below, even that contract did not specify New York law.

Stripped to its core, the only connection between Defendants' conduct and New York is that Plaintiff alleges it feels harm from that conduct here, where Plaintiff's headquarters is

---

[1] Paragraph 17 of the Complaint alleges that Defendants have an office at Rockefeller Center in New York. Although Defendants at one time made preparations to open an office in New York, that did not come to fruition. Defendants have never had an office in New York and currently have no plans to open such an office.  Brown Decl. ¶ 6.

located.  Complaint ¶ 12.  While New York undoubtedly has a generalized interest in protecting

its citizens from harm, that could be said any time there is a New York plaintiff.  The analysis

does not turn on that issue.  See Torah Soft, 224 F. Supp. 2d at 720 (applying unfair competition

law of Israel where the counter-defendant was a citizen of Israel and all of the accused acts took

place in Israel).

It is particularly important here where Defendants are accused of

"misappropriation" for conduct in Florida that is not illegal under Florida law and under a theory

of liability that is in tension with federal copyright law (which likely goes a long way toward

explaining why most states do not follow the New York formulation of misappropriation law).

Florida has a strong interest in assessing the propriety of conduct within its borders under its own

laws, and where Florida has determined that free competition should exist, that is a compelling

interest.

To the extent Plaintiff can establish copyright infringement under the Copyright Act, it

will be free to pursue any available remedies under federal law.  On this, Florida and New York

agree.  To the extent that Plaintiff cannot establish copyright infringement, however, Florida

protects its citizens' right to compete in the marketplace, free from attack under a common law

that recasts the copyright allegations as a tort of "misappropriation" of unprotected facts.

It is not necessary in this case to strike down the aspects of New York misappropriation

law upon which Plaintiff relies.  However, the fact that Florida views the same conduct as fair

competition (or simply as competition that federal copyright preemption does not permit it to

regulate) compels the conclusion that under the "interest analysis" Florida has the greater interest

in regulating the conduct undertaken there, and Florida substantive law must control the state law

claims in this case.  Once that conclusion is reached, Count I of the Complaint must be dismissed

because Florida does not recognize as "misappropriation" the acts alleged in the complaint.  <u>See</u>

Fed. R. Civ. P. 12(b)(6).

### 2.  Florida Does Not Recognize a Cause of Action for "Misappropriation" under the Facts as Pleaded

The Florida courts, unlike the courts in New York, have never recognized a cause of

action for "misappropriation" under <u>International News Service v. Associated Press</u>, 248 U.S.

215 (1918).  New York courts have kept alive a theory of misappropriation articulated by the

Supreme Court in <u>International News Service</u>.

The Supreme Court in <u>International News Service</u> recognized that the facts embodied in

the news articles at issue in that case were not protected under copyright law.  <u>Id.</u> at 233-34.

However, it carved out a new theory that such copying of "hot news" facts constituted "unfair

competition in business" that would support equitable relief under a theory of misappropriation.

<u>Id.</u> at 240.[2]  The rationale of the opinion has been widely discredited, and it has recently

essentially been honored only in the breach.[3]  <u>See</u> <u>National Basketball Ass'n v. Motorola, Inc.</u>,

105 F.3d 841, 852 n.7 (2d Cir. 1997) ("<u>INS</u> has long been regarded with skepticism by many

---

[2] While New York common law may purport to preserve this cause of action, the <u>International News Service</u> opinion itself is no longer good law.  Its specific holding — creating a new federal cause of action for "misappropriation" of facts — was based on the federal common law of unfair competition.  This does not survive today under the <u>Erie</u> doctrine.  <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938) ("There is no federal general common law.").

[3] In <u>International News Service</u>, both Justices Brandeis and Holmes issued forceful dissents, emphasizing that if the defendants' conduct was specifically permitted under copyright law, then there was no reason to carve out a separate cause of action for "misappropriation" under the law of unfair competition.  <u>See, e.g.</u>, <u>International News Service</u>, 248 U.S. at 246 ("When an uncopyrighted combination of words is published, there is no general right to forbid other people repeating them -- in other words, there is no property in the combination or in the thoughts or facts that the words express.") (Holmes, J., dissenting); <u>id.</u> at 263 (noting that the majority's rule "would effect an important extension of property rights and a corresponding curtailment of the free use of knowledge and of ideas") (Brandeis, J., dissenting).

Their rationale was essentially adopted by the Supreme Court in <u>Feist</u>, when it reiterated that works were not protectable under a "sweat of the brow" theory and squarely rejected any notion that it was "unfair" to engage in competition that was specifically permitted under copyright law.  <u>See</u> <u>Feist</u>, 499 U.S. at 349-50; <u>see also</u> <u>Compco Corp. v. Day-Brite Lighting, Inc.</u>, 376 U.S. 234, 237 (1964) (emphasizing the "federal policy" in the constitution "of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain").

courts and scholars and often confined strictly to its facts."); Columbia Broadcasting Sys., Inc. v. DeCosta, 377 F.2d 315, 318 (1st Cir. 1967) (holding that INS "is no longer authoritative" in light of the Erie doctrine, and "it has clearly been overruled" by modern Supreme Court opinions on preemption under the Copyright Act).

It should not be surprising, therefore, that Florida does not permit a cause of action for misappropriation of facts. Although Florida law does recognize a tort of unfair competition, it is limited to trademark-related claims that are based on a likelihood of consumer confusion, similar to the federal Lanham Act: "In order to prevail on an unfair competition claim under Florida common law, which is often referred to the tort of 'passing off,' a plaintiff must 'establish deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion.'" North Atlantic Marine, Ltd. v. Sealine Int'l, Ltd., 2007 U.S. Dist. LEXIS 23046, *34 (S.D. Fla. Mar. 29, 2007). Absent any actionable "passing off" or customer confusion, a claim for unfair competition under Florida law fails to state a claim upon which relief can be granted. Id.; see also Stagg Shop of Miami, Inc. v. Moss, 120 So. 2d 39, 40 (Fla. Dist. Ct. App. 1960) ("Under Florida law, as under the common law of most states, customer confusion is the gist of the actionable wrong.").

In two published opinions, the Florida state courts have specifically rejected the plaintiffs' attempts to recognize causes of action for "misappropriation," specifically distinguishing the International News Service opinion. See Glazer v. Hoffman, 16 So. 2d 53, 55-56 (Fla. 1943) (holding that magician's signature magic tricks were not protected from copying under a theory of state law misappropriation); see also Herald Publishing Co. v. Florida Antennavision, Inc., 173 So. 2d 469, 474-75 (Fla. Dist. Ct. App. 1965) (holding that defendant's rebroadcasting of television shows failed to state a claim under state unfair competition law;

"unless appellees are able to demonstrate a protectable interest by virtue of the copyright laws or bring themselves within the contemplation of some other recognized exception to the policy promoting free access to all matter in the public domain, they cannot prevail. ... Relief beyond what the copyright laws confer must be sought from Congress, not the courts.") (quoting Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348 (9th Cir. 1964)).  Defendants are not aware of any Florida state court opinions that have recognized a theory of misappropriation like that asserted by Plaintiff here.

Likewise, in the recent North Atlantic Marine case, the Southern District of Florida specifically rejected the plaintiff's attempt to recognize a broader theory of misappropriation equivalent to New York law:

> In response, Plaintiffs argue that Defendants "are mistaken in their narrow analysis of what constitutes unfair competition," and that "[i]n essence, unfair competition is the *bad faith misappropriation of the labors and expenditures of another* for one's own benefit in a commercial context."  (D.E. No. 48 at 3) (citing Wilson v. Electro Marine Sys., Inc., 915 F.2d 1110 (7th Cir. 1990)).  In addition to relying on a non-binding Seventh Circuit opinion, *which applies New York state law*, Plaintiffs misread the Wilson v. Electro Marine Systems, Inc. decision.

North Atlantic Marine, 2007 U.S. Dist. LEXIS 23046 at *36 (emphasis added).[4]

---

[4] The opinion further noted that even under the broad New York misappropriation doctrine, the doctrine only reaches conduct where the defendant obtained access to the information in some wrongful or deceitful manner. See id. at *37-38 ("New York courts have required a showing that the defendant obtained access to the idea through an abuse of a fiduciary or confidential relationship with the plaintiff or via some sort of fraud or deception") (quoting Wilson v. Electro Marine Sys., Inc., 915 F.2d 1110, 1118-19 (7th Cir. 1990)); see also International News Service, 248 U.S. at 231 (finding unfair competition in part where defendant allegedly obtained early access to news articles through "bribing employees of newspapers," along with other allegedly improper conduct that "permit[ted] defendant to obtain news before publication").

In contrast, there are no allegations here that defendants had a fiduciary or confidential relationship with AP, or that defendants somehow *obtained access* to the AP news articles through improper conduct.  Rather, the complaint simply alleges that Defendants obtained the news facts at issue by "surf[ing] the web" and "copying news stories found on the Internet."  Complaint, ¶ 5.  Even if New York substantive law were to apply, the Complaint fails to state any viable claim for misappropriation, so this count should be dismissed under Rule 12(b)(6).

In sum, Florida has a strong interest in preserving free competition – by permitting persons in Florida to undertake exactly the conduct that Plaintiff charges is wrongful – and in avoiding a vein of common law precedent that most agree conflicts with the Copyright Act. Its law applies to the state law claims in suit. Florida does not recognize misappropriation as pleaded by Plaintiff. Therefore, Count I of the Complaint must be dismissed for failure to state a claim.

**B.     TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN (COUNTS IV, V AND VI)**

The Complaint alleges in Counts IV, V and IV that Defendants have infringed Plaintiff's trademarks and engaged in false designation of origin under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under New York laws of unfair competition. However, the Complaint does not allege that Defendants have made any infringing use of any trademark owned by Plaintiff or that Defendants have otherwise misbranded their products. Plaintiffs' allegations on this point are:

> On information and belief, when copying or rewriting AP stories, AHN often omits any attribution to AP, thus deceiving its clients and readers into believing that those stories were independently reported by AHN employees. In some instances, AHN cites AP as a source, thus falsely suggesting that it is licensed by AP to redistribute AP news stories.

Complaint ¶ 7 (emphasis added). Neither this "omission of attribution" theory nor the "citing AP as a source" theory comprises a viable cause of action under the Lanham Act or the state law of unfair competition.

### 1.     "Citing AP as a Source"

In Count IV, the Complaint alleges that Defendants infringe Plaintiff's trademark rights because certain of Defendants' news articles refer to Plaintiff by name (e.g. "Associated Press

today reported . . .").  The Complaint alleges that consumers will therefore be confused concerning the origin of such articles.  This is without merit.

The Complaint alleges that Defendants have written their own news articles, which they make available to subscribers under their own trademark, ALL HEADLINE NEWS.  In each of the accused articles that Plaintiff attached to the Complaint, AHN Media affixed its stylized "AHN logo" and a byline (such as "Julie Farby - AHN News Writer" or "Ed Sutherland - AHN Editor"), and each article is marked by an AHN copyright notice.  Complaint, ¶¶ 18-23.  There is no language suggesting that these articles are written or licensed by Plaintiff.

Only one article attached to the Complaint even contains a reference to AP.  Specifically, the article (about the capture of a large alligator in Florida) states:  "According to an AP report Douglas confirmed the captured alligator was the one that attacked Williams . . . ."  Complaint, Ex. 21.  This language clearly refers to Plaintiff as a third-party source of information.  Daily experience teaches that this is a common convention among news organizations, providing attribution for information from third parties.  Consumers are not confused into thinking from such an attribution that AP authorized the article; indeed, it is difficult to imagine that Plaintiff itself would want to live with a rule that prohibited attribution of facts to other news organizations.

Importantly, Defendants are not using the phrase "AP" in a trademark sense to indicate the origin of goods or services.  Defendants are using the phrase nominatively to identify accurately the source of certain information.  This is a fair use as a matter of law.  See Car-Freshner Corp. v. S.C. Johnson & Son, 70 F.3d 267, 269 (2d. Cir. 1995) ("The principle [of fair use] is of great importance because it protects the right of society at large to use words or images in their primary descriptive sense, as against the claims of a trademark owner to exclusivity. …

What matters is whether the defendant is using the protected word or image descriptively, and not as a mark."); <u>Mattel, Inc. v. Azrak-Hamway Int'l, Inc.</u>, 724 F.2d 357, 361 (2d Cir. 1983) (defense of fair use "allows a competitor to use another's registered trademark to describe aspects of one's own goods"); <u>see also</u> <u>Merck & Co. v. Mediplan Health Consulting, Inc.</u>, 425 F. Supp. 2d 402, 412-15 (S.D.N.Y. 2006) ("A defendant may use a plaintiff's trademark to identify the plaintiff's good so long as there is no likelihood of confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation.").

Nominative fair use is found where three factors are present, and all three are present here:  First, Defendants cannot provide attribution to Plaintiff without using the phrase "AP" or "Associated Press."  Second, Defendants are using only so much of the mark as is necessary to make this association, namely the phrase "AP" in the text of the articles, without any logos or other indicia suggesting an affiliation with Plaintiff.  Third, Defendants are not doing anything else to suggest that the articles are written or sponsored by Plaintiff.  <u>See</u> <u>S&L Vitamins, Inc. v. Australian Gold, Inc.</u>, 521 F. Supp. 2d 188, 207 (S.D.N.Y. 2007) (identifying three-factor test from <u>New Kids on the Block v. News America Publishing Inc.</u>, 971 F.2d 302 (9th Cir. 1992)); <u>see also</u> <u>Merck</u>, 425 F. Supp. 2d at 414-15 (granting Rule 12(b)(6) motion to dismiss allegations against defendant Total Care Pharmacy for permissible fair use of trademark for comparative advertising).

Absent any improper use of the marks or any colorable basis for consumer confusion, the use of the phrase "AP" to identify AP accurately in a news article is not actionable under the Lanham Act.  This claim should be dismissed for failure to state a claim.

## 2. "Omission of Attribution"

In Counts V and VI, the Complaint alleges just the opposite of Count IV, namely that Defendants have infringed under the Lanham Act and state law of unfair competition <u>because</u>

they have not mentioned Plaintiff in connection with these articles.  Plaintiff alleges that

Defendants have misdesignated the origin of AHN articles by labeling these articles as AHN

articles, rather than identifying Plaintiff as the proper source of the facts contained in them.  This

is nothing more than an allegation that Defendants copied Plaintiff's articles and put their own

name on them.  That conduct might give rise to a cause of action under the Copyright Act, but it

does not give rise of a cause of action under the Lanham Act or state law.

The Supreme Court so held in Dastar Corp. v. Twentieth Century Fox Film Corp., 539

U.S. 23 (2003).  Twentieth Century Fox had argued that Dastar engaged in false designation of

origin by publishing videotapes that contained images from old Twentieth Century Fox

television shows; the shows were indisputably in the public domain, but Twentieth Century Fox

maintained that the failure to credit to Twentieth Century Fox for the footage created a false

designation.

The Supreme Court disagreed.  It emphasized that for purposes of Section 43(a) of the

Lanham Act, the "origin" is the origin of the physical products being sold, not the origin of ideas

or expression contained in those goods.  See id. at 37 (concluding that term "origin of goods" in

the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not to

the author of any idea, concept, or communication embodied in those goods") (emphasis added).

There was therefore no misrepresentation when Dastar sold its own videotapes under its own

trademarks.  Under Dastar, there is no viable cause of action under the Lanham Act "for, in

effect, plagiarism – the use of otherwise unprotected works and inventions without attribution."

Id. at 36.  "To hold otherwise would be akin to finding that § 43(a) created a species of perpetual

patent and copyright, which Congress may not do."  Id. at 37.

-13-

Justice Brandeis followed the same rationale in his dissent in the <u>International News Service</u> opinion, using language that applies with equal force to the present case:

> It is also suggested that the fact that defendant does not refer to the Associated Press as the source of the news may furnish a basis for the relief. But the defendant and its subscribers, unlike members of the Associated Press, were under no contractual obligation to disclose the source of the news; and there is no rule of law requiring acknowledgment to be made where uncopyrighted matter is reproduced. … [N]o representation can properly be implied from omission to mention the source of information except that the International News Service is transmitting news which it believes to be credible.

<u>International News Service</u>, 248 U.S. at 260 (Brandeis, J., dissenting).

Consequently, there is no basis here for attempting to shoehorn a copyright cause of action into the Lanham Act. "<u>Dastar v. Fox</u> has killed a cottage industry of routinely maintaining a cause of action for reverse passing off any time copying of literary property was at issue. Henceforward, such cases must stand or fall based on the strength of the copyright allegation." <u>Nimmer on Copyright</u>, § 8D.03[A][2][b] at 8D-41 (2006). <u>See, e.g.</u>, <u>Silverstein v. Penguin Putnam, Inc.</u>, 522 F. Supp. 2d 579, 601-02 (S.D.N.Y. 2007) (holding that plaintiff's theory of reverse passing off based on defendant's alleged misappropriation of content for a book was "foreclosed" under <u>Dastar</u>); <u>Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.</u>, 2007 U.S. Dist. LEXIS 55086, *5-13 (S.D.N.Y. July 27, 2007) (dismissing claims under Lanham Act and state law of unfair competition where plaintiff's allegations "that it originated certain ideas and concepts contained at Defendant's website" failed to state a claim under <u>Dastar</u>).

The Complaint alleges that Defendants are marketing their products and services under the ALL HEADLINE NEWS trademark. Plaintiff's theory of "omission of attribution" merely alleges that Defendants copied Plaintiff's content without telling consumers that they copied it from Plaintiff, and this plainly fails to state a claim under <u>Dastar</u>. The Court should therefore dismiss Counts V and VI of the Complaint.

C.    DIGITAL MILLENNIUM COPYRIGHT ACT (COUNT III)

In Count III, Plaintiff alleges that Defendants have removed "copyright management information" in violation of the a provision of the Copyright Act added to the statute by the Digital Millennium Copyright Act, 17 U.S.C. §§ 1202(b)(1) and (b)(3).  This is a variation on the theme that Defendants failed to provide "attribution" for their alleged copying, and it is not the sort of conduct at with the DMCA provision is directed.

The DMCA provision creates a new form of liability where a defendant has "intentionally remove[d] or alter[ed] any copyright management information," or when a defendant has distributed works "knowing that copyright management information has been removed or altered without authority of the copyright owner or the law."  17 U.S.C. §§ 1202(b)(1) and (b)(3).

The Complaint does not allege facts that would state a cause of action under Sections 1202(b)(1) or (b)(3).  The statutory provisions are designed to address a situation where a defendant makes digital copies of a plaintiff's work but removes or falsifies the digital copyright information so as to hide the wrongdoing or trick digital rights management software into permitting use of the content.  See, e.g., Gregerson v. Vilana Fin., Inc., 2008 U.S. Dist. LEXIS 11727, *17-21 (D. Minn. Feb. 15, 2008) (affirming liability under Section 1202 where defendant had removed digital watermarks from plaintiff's photographs).

The statute was not intended to reach traditional "garden variety" copying of information (much less copying of unprotected facts).  The Complaint does not allege that Defendants circumvented technical measures to make these copies but simply that Defendants copied information or expression they found on the Internet and included that within their own articles without including the original copyright notice.  This was not the intent of the DMCA:

> [T]raditionally, the rights of authors have been managed by people, who have
> controlled access and reproduction.  Through scientific advances, we now have
> technological measures that can control access and reproduction of works, and
> thereby manage the rights of copyright owners and users.  Section 1202 operates
> to protect copyright by protecting a key component of some of these technological
> measures.  It should not be construed to cover copyright management performed
> by people, which is covered by the Copyright Act, as it preceded the DMCA; it
> should be construed to protect copyright management performed by the
> technological measures of automated  systems.

Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc., 524 F. Supp. 2d 1184, 1200 (C.D. Cal. 2007)

(quoting IQ Group, Ltd. v. Wiesner Publishing LLC, 409 F. Supp. 2d 587, 597 (D.N.J. 2006)).

Consequently, the statute does not create a new cause of action for any form of garden variety

copyright infringement:

> Adopting plaintiff's approach to the statute, a literal interpretation of "copyright
> management information" as defined in § 1202(c) would in effect give § 1202
> limitless scope in that it would be applicable to all works bearing copyright
> information as listed in § 1202(c)(1)-(8).  In other words, § 1202 would apply, as
> one court put it, "wherever any author has affixed anything that might refer to his
> or her name."  IQ Group, Ltd. v. Wiesner Publishing LLC, 409 F. Supp. 2d 587,
> 593 (D.N.J. 2006).  However, considering § 1202's placement in the structure of
> the DMCA — a statutory scheme which, along with protecting the integrity of
> copyright management  information, also prohibits the circumvention of
> technological measures that protect copyrighted works — the Court finds that
> such a wide-reaching interpretation would not be proper.

Id. at 1196.

Plaintiff's broad interpretation here would essentially create a new cause of action that is

for all practical purposes identical to traditional allegations of copyright infringement, but with

additional remedies.  See id. at 1202 n.17 (interpreting the statute broadly "to mean that

copyright management information exists wherever copyright information is located" would

effectively "result in the DMCA replacing existing copyright law, as the Act would theoretically

apply to all instances of copyright infringement where copyright information was falsified,

altered or removed as set forth in subdivisions (a) and (b)").

Here, the only alleged basis for liability under Section 1202 is that individuals hired by Defendants wrote their own news articles containing information found on the Internet but failed to include the written copyright notices found in the underlying articles. It does not allege that Defendants circumvented any digital protection of copyright information. Count III therefore fails to allege any viable cause of action under Section 1202 and should be dismissed.

### D.    BREACH OF CONTRACT (COUNT VII)

In Count VII, the Complaint undertakes to plead a cause of action for breach of contract, complaining that $4,198 is owed under a contract between Plaintiff and Defendants. The Complaint specifically alleges that this contract was executed between the AP and AHN:

> AP and AHN entered into a contract in December 2003 under which AHN was to receive AP's Online News Briefs services (the "Contract"). A true copy of the contract is attached as Exhibit 11.

Complaint ¶ 45. The Complaint then alleges that AHN failed to make payments under the contract, and Plaintiff terminated the contract on March 31, 2005. Complaint ¶¶ 46-49, 117-124.

These allegations are flatly contradicted by the contract itself, which was attached as Exhibit 11 to the Complaint. The parties to the contract were Associated Press and AmericClicks, Inc. Complaint, Ex. 11 at 1. AmeriClicks is not a named defendant, and the contract never mentions the AHN corporate entities.

This contract speaks for itself. None of the named defendants is a party to the contract, and the Complaint does not allege that the Court should hold them holding them liable for AmeriClick's conduct. Although the Court is required on a Rule 12(b)(6) motion to construe the facts in the Complaint in the light most favorable to the plaintiff, it does not require the Court to overlook inherent contradictions in the evidence offered by the plaintiff. See Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289, 292-94 (S.D.N.Y. 2007) (dismissing allegations against individual defendant because he was not a named party to the asserted

contract and there were no allegations suggesting that he was personally liable under the contract).[5]

Since none of the named Defendants was party to the contract and the Complaint fails to allege any basis for holding any of them liable, Count VII must be dismissed for failure to state a claim.

### E. THE COMPLAINT FAILS TO ALLEGE ANY BASIS FOR INDIVIDUAL LIABILITY OR PERSONAL JURISDICTION AGAINST DEFENDANTS BROWN AND GEORGE

Finally, the Complaint fails to allege any basis for liability against individual Defendants Brown and George. The Complaint alleges only that Brown and George are individuals who reside in Florida and who are officers or employees of AHN. Complaint ¶¶ 4, 15-16. After these sparse introductory paragraphs, the Complaint simply refers to all of the defendants collectively as "Defendants" in every substantive count, with no attempt to distinguish between them for purposes of liability. Like the contract that shows no Defendant as a counterparty, the complained of news articles show conduct of AHN and not any individual defendant, once again with no allegation as to why this contradiction should be overlooked.

#### 1. No Individual Liability

In substance, the Complaint alleges that Defendants All Headline News Corp. and AHN Media Corp. have engaged in acts that give rise to liability. The Complaint fails to allege that the corporate veil should be pierced against Brown and George as individuals. "Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination

---

[5] Moreover, the Complaint appears to allege that Defendants are somehow liable under breach of contract for recent activity, such as the alleged copying of the news articles in September and October 2007. However, Plaintiff also alleges that it terminated the contract more than two years earlier, in March 2005. If the contract was no longer in existence, then any later activities could not be a breach.

was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  MAG

Portfolio Consult, GmbH v. Merlin Biomed Group, LLC, 268 F.3d 58, 63 (2d Cir. 2001)

(internal quotations omitted).  This is a "fact specific inquiry."  Id.

     Here, the Complaint here is devoid of any allegations that the corporate veil should be

pierced or any other basis for imposing liability against Brown and George as individuals.  See

Novak, 481 F. Supp. 2d at 293-94 (dismissing complaint against individual defendant where

"plaintiff has pleaded no facts supporting an inference that [the individual defendant] committed

fraud or wrongdoing or acted in a capacity other than his official one as President and Chief

Executive Officer of the corporate defendants"); see also Kalin v. Xanboo, Inc., 526 F. Supp. 2d

392, 403-04 (S.D.N.Y. 2007) (granting motion to dismiss where complaint's conclusory factual

allegations that two defendants are "interrelated and have close enough ties . . . to allow them to

be considered the same company for purposes of this litigation" was insufficient to allege a basis

for piercing the corporate veil); Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385,

416 (S.D.N.Y. 2003) ("Purely conclusory allegations cannot suffice to state a claim based on

veil-piercing or alter-ego liability, even under the liberal notice pleading standard.").  Absent any

specific factual allegations against Brown and George as individuals, all counts of the Complaint

should be dismissed against them for failure to state a claim.

## 2.     No Personal Jurisdiction

     In addition, the Complaint should be dismissed against Brown and George under Rule

12(b)(2) for lack of personal jurisdiction.  On a motion to dismiss for lack of personal

jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the

defendant."  Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 418

(S.D.N.Y. 2006).

Here, the Complaint fails to allege any specific facts to the effect that Brown and/or George have transacted any business in their individual capacities within New York or committed any other acts that give rise to personal liability.  Although the Complaint alleges generally that "defendants" generally have transacted business within New York, Complaint ¶ 20, the substance of the Complaint clearly relates to the business of the AHN corporate defendants and not the individual defendants.  The Brown Declaration and the Declaration of Danielle George, also submitted herewith, make plain that they have no accounts in New York, no property in New York, transact no business here, and work only as employees of AHN Media Corp., not as individual actors.  Brown Decl. ¶¶ 1, 12-20; George Decl. ¶¶ 1-12.

For personal jurisdiction, Plaintiff has the burden of showing that each defendant "has engaged in some purposeful activity in New York in connection with the matter in controversy." In Merck, this Court held that similar catch-all allegations that "defendants" collectively had transacted business in the state were insufficient to allege a basis for personal jurisdiction against the individual defendant absent specific allegations that the individual defendant "transacted business in New York in his personal capacity."  Id. at 419.  See also id. ("plaintiffs fail to allege any specific allegations on the part of Thorkelson, and a presumption [that he induced infringement] is not enough").  Although the individual was the corporate defendant's chief executive officer, "control cannot be shown based merely upon a defendant's title or position." Id. at 420.

Here, Plaintiff has failed to allege any basis for personal jurisdiction over the individual defendants; just as in Merck, Plaintiff has not alleged that the individuals personally transacted business here or that they are liable under an agency theory.  See id. at 418-20.  Plaintiff has also failed to plead sufficient facts to permit the Court to determine that the exercise of personal

jurisdiction would satisfy the requirements of due process.  Id. at 420-21.  Consequently, the Complaint should be dismissed against Defendants Brown and George for lack of personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should dismiss Counts I and III through VII for all defendants, and should dismiss the Complaint in its entirety against individual defendants Brown and George.


Dated:          February 29, 2008
                New York, New York

                                        Respectfully submitted,


                                By:     s/ Atul R. Singh
                                        Eric A. Prager (EP-0964)
                                        Atul R. Singh (AS-0873)
                                        Robert L. Jacobson
                                        DARBY & DARBY P.C.
                                        7 World Trade Center
                                        250 Greenwich Street
                                        New York, NY  10007
                                        Telephone: 212.527.7700
                                        Facsimile:  212.527.7701

                                        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Memorandum in Support of Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12 was submitted to the Court's CM/ECF system on February 29, 2008 for service through the Court's Electronic Transmission Facilities upon the following:

**Andrew Lawrence Deutsch**
**Christine M. Jaskiewicz**
DLA Piper US LLP (NY)
1251 Avenue of the Americas
New York, NY 10020

*Counsel for Plaintiff*

s/ Atul R. Singh
By:  Atul R. Singh