Eric A. Prager (EP-0964)
Robert L. Jacobson (*pro hac vice*)
DARBY & DARBY P.C.
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:  212.527.7700
Facsimile:  212.527.7701
Email:  eprager@darbylaw.com
Email:  rjacobson@darbylaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

THE ASSOCIATED PRESS,                                    :
                                                        :
                        *Plaintiff*,                     :          No. 1:08-CV-000323 (PKC)
                                                        :                    ECF CASE
            v.                                          :
                                                        :
ALL HEADLINE NEWS CORP., ET AL.,                        :
                                                        :
                        *Defendants*.                   :

------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.  INTRODUCTION ................................................................................................1

II.  STANDARD OF LAW ........................................................................................2

III.  ARGUMENT .....................................................................................................3

    A.  Unfair Competition by "Misappropriation" (Count I) ............................3

        1.  Florida Law Does Not Recognize a Cause of Action for "Misappropriation" ...............................................................7

        2.  New York Law Does Not Recognize a Claim for "Misappropriation" Under These Facts ..................................9

        3.  If There Is a Conflict of Law, Florida Law Controls ................12

        4.  Any Claim of Misappropriation under These Facts Is Preempted ...................................................................14

    B.  Digital Millennium Copyright Act (Count III) .....................................17

    C.  Trademark Infringement (Count IV) ....................................................19

    D.  Unfair Competition Under th e Lanham Act (Count V) and New York Common Law (Count VI) ....................................................21

    E.  Breach of Contract (Count VII) ...........................................................24

IV.  CONCLUSION ................................................................................................25

## I.     INTRODUCTION

The multiplicity of claims in the First Amended Complaint represent an attempt by Plaintiff Associated Press to accomplish through alternative legal theories what AP is prohibited from accomplishing under the Copyright Act:  Preventing another news service from reporting facts about the news after those facts have been published and entered the public domain. However, these theories fail to state a claim and are preempted under the Copyright Act.  That is the basis for this motion to dismiss.

The First Amended Complaint generally alleges that Defendants (collectively AHN) have copied "news content" (i.e. facts) from AP articles published online and then incorporated those facts into AHN's own news articles.  The Copyright Act, however, protects only specific copyrighted expression, not facts.  "That there can be no valid copyright in facts is universally understood.  The most fundamental axiom of copyright law is that 'no author may copyright his ideas or the facts he narrates.'"  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344-45 (1991) (quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 556 (1985)). "The same is true of all facts – scientific, historical, biographical, and news of the day.  'They may not be copyrighted and are part of the public domain available to every person.'"  Id. at 348 (quoting Miller v. Universal City Studios, Inc., 650 F. 2d 1365, 1368 (5th Cir. 1981)).

In particular, facts about the news cannot be protected.  "The news element – the information respecting current events contained in the literary production – is not the creation of the writer, but is a report of matters that ordinarily are *publici juris*; it is the history of the day." Id. at 354 (quoting International News Serv. v. Associated Press, 248 U.S. 215, 234 (1918)). Consequently, the protection for such factual works, like news articles, "is thin."  Id. at 349.

While another party generally may not copy specific copyrighted expression, it is free to report the facts from another source.  Id. at 348.

In Count II of the First Amended Complaint, AP has specifically asserted a cause of action for copyright infringement.  AP is free to pursue this claim, and it will fail on the merits; discovery will show that AHN has not copied any specific copyrightable expression.

However, AP has also asserted a variety of other causes of action in an effort to do what it cannot do under the Copyright Act, namely protect facts.  AP alleges so-called "misappropriation" under New York common law, trademark and false advertising claims under the Lanham Act and New York common law, breach of contract, and violations of the Digital Millennium Copyright Act.  To the extent AHN has copied specific protectable expression (which AHN disputes), AP will have an adequate remedy under the Copyright Act.  To the extent AHN has not, AP cannot use creative pleading to recapture facts in the public domain.  Those claims must be dismissed for failure to state a claim.

## II.    STANDARD OF LAW

"On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff."  Novak v. Scarborough Alliance Corp., 481 F. Supp. 2d 289, 291 (S.D.N.Y. 2007); see also Erickson v. Pardus, 127 S. Ct. 2197 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").  "Dismissal is proper if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief."  In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (quotations and citations omitted).  "In addition to the facts set forth in the complaint, as noted, the Court may also consider documents

attached to the complaint or incorporated by reference into the complaint, as well as matters of public record."  Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 399 (S.D.N.Y. 2007).

## III.    ARGUMENT

### A.    UNFAIR COMPETITION BY "MISAPPROPRIATION" (COUNT I)

Count I of the First Amended Complaint alleges a theory of "misappropriation" under the common law of unfair competition.  Stripped to its core, the complaint merely alleges that AHN purportedly copied news articles after they were published on the Internet for anyone to read. While this may state a claim in copyright law, it does not state a claim for "misappropriation" under the common law of Florida (which AHN believes is applicable here) or under the common law of New York (which AP believes applies).

AP styles its claim as one for so-called "hot news" misappropriation under International News Service v. Associated Press, 248 U.S. 215 (1918).  In that case, AP and INS were competing wire services.  AP alleged that INS had "misappropriated" its news content and republished it without its permission.  In that case, unlike here, AP admitted that its articles were *not protected* by copyright because it had not filed copyright registrations under the Copyright Act of 1909 (which required registration before publication).  However, AP alleged that it was entitled to equitable relief under a common law theory of unfair competition.

It specifically alleged that the INS had engaged in unfair competition by (1) bribing AP employees and telegraph operators to intercept AP news stories and divert them to INS before those stories were published, (2) inducing AP member newspapers to grant INS unlawful access to AP news stories before the stories were published, and (3) copying news content from bulletin boards on the East Coast and transmitting it to the West Cost via telegraph before those stories could be published in AP newspapers.  See id. at 231.  These acts allowed the INS to publish AP content *before* AP had released it to the public.  See id. at 238-39.

-3-

Under these facts, a divided 5-3 majority of the Supreme Court granted relief to AP under a novel theory of "misappropriation" under federal common law. The majority opinion by Justice Pitney recognized that AP's news articles were not copyrighted. See 248 U.S. at 233. However, the opinion held that AP had obtained some "quasi-property" right in its news articles because of the amount of time and effort in reporting them and that INS had acted unfairly by "misappropriating" that property under the facts of the case. See id. at 240 (stating that AP had obtained protectable rights "as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money" and that INS was "endeavoring to reap where it has not sown").

Both Justice Holmes and Justice Brandies strongly disagreed with the majority's rationale. Justice Holmes rejected the majority's premise that AP had obtained any protectable "property" right merely because of the time and effort invested in creating those works. See id. at 246 (Holmes, J., dissenting) ("When an uncopyrighted combination of words is published there is no general right to forbid other people repeating them . . . a person is not excluded from using any combination of words merely because someone has used it before, even if it took labor and genius to make it."). Justice Brandeis reasoned that if the material was not protected under copyright, patent, trade secret or contract law, then AP had no further legal right to restrict it. To the contrary, "the law sanctions, indeed encourages," such use:

> [T]he fact that a product of the mind has cost its producer money and labor, and has a value for which others are willing to pay, is not sufficient to ensure to it this legal attribute of property. The general rule of law is, that the noblest of human productions – knowledge, truths ascertained, conceptions, and ideas – become after voluntarily communication to others, free as the air to common use.

Id. at 250, 259 (Brandeis, J., dissenting).

The INS v. AP opinion is no longer controlling authority because it was decided as a matter of federal common law prior to the recognition of the Erie doctrine. See National

-4-

Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir. 1997). The INS opinion "has long been regarded with skepticism by many courts and scholars and often confined strictly to its facts." Id. at 852 n.7; see also Cheney Bros. v. Doris Silk Corp., 35 F.2d 279, 280 (2d Cir. 1929) (Learned Hand, J.) ("We are to suppose that the court [in INS] meant to create a sort of common-law patent or copyright for reasons of justice. Either would flagrantly conflict with the scheme which Congress has for more than a century devised to cover the subject-matter."); Restatement (Third) of Unfair Competition § 38 cmt. B (1995) ("Although the decision has been frequently cited, it has been sparingly applied. Notwithstanding its longevity, the decision has had little enduring effect.").

The theory of "misappropriation" remains viable today only to the extent that individual states have recognized such a cause of action under their own state common laws of unfair competition. Some states, like New York, have recognized some variation of the doctrine, although many of those cases "are simply not good law." NBA, 105 F.3d at 851-82. Other states have flatly rejected it. See, e.g., Triangle Publications, Inc. v. New England Newspaper Pub. Co., 46 F. Supp. 198, 203 (D. Mass. 1942) ("Except where there has been a breach of trust or contract, it is not unfair competition in Massachusetts to use information assembled by a competitor") (citations omitted).

The opinion (as well as any state doctrines that purport to follow it) is particularly tenuous today in light of Feist Publications. In Feist, a unanimous Supreme Court put to rest any argument that an author is entitled to protection of uncopyrighted facts merely because of the author's effort or cost in collecting and reporting those facts. This so-called "sweat of the brow" doctrine "eschewed the most fundamental axiom of copyright law – that no one may copyright facts or ideas." Feist, 499 U.S. at 353.

To the contrary, the underlying facts "may not be copyrighted and are part of the public domain available to every person." Id. at 348 (quoting Miller, 650 F. 2d at 1368). This is a Constitutional requirement to encourage free access to information:

> It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. As Justice Brennan has correctly observed, however, this is not "some unforeseen byproduct of a statutory scheme." Harper & Row, 471 U.S., at 589 (dissenting opinion). It is, rather, "the essence of copyright," ibid., and a constitutional requirement. The primary objective of copyright is not to reward the labor of authors, but "to promote the Progress of Science and useful Arts." Art. I, § 8, cl. 8. Accord, Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975). To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. Harper & Row, supra, at 556-557.

Feist, 499 U.S. at 349-50.

The Court specifically held that the defendant was free to copy telephone listings from the plaintiff's telephone book for its own competing phone book. The Court emphasized that there was nothing "unfair" about this result because the listings were unprotected facts. Under copyright law, "the raw facts may be copied at will. This result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art." Id. at 350. See also Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP, 303 F.3d 460, 466 (2d Cir. 2002) (noting modern view that "historical, scientific, or factual information belongs in the public domain, and that allowing the first publisher to prevent others from copying such information would defeat the objectives of copyright by impeding rather than advancing the progress of knowledge").

The Feist opinion cited the INS v. AP opinion favorably only for the proposition that the underlying facts in news articles are not subject to copyright protection. See 499 U.S. at 353-54 (the INS opinion "flatly rejected, however, the notion that the copyright in an article extended to the factual information it contained"). Although Feist did not expressly overrule INS v. AP, it gutted any rationale that a business could obtain "property rights" in uncopyrighted facts merely

through effort and expense, or that it is "unfair" for a competitor to copy facts that are in the public domain.  The views of Justices Holmes and Brandeis have ultimately prevailed, and INS has been filed away as an accident of history.  To the extent any state law still attempts to breath life into the case or its doctrine, it too must fall.

### 1.     Florida Law Does Not Recognize a Cause of Action for "Misappropriation"

A federal court sitting in diversity must consider what law the state courts of the implicated states would apply.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  As discussed below, this case is controlled by Florida substantive law, and Florida would not recognize a cause of action for "misappropriation" under the facts presented.

The Florida law of unfair competition is limited to traditional causes of action relating to trademark infringement and false advertising.  "Rather than going to the question of copying in the manufacture of a product, 'unfair competition goes to the question of marketing.'"  Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007) (quoting B. H. Bunn Co. v. AAA Replacement Parts Co., 451 F.2d 1254, 1263 (5th Cir. 1971)).  A claim for unfair competition requires elements of "(1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion."  Id. at 1324; accord North Atlantic Marine, Ltd. v. Sealine Int'l, Ltd., 2007 U.S. Dist. LEXIS 23046, *34 (S.D. Fla. Mar. 29, 2007) (citing M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1493-94 (11th Cir. 1990)).

The Florida state courts have specifically rejected attempts to import theories of "misappropriation" under INS v. AP into their common law.  In Glazer v. Hoffman, 16 So. 2d 53, 55-56 (Fla. 1943), both parties were stage magicians, and the plaintiff complained that the defendant had stolen his magic act.  The plaintiff argued that his tricks were entitled to protection under INS because "the stunt is a child of his brain, created by heavy investments of time and

labor." Id. at 813.  The Florida Supreme Court disagreed.  It recognized that the plaintiff's act

was not protected under copyright law and held that he was not entitled to additional "property

rights" under Florida common law:  "[T]he general rule is that an owner of literary or intellectual

property terminates his private interest or common law rights by publication, which operates as a

dedication and termination of his private rights."  Id. at 814 (citations omitted).

In other words, the Florida Supreme Court correctly anticipated Feist.  It recognized that

intellectual property is defined by existing copyright, trademark, patent and trade secret law.

Absent such protection, there is nothing wrong or unfair about another party (whether a magician

or a news service) copying the plaintiff's product for commercial gain.

Other opinions have similarly held similarly.  See North Atlantic Marine, 2007 U.S. Dist.

LEXIS 23046 at *34-38 (holding that allegations of "bad faith misappropriation of the labors and

expenditures of another" under INS failed to state a claim under Florida law); Pena-Rivera v.

Editorial Am., 1997 U.S. Dist. LEXIS 11795 (S.D. Fla. May 5, 1997) (granting motion to

dismiss various state tort theories of misappropriation and unjust enrichment under INS as

preempted under the Copyright Act); Herald Publishing Co. v. Florida Antennavision, Inc., 173

So. 2d 469, 474-75 (Fla. Dist. Ct. App. 1965) (declining to follow INS v. AP; "Relief beyond

what the copyright laws confer must be sought from Congress, not the courts.") (quoting Cable

Vision, Inc. v. KUTV, Inc., 335 F.2d 348 (9th Cir. 1964)).

In a recent analogous case, the Florida Supreme Court again rejected "the suggestion that

it is 'unfair' for one to copy the work of another" in a manner expressly permitted under federal

patent and copyright law, and the court emphasized the countervailing public benefit of free

competition.  Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 515 So. 2d 220, 223 (Fla. 1987),

aff'd, 489 U.S. 141 (1989).  The court specifically held that a Florida statute that purported to

grant proprietary rights in the shape of boat hulls was preempted by federal patent law, a holding subsequently affirmed by the United States Supreme Court.

These Florida opinions are consistent with the modern view of "misappropriation" doctrine stated in Section 38 of the <u>Restatement (Third) of Unfair Competition</u>, namely that it should be rejected as amorphous and contrary to traditional sources of intellectual property law:

> [T]he law has long recognized the right of a competitor to copy the successful products and business methods of others absent protection under patent, copyright, or trademark law. …
>
> Although courts have occasionally invoked the <u>INS</u> decision on an ad hoc basis to grant relief against other commercial appropriations, they have not articulated coherent principles for its application.  It is clear that no general rule of law prohibits the appropriation of a competitor's ideas, innovations, or other intangible assets once they become publicly known. … The *better approach*, and the one most likely to achieve an appropriate balance between the competing interests [in federal copyright and patent law], *does not recognize* a residual common law tort of misappropriation.

<u>Id.</u>, cmt. B (citations omitted and emphasis added).  <u>See also</u> Richard A. Posner, <u>Misappropriation:  A Dirge</u>, 40 Hous. L. Rev. 621 (2003) (arguing that <u>INS</u> was an aberration and that the doctrine of misappropriation "can be jettisoned, so far as intellectual property is concerned at any rate, without loss, and should be").

Under the facts of this case, the Florida Supreme Court today would not recognize a common law theory of "misappropriation" to restrict competition, particularly absent a mandate from the Florida legislature.  It would follow its prior precedent, as well as the modern approach taken in the <u>Restatement</u> and courts like those of Massachusetts, <u>see</u> <u>Triangle Publications</u>, 46 F. Supp. 2d at 203, and hold that these allegations fail to state a claim for unfair competition.

### 2.    New York Law Does Not Recognize a Claim for "Misappropriation" Under These Facts

Although New York courts recognize a cause of action that they call "misappropriation," they would not apply it under the facts as alleged, i.e. merely copying information that is freely

available on the Internet.  It is true there are some New York opinions that characterize misappropriation broadly, using such vague and unhelpful definitions as a tort that proscribes "any form of commercial immorality" or "endeavoring to reap where one has not sown" or "taking the skill, expenditures and labors of a competitor."  See Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001) (quotations omitted); accord Capitol Records, Inc. v. Naxos of America, Inc., 830 N.E.2d 250, 266 (N.Y. 2005).   This, however, is nothing more than a version of "I know it when I see it."

     The more current trend, however, is to articulate some limiting principles.  Today, "[t]he essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by *obtaining access* to plaintiff's business idea *either through fraud or deception, or an abuse of a fiduciary or confidential relationship*."  Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 198 (2d Cir. 2001) (quoting Katz Dochrermann & Epstein, Inc. v. Home Box Office, 1999 U.S. Dist. LEXIS 3971 (S.D.N.Y. Mar. 31, 1999)) (emphasis added); see also ABC, Inc. v. Flying J, Inc., 2007 U.S. Dist. LEXIS 13252, *26 (S.D.N.Y. Feb. 22, 2007) ("New York courts have, however, clearly articulated that an element of bad faith is essential to establishing liability on a claim of unfair competition.") (citations omitted); Dow Jones & Co. v. Int'l Secs. Exch., Inc., 451 F.3d 295, 302 (2d Cir. 2006) (holding that at a minimum, misappropriation requires "some wrongful appropriation or use of the plaintiffs' intellectual property"); Stewart v. World Wrestling Fedn. Entm't, Inc., 2004 U.S. Dist. LEXIS 26533, *17 (S.D.N.Y. Jan. 11, 2005) (holding that misappropriation requires "the existence of a confidential or fiduciary relationship between the parties"); Capitol Records, Inc. v. Naxos of Am., Inc., 262 F. Supp. 2d 204, 213-15 (S.D.N.Y. 2003) ("unauthorized copying without more is not actionable" absent fraud or deception).

In other words, there must be something cognizably "unfair" as a matter of law before conduct can constitute "unfair competition." "New York law in this area is indeed flexible, but it is not that flexible." Wilson v. Electro Marine Sys., Inc., 915 F.2d 1110, 1044 (7th Cir. 1990) (quoting Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980)).

Here, AP does not allege that AHN *obtained access to the information* through fraud or deception, or an abuse of a fiduciary or confidential relationship. AP specifically alleges that AHN obtained news facts on the Internet after those facts were publicly available. See, e.g., First Amended Complaint ¶ 57. This is not a case like INS v. AP where INS had obtained access to the news *before it was published* through demonstrably unfair practices like bribery and intercepting telegraph communications. See INS, 248 U.S. at 231; see also College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 674 (1999) (characterizing INS as a case that amounted to "theft of proprietary information"); Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646, 650 (2d Cir. 1959) (noting that the INS case was "sui generis" and its holding "was based largely upon fraud"). This is also not a case where a party breached a contractual or fiduciary duty to protect confidential and time-sensitive information, such as proprietary financial data.

AP contends that AHN is "misappropriating" its "property" and "free-riding" on AP's work, but this merely begs the question of whether this constitutes copyright infringement:

> Whether or not reproduction of another's work is "immoral" depends on whether such use of the work is wrongful. If, for example, the work is in the public domain, then its use would not be wrongful. Likewise, if, as here, the work is unprotected by federal law because of lack of originality, then its use is neither unfair nor unjustified.

Financial Information, Inc. v. Moody's Invest. Serv., Inc., 808 F.2d 204, 208 (2d Cir. 1986). Competitors are free to copy unprotected facts, and "this result is neither unfair nor unfortunate."

Feist, 499 U.S. at 350.  New York law does not recognize a claim for "misappropriation" that is premised merely on allegations that Defendants copied information posted on public websites.[1]

### 3.    If There Is a Conflict of Law, Florida Law Controls

It appears that, in relation to AP's "misappropriation" cause of action, neither New York nor Florida would recognize the claim under the facts of the present case.  To the extent that is so, there is no need to undertake a conflict of laws analysis.  However, if there is a conflict, Florida substantive law must control.

This Court is called upon in the case of a conflict to apply the conflict of laws approach of the forum state, New York.  See Torah Soft, Ltd. v. Drosnin, 224 F. Supp. 2d 704, 719 (S.D.N.Y. 2002).  New York courts follow an "interest analysis" by applying "the law of the jurisdiction having the greatest interest" in the claim.  Id.  The "locus of the tort" is the dominant consideration.  Id. at 720.  In other words, the Court must determine "the place which has the most significant contacts with the matter in dispute, thereby giving the place with the most interest in the problem paramount control over the legal issues arising in the case."  Stewart v. World Wrestling Fed'n Ent., Inc., 2004 U.S. Dist. LEXIS 26533, *4-6 (S.D.N.Y. Jan. 11, 2005) (quoting Elgin Sweeper Co. v. Melson, Inc., 884 F. Supp. 641, 650 n.12 (N.D.N.Y. 1995)).

In the present dispute, Florida has the most significant interest in the claim.  It is the "locus of the [alleged] tort" and has the most significant contacts with the underlying facts of alleged misappropriation.  Defendant AHN Media Corp. and the individual defendants are all

---

[1] AP alleges that its "news content" (i.e. facts) remains "proprietary" because the websites of AP's news service customers contain terms of use that purport to restrict readers from copying facts in news stories.  See, e.g., First Amended Complaint ¶ 33.  However, even if AP could establish that such a provision existed on the sites where AHN got its facts, such a provision would be unenforceable.  Once the articles have been published to the world, the underlying facts are no longer confidential.  Any protection must come under copyright law.  See RCA Manufacturing Co. v. Whiteman, 114 F.2d 86, 90 (2d Cir. 1940) (Learned Hand, J.) (holding that notices on phonograph records stating "not licensed for broadcast" and "only for non-commercial use on phonographs in homes" could not be enforced under a theory of unfair competition to obtain protection in excess of copyright law).  Moreover, it would be the sites and not AP that would have privity to attempt to enforce the (unenforceable) terms.

citizens of Florida, and their only business office is located in Florida.  First Amended Complaint ¶¶ 13-15; Declaration of W. Jeffrey Brown ¶ 2-7 (ECF Doc. No. 9).  Defendant All Headline News Corp. was a Florida corporation, but it no longer exists.  Brown Decl. ¶ 2.

AHN hires writers out of its Florida office, and they write stories at their individual home offices or places of business around the world.  The draft articles are transmitted back to Florida for final editing and then published using AHN's web server that is physically located in Florida.  See First Amended Complaint ¶¶ 56-60; Brown Decl. ¶ 7, 9.  The alleged "misappropriation" occurred (if at all) in Florida, where the accused articles were edited and published, where the business office handling customer accounts is located, where the defendants are citizens.  AHN does not have an office or assets in New York, and none of the accused conduct took place in New York.[2]  Brown Decl. ¶ 8.

AP simply alleges that it feels harm in New York, where its headquarters are located, but the same would be true for any case with a New York plaintiff.  The analysis does not turn on that issue.  See Torah Soft, 224 F. Supp. 2d at 720 (holding that Israeli law of unfair competition applied where all of the accused conduct occurred in Israel, even though the alleged injury was felt in New York); see also Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 698, 718 (2d Cir. 1992) (affirming that Texas substantive law applied for misappropriation claim under equivalent New Jersey "government interest" test where the alleged misappropriation occurred in Texas, despite injury being felt at plaintiff's headquarters in New York).[3]

---

[2] Although AHN Media once had a mail drop and a telephone answering service in New York (which were discontinued before this suit began), Brown Decl. ¶ 6, those facts have no connection to the specific alleged misappropriation in this case.

[3] In Computer Associates, the plaintiff had its principal place of business in New York.  The court applied a New Jersey conflicts analysis because the action had been filed there, before being transferred to the E.D.N.Y.

### 4.    Any Claim of Misappropriation under These Facts Is Preempted

If the First Amended Complaint stated a claim for misappropriation under Florida or New York law, such a claim – under the facts presented – would be preempted.  The Copyright Act of 1976 expressly preempts all state legal and equitable rights "that are equivalent to any of the exclusive rights within the general scope of copyright" as defined within the Copyright Act.  17 U.S.C. § 301(a).  See, e.g., Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 785 (5th Cir. 1999) ("With a few exceptions, all causes of action falling within the scope of the Copyright Act are expressly preempted.").[4]

To be preempted, the claim must both fit within the "general scope" of copyright law and fit within copyrighted "subject matter."  Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004).  As this Court recently recognized,

> Unless a state law claim contains "extra elements that make it qualitatively different from a copyright infringement claim" it is preempted by federal law and must be dismissed.  To determine whether a claim is qualitatively different, the court should consider "what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced."

Flying J, 2007 U.S. Dist. LEXIS 13252 at *31 (quoting Briarpatch, 373 F.3d at 305).

Here, there is nothing "qualitatively different" between AP's misappropriation claim and its copyright infringement claim.  Unlike in INS v. AP, AP here is attempting to assert theories of both copyright infringement and misappropriation *at the same time* and *for the same*

---

[4] In contrast, the Copyright Act of 1909 did not preempt additional state laws.  That act provided only relatively narrow protection, and courts were free to fill in the gaps by recognizing additional common law rights under principles of equity (as the Supreme Court itself did in INS).  For example, the 1909 Act did not protect sound recordings, so states recognized a form of common law copyright protection for sound recordings under theories of unfair competition.  See Capitol Records, 830 N.E.2d at 261-64 (noting that "states were free to act with regard to sound recordings precisely because Congress had not"); see also CBS, Inc. v. Garrod, 622 F. Supp. 532, 535-36 (M.D. Fla. 1985) (following the "generally prevailing view of unfair competition" to recognize a cause of action for "misappropriation" of sound recordings that were created prior to 1972).  This, of course, is distinct from the so-called "hot news" theory of misappropriation.

*underlying conduct.*  Both causes of action rely on allegations that AHN "surfed the web" to find AP news stories on the Internet, which AHN then "copied," "rewrote" and "paraphrased" for its own news articles.  First Amended Complaint ¶ 57.  AP is attempting to rely on state tort law as a back-up plan in case AHN's conduct is *permitted* and *entirely lawful* under federal copyright law (which it is).

AP attempts to dress up its misappropriation claim through additional allegations that it has engaged in "significant and costly efforts" in reporting its news articles, that those articles are "highly time-sensitive," that AHN "directly competes" with AP in the marketplace, and that AHN is unfairly "free riding" on AP's hard work and industry.  First Amended Complaint ¶¶ 74-78.  *However, this is merely a reiteration of the sweat of the brow doctrine.*  As made abundantly clear in Feist, "free riding" – as AP may wish to characterize it – is expressly permitted, so long as it does not constitute copyright infringement.  Likewise, the Copyright Act protects all forms of original expression, including "time-sensitive" publications.  Although the AP claims that AHN presents a threat to its very existence (however doubtful that assertion may be), that allegation merely alleges the scope of the supposed injury.  If AP can establish copyright infringement, it will have the full remedies permitted by Congress.  If not, the allegation that AHN is presenting a serious competitive threat *through lawful conduct* merely describes free competition under Feist.  These sorts of allegations do not "transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim."  Briarpatch, 373 F.3d at 306.

AP seems to think it finds support in NBA v. Motorola.  In that opinion, the Second Circuit held that the alleged "misappropriation" of sports scores *did not survive preemption* under the Copyright Act.  NBA, 105 F.3d at 853-54.  The court went on to hypothesize that some

narrow claim for "hot news" misappropriation might survive preemption, and it articulated a five-factor test of what it considered to be relevant factors.[5]  Importantly, no court has ever applied the Second Circuit's factors to actually find misappropriation on facts like these.  A close inspection of the factors reveals that they are nothing more than sweat of the brow (expenditure of time and money and a sense of loss by the would-be rights-owner), and AHN believes that the Second Circuit would have had to confront the preemption issue squarely if it faced a closer case.  Moreover, the Second Circuit did not suggest that *every* claim meeting the five factors would of necessity survive preemption; that plainly would have been dicta.

In contrast, the facts of the present case were more squarely presented in Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737 (D. Md. 2003).  There, the plaintiff brought a cause of action for "hot news" misappropriation based on improper use and disclosure of time-sensitive financial information.  The plaintiff argued that was improper "free riding" under INS.  The district court disagreed, granting summary judgment.  It recognized that none of these allegations made the claim *different in kind* from one brought under copyright law, clarifying NBA v. Motorola.  "Free-riding may be a pejorative description of copying, but it is still copying."  Id. at 736 (citation omitted).  Likewise, none of the other factors made the allegations fundamentally different from a copyright claim:  "The cost of generating the information, its time-sensitivity, and direct competition between the parties merely define pre-existing conditions; the threat to the plaintiff's business merely identifies a consequence of the act of 'free-riding.'"  Id.

---

[5] "In our view, the elements central to an INS claim are:  (i) the plaintiff generates or collects information at some cost or expense, (ii) the value of the information is highly time-sensitive, (iii) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it, (iv) the defendant's use of the information is in direct competition with a product or service offered by the plaintiff, [and] (v) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." NBA, 105 F.3d at 852.

The NBA and Lowry's opinions note that there may be some theory of misappropriation that survives preemption.  For example, if the claim is premised on some wrongful acts *other than copying*, such as fraud or bribery – like the facts in INS v. AP itself – those allegations may provide the necessary extra element.  See, e.g., Computer Assocs., 982 F.2d at 719 ("where the use of copyrighted expression is simultaneously the violation of a duty of confidentiality established by state law, that extra element renders the state right qualitatively distinct from the federal right"); see also Stewart, 2004 U.S. Dist. LEXIS 26533 at *7-20 (S.D.N.Y. Jan. 11, 2005) (holding that allegations involving a "confidential or fiduciary relationship between the parties" survive preemption but mere allegations of "unjust enrichment" through use of plaintiff's information do not).

However, those are not the facts here.  Any claim of "misappropriation" based on an allegation of merely copying information from a public website must be preempted.  See Computer Assocs., 982 F.2d at 717 ("unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted"); Lipscher v. LRP Pubs., Inc., 266 F.3d 1305, 1310-12 (11th Cir. 2001) (holding that "acquisition misconduct" tort claim grounded in alleged misappropriation of information through false pretenses was preempted because it fit within "the general scope of copyright"); Alcatel USA, 166 F.3d at 788-89 ("because [plaintiff] has failed to demonstrate the presence of any element that renders different in kind its rights under state and federal law, [its] state misappropriation claim is preempted by federal copyright law").  Moreover, the requirement that unprotected facts belong to the public domain is Constitutional.  Feist, 499 U.S. at 349-50.

### B.    DIGITAL MILLENNIUM COPYRIGHT ACT (COUNT III)

AP alleges in Count III that AHN has removed or altered "copyright management information" in violation of the Digital Millennium Copyright Act (the DMCA), 17 U.S.C. §§

1202(b)(1) and (b)(3).  In support of this claim, AP alleges that AHN copied information from

AP's news articles but failed to include AP's copyright notices (e.g. "© 2007 Associated Press")

within AHN's own articles.

This does not state a claim under the DCMA.  Section 1202 was created to prevent the

removal of digital copyright management information, such as metadata that can be embedded in

electronic files.  The purpose was "to protect copyright management performed by the

technological measures of automated systems."  Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc.,

524 F. Supp. 2d 1184, 1200 (C.D. Cal. 2007) (quoting IQ Group, Ltd. v. Wiesner Publishing

LLC, 409 F. Supp. 2d 587, 597 (D.N.J. 2006)).  For example, certain audio player software can

search for embedded digital "watermarks" before allowing playback of a song file.  Section 1202

operates in cooperation with Section 1201, which prohibits the circumvention of technological

measures associated with those digital files.  See, e.g., Gregerson v. Vilana Fin., Inc., 2008 U.S.

Dist. LEXIS 11727, *17-21 (D. Minn. Feb. 15, 2008) (affirming liability under Section 1202

where defendant had removed a hidden digital watermark from plaintiff's digital photographs).

AP contends that these DMCA provisions reach *any form* of copyright management

information, including a printed copyright notice such as "© 2007 Associated Press."  This

reading of the provision would have the effect of creating a separate cause of action for removal

of copyright management information in nearly *every* copyright case.  As the court explained in

Textile Secrets, such an interpretation is facially unreasonable in light of the detailed legislative

history and intent of the Act.  See Textile Secrets, 524 F. Supp. 2d at 1196 (noting that such an

interpretation "would in effect give § 1202 limitless scope in that it would be applicable to all

works bearing copyright information").  Nor does the fact that AHN is alleged to have copied

from websites make AP's allegations "more digital."  See IQ Group, 409 F. Supp. 2d at 597-98

("Although the advertisements were sent via email, and thus likely copied and distributed as part of an automated process within a computer network environment, this does not bring the information removal [i.e. deleting plaintiffs logo and hyperlink] within § 1202.").

AP's interpretation is particularly unreasonable under the alleged facts. The First Amended Complaint does not assert that AHN circumvented any digital protection of copyright information or that AHN made exact digital copies of AP's articles (the harm the DMCA was designed to prevent and punish); rather, AP is attempting to apply these provisions in a situation where AHN is charged with writing its own articles by paraphrasing AP information. These allegations fail to state a claim under Section 1202.

AP appears to rely on one outlying case, McClatchey v. AP, 2007 U.S. Dist. LEXIS 17768 (W.D. Pa. March 9, 2007), where the court denied AP's motion for summary judgment in relation to AP's own alleged violations of Section 1202 based on AP's removal of a photographer's written copyright notice from a photograph. In its summary judgment motion, AP correctly argued that a "textual copyright notice" is not protected under Section 1202, and urged the court to follow IQ Group. Declaration of Robert L. Jacobson (submitted herewith), Ex. A, at 21. The McClatchey opinion is contrary to the well-reasoned opinions of Textile Secrets and IQ Group, as AP has explained under other circumstances.

### C.    TRADEMARK INFRINGEMENT (COUNT IV)

AP alleges in Count IV that AHN has infringed the AP's trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1). However, this count is entirely conclusory.

The crux of the First Amended Complaint is that Defendants *have not used* AP's trademarks. It alleges that AHN has engaged in a practice of copying AP's articles while deleting any references to AP to cover their tracks. See, e.g., First Amended Complaint ¶ 4 (alleging that AHN instructs employees "to disguise the fact that the rewritten stores are not

original to or licensed by AHN by deleting the copyright and other identifying information"); id., ¶ 7 (alleging that AHN "misleadingly represents that AHN reports news stories independently gathered by AHN reporters, when in fact AHN's news reports are copied from AP and other legitimate news services").  To establish trademark infringement, the AP must show that AHN used a trademark in commerce in a manner likely to cause consumer confusion.  As a matter of law, a *failure to use* a trademark cannot state a claim for trademark infringement.  Cf. 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 409-12 (2d Cir. 2005) (holding that use of hidden keywords for Internet advertisements was not an infringing "use in commerce").

AP makes only one allegation related to AHN *use* of an AP trademarks.  Specifically, AP observes that AHN has cited AP as a source for information within the text of some AHN articles.  See Amended Complaint ¶ 57 (alleging that Defendants' employees are instructed to copy portions of articles and "to attribute the directly copied portion [of an article] to the original source").  There are no other allegations in the First Amended Complaint that that AHN is using AP trademarks in commerce or causing consumer confusion.

In fact, the exhibits to the First Amended Complaint refute any theory of trademark infringement.  In each of the accused articles that AP attached to the complaint, AHN plainly indicated that the articles came from AHN, not from AP.  The articles contain the prominent "AHN" stylized logo and a byline identifying the AHN reporter or editor (such as "Julie Farby - AHN News Writer").  First Amended Complaint, Exs. 19-24.  Each article is also marked with an AHN copyright notice.  Id.  There is no language suggesting that these articles were written, licensed or in any manner approved by AP.

Of the six AHN articles attached to the First Amended Complaint, five of them do not contain any reference whatsoever to AP.  Only one article does, and it provides no more than a

truthful attribution of certain information to AP.  Specifically, the article attached as Exhibit 22 (about the capture of a large alligator in Florida) states near the end:  "According to an AP report Douglas confirmed the captured alligator was the one that attacked Williams…."  First Amended Complaint, Ex. 22.

This language "according to an AP report" clearly states that the cited information is coming from a separate party, AP.  Everyone who reads news articles has seen these sorts of attribution statements.  Any reasonable consumer reviewing this article would realize that the article itself (as opposed to the attributed information) is coming from AHN.  This single reference of "according to" does not suggest that AP has somehow sponsored or approved the article.  To the contrary, it states just the opposite.

In other words, AHN is not referring to "AP" to *designate the source* of the AHN article but only to provide correct attribution for information from another party, i.e. AP.  To the extent this is even a use in commerce, it is a nominative fair use as a matter of law.  See Dow Jones, 451 F.3d at 307-08 (affirming dismissal of trademark claim where use was fair use); Car-Freshner Corp. v. S.C. Johnson & Son, 70 F.3d 267, 269 (2d. Cir. 1995) ("What mattes is whether the defendant is using the protected word or image descriptively, and not as a mark."); Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412-15 (S.D.N.Y. 2006) ("A defendant may use a plaintiff's trademark to identify the plaintiff's good so long as there is no likelihood of confusion about the source of defendant's product or the mark-holder's sponsorship or affiliation.").  These allegations fail to state a claim and must be dismissed.

### D.    UNFAIR COMPETITION UNDER THE LANHAM ACT (COUNT V) AND NEW YORK COMMON LAW (COUNT VI)

AP alleges in Counts V and VI that AHN has engaged in unfair competition in contravention of Section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), and under the common law

of New York.  These counts assert a hodgepodge of theories for false advertising, namely that
defendants have allegedly (1) misrepresented that they have a "news division" and offer a "news
service" when they do not actually have "real reporting staff" or a "news division,"
(2) misrepresented that they have permission from the AP to reproduce these reports, when they
do not have permission, and (3) "misleadingly conceal[ed] the actual origin of the news" in the
AHN's stories, without giving credit where credit is due.  First Amended Complaint ¶¶ 105, 113.

These allegations are an attempt to convert a copyright infringement claim into one for
unfair competition.  Although "[e]very copyright violation inherently involves some degree of
deception or misrepresentation as to the identity of the author and, thus, the likelihood of
consumer confusion," such allegations do not state a claim for unfair competition.  Pena-Rivera,
1197 U.S. Dist. LEXIS 11795 at *7.

First, AP has failed to allege any actionable statement by AHN relating to the AHN news
service itself.  AHN indisputably does provide a news service, in that its writers prepare news
articles that AHN licenses and distributes through its Internet news feeds to its clients.  If this
were not so, none of us would be here.  AP essentially complains that AHN does not provide a
"real news service" with "real reporters" according to an apparently high standard AP has set;
there can be no question, however, that AHN's statements about itself are literally true.

In Lipton v. Nature Co., 71 F.3d 464 (2d Cir. 1995), the Second Circuit affirmed
summary judgment of noninfringement under various Section 43(a) theories – notwithstanding a
verdict of copyright infringement – and rejected the plaintiffs "attempt to convert all copyright
claims into Lanham Act violations."  Id. at 473-74 (quoting Kregos v. Associated Press, 937 F.2d
700, 710-11 (2d Cir. 1991)).  The court specifically held that the defendant's public

representations that he had "thoroughly researched" his book, when most of it was actually copied, was mere puffery that failed to state a claim for false advertising. Id. at 474.

Second, AP has failed to allege any actionable statement by AHN in which AHN has misrepresented *to the public* that it has "permission" to use the AP's news stories. The First Amended Complaint only alleges that AHN has purportedly misled *its own employees*. See Amended Complaint ¶ 61 ("Brown and George have *falsely told AHN Writers* that that AHN has a license from AP") (emphasis added). AP has not alleged that AHN made any such representations "in commercial advertising or promotion" under Section 43(a)(1)(B). Absent any actionable material misrepresentation to the public, this theory fails to state a claim for false advertising. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 56-58 (2d Cir. 2002) (holding that oral statements and comments to various individuals failed to state claim for misstatements "in commercial advertising or promotion").

Third, AP's allegation that AHN "misleadingly concealed" the true source of the facts in its articles likewise fails to allege any actionable misrepresentation of fact. If anything, this allegation would sound in a theory of "reverse passing off" under Section 43(a)(1)(A), namely that AHN purportedly copied AP's news content and repackaged it as its own. However, in its letter to the Court dated March 20, 2008, AP rightfully conceded that such a theory of plagiarism cannot state a claim under Section 43(a)(1)(A) in light of Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), and AP expressly abandoned such a theory. Jacobson Decl., Ex. B at 4. See, e.g., Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc., 2007 U.S. Dist. LEXIS 55086, *5-7 (S.D.N.Y. July 27, 2007) (holding that theory of reverse passing off based on theory that defendant had copied without attribution "certain ideas and concepts contained at

Defendant's website" fails to state a claim under <u>Dastar</u>).  It is not clear from the First Amended Complaint whether AP seeks to resurrect such a theory, but it assuredly must fail.

Nor can AP survive dismissal of its trademark claims by recasting the same allegations false advertising under Section 43(a)(1)(B).  Such a theory of "a failure to attribute authorship to Plaintiff" does not allege misrepresentation of "'the nature, characteristics, qualities, or geographic origin of… [Defendant's] goods.'"  <u>Thomas Publ'g</u>, 2007 U.S. Dist. LEXIS 55086 at *9.  Such a claim is likewise foreclosed under <u>Dastar</u>.  <u>Id.</u> at *10.

The claims under the New York common law of unfair competition must be dismissed for the same reasons, as well as because they are preempted under Section 301(a) of the Copyright Act.  <u>See id.</u> at *11-13 (holding that allegations under New York unfair competition law that defendant "misappropriated [plaintiff's] 'labor and know-how'" without attribution and that defendant "misrepresents itself as the developer, originator, and rights-holder of [plaintiff's] intellectual property" were preempted); <u>see also</u> <u>Kregos v. Associated Press</u>, 3 F.3d 656, 655-56 (2d Cir. 1993) (holding that allegations of misrepresentation of origin under common law "contains no element to qualitatively differentiate it from those areas protected by copyright").

### E.    BREACH OF CONTRACT (COUNT VII)

AP seeks damages in Count VII for breach of contract.  AP contends that its subsidiary, Press Associates, Inc. entered into a contract with AmeriClicks, Inc. (which AP now asserts, without support, is AHN's predecessor-in-interest), on December 1, 2003; that AmeriClicks failed to render payment under the contract; that AP terminated the contract on March 31, 2005; and that AP is now entitled to damages of $4,198.84 (from AHN) plus interest for nonpayment. First Amended Complaint ¶¶ 45-52, 118-125 & Ex. 11.

This count should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of supplemental jurisdiction under 28 U.S.C. § 1367 because it is not so related to the copyright

and misappropriation claims that it forms part of the same case or controversy.  AP's contract claim contends that AmeriClicks exceeded the scope of the contract and that AmeriClicks failed to pay under the contract.  Those allegations are based on events that occurred more than three years ago, before the contract was terminated on March 31, 2005.  The AP cannot obtain additional remedies for events occurring after the contract expired.

In contrast, AP is asserting copyright infringement and misappropriation for events long after the contract was terminated.  The AHN articles that AP attached to the First Amended Complaint (and for which AHN met the subject matter jurisdictional requirement of providing Copyright Registrations) were published in September and October 2007.  AP specifically asserts that those articles *do not fall within* the scope of the contract.  See First Amended Complaint ¶ 53 ("Since March 31, 2005, AHN has not been licensed to make any use of AP content.").  Further, the named parties to the contract are different from those before the Court. In short, the causes of action do not "substantially overlap."  Blumatte v. Quinn, 521 F. Supp. 2d 308, 312-13 (S.D.N.Y. 2007).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should dismiss Counts I, III, IV, V, VI, and VII.[6]

---

[6] Defendants previously moved to dismiss the claims for individual liability against Defendants Brown and George and challenged personal jurisdiction over them.  AP has since substantially amended the factual allegations in its complaint.  Defendants will show the allegations are unsupported, but they appear to be sufficiently pleaded at this stage.

Dated: May 12, 2008
      New York, New York

                                     Respectfully submitted,

By:    s/ Eric A. Prager
        Eric A. Prager (EP-0964)
        Robert L. Jacobson (*pro hac vice*)
        DARBY & DARBY P.C.
        7 World Trade Center
        250 Greenwich Street
        New York, NY 10007
        Telephone: 212.527.7700
        Facsimile: 212.527.7701
        Email: eprager@darbylaw.com
        Email: rjacobson@darbylaw.com

        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Memorandum in Support of Defendants' Renewed Motion to Dismiss was submitted to the Court's CM/ECF system on May 12, 2008 for service through the Court's Electronic Transmission Facilities upon the following:

**Andrew Lawrence Deutsch**
**Christine M. Jaskiewicz**
DLA Piper US LLP (NY)
1251 Avenue of the Americas
New York, NY 10020

*Counsel for Plaintiff*


s/ Eric A. Prager
By:  Eric A. Prager