Andrew L. Deutsch
Christine M. Jaskiewicz
DLA Piper US LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone (212) 335-4500
Facsimile (212) 335-4501

Attorneys for Plaintiff
The Associated Press

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

THE ASSOCIATED PRESS,                              :
                                                   :          08 Civ. 323 (PKC)
                              Plaintiff,            :
                                                   :
             - against -                           :
                                                   :
ALL HEADLINE NEWS CORP., AHN MEDIA                 :
CORP., W. JEFFREY BROWN and DANIELLE               :
GEORGE,                                            :
                                                   :
                              Defendants.          :

----------------------------------------------------------- x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ...................................................................................................... 2

I.     AP STATES A CLAIM FOR MISAPPROPRIATION UNDER APPLICABLE NEW YORK LAW ............................................................................... 2

     A.     The INS Misappropriation Doctrine ................................................ 2

     B.     The INS Doctrine Remains Good Law ............................................ 5

     C.     AP Pleads A Valid Misappropriation Claim Under Applicable State Law ........... 8

           1.     New York and Florida Both Recognize the Hot-News Tort ..................... 8

           2.     New York Law Applies To AP's Hot-News Claim If There Is A Conflict of Law ................................................ 11

     D.     AP's Hot-News Claim Is Not Preempted ....................................... 13

II.     AP STATES A VALID CLAIM FOR ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA) ............................................. 15

III.     AP STATES A VALID CLAIM FOR TRADEMARK INFRINGEMENT ................. 18

IV.     AP STATES A VALID CLAIM UNDER SECTION 43(A) OF THE LANHAM ACT AND FOR NEW YORK COMMON-LAW UNFAIR COMPETITION ............. 20

V.     THE COURT HAS JURISDICTION OVER AP'S BREACH OF CONTRACT CLAIM ................................................................................... 23

CONCLUSION ................................................................................................... 24

## TABLE OF AUTHORITIES

Page

## CASES

*ABC, Inc. v. Flying J, Inc.,*
No. 06 Civ. 2967 (DAB), 2007 U.S. Dist. LEXIS 13252 (S.D.N.Y. Feb. 22, 2007) .............. 10

*Arciniaga v. General Motors Corp.,*
460 F.3d 231 (2d Cir. 2006) ................................................................................................ 17

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
126 S. Ct. 2455 (2006) ....................................................................................................... 17

*AroChem Int'l Inc. v. Buirkle,*
968 F.2d 266 (2d Cir. 1992) ............................................................................................... 11

*Associated Press v. Int'l News Serv.,*
240 F. 983 (S.D.N.Y. 1917), *aff'd*, 245 F. 244 (2d Cir. 1917) ............................................. 4

*Audio Sys. of Fla. Inc. v. Siimplexgrinnell LP,*
68 U.S.P.Q.2d (BNA) 1681 (M.D. Fla. 2003) .................................................................... 11

*Bell v. Reno,*
218 F.3d 86 (2d Cir. 2000) ................................................................................................. 17

*Bond Buyer v. Dealers Digest Publishing Company,*
25 A.D.2d 158, 267 N.Y.S. 2d 944 (1st Dep't 1966) ............................................................ 9

*Briarpatch, Ltd, L.P. v. Phoenix Pictures, Inc.,*
373 F.3d 296 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005) ........................................ 23

*Cable Vision, Inc. v. KUTV, Inc.,*
335 F.2d 348 (9th Cir. 1964) .............................................................................................. 10

*Capitol Records, Inc. v. Naxos of Am., Inc.,*
262 F. Supp. 2d 204 (S.D.N.Y. 2003) ................................................................................... 9

*Carpenter v. United States,*
484 U.S. 19 (1987) ............................................................................................................... 7

*CBS, Inc. v. Garrod,*
622 F. Supp. 532 (M.D. Fla. 1985) ..................................................................................... 11

*Computer Associates Int'l v. Altai, Inc.,*
775 F. Supp. 544 (E.D.N.Y. 1991) ..................................................................................... 12

*Computer Associates Int'l v. Altai, Inc.,*
982 F.2d 693 (2d Cir. 1992) ............................................................................................... 12

TABLE OF AUTHORITIES
(continued)

Page

*Conn. Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) ................................................................................ 17

*Cromer Fin. Ltd. v. Berger,*
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) ................................................... 12

*Dastar Corp. v. Twentieth-Century Fox Film Corp.,*
   539 U.S. 23 (2003)............................................................................. 2, 22

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.,*
   451 F.3d 295 (2d Cir. 2006) ................................................................. 10

*Drenis v. Haligiannis,*
   452 F. Supp. 2d 418 (S.D.N.Y. 2006) ................................................. 12

*Eldred v. Ashcroft,*
   537 U.S. 186 (2003) .............................................................................. 14

*ElectroLux Corp. v. Val-Worth, Inc.,*
   6 N.Y.2d 556, 190 N.Y.S.2d 977 (1959) ............................................... 9

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
   314 F.3d 48 (2d Cir. 2002) ................................................................... 22

*Federal Land Bank v. Bismarck Lumber Co.,*
   314 U.S. 95 (1941)................................................................................ 16

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,*
   499 U.S. 340 (1991) ....................................................................... 6, 7, 9

*Financial Information, Inc. v. Moody's Investors Serv., Inc.,*
   808 F.2d 204 (2d Cir. 1986) .............................................................. 9, 14

*Fred Wehrenberg Circuit of Theatres, Inc. v. Moviefone, Inc.,*
   73 F. Supp. 2d 1044 (E.D. Mo. 1999) ................................................. 10

*Glazer v. Hoffman,*
   16 So. 2d 53 (Fla. 1943) ...................................................................... 10

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co.,*
   449 F.3d 377 (2d Cir. 2006) ................................................................. 12

*Gurary v. Winehouse,*
   235 F.3d 792 (2d Cir. 2000) ................................................................. 13

*Harris v. Provident Life & Accident Ins. Co.,*
   310 F.3d 73 (2d Cir. 2002) ................................................................. 8, 9

## TABLE OF AUTHORITIES

(continued)

Page

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*,
    530 U.S. 1 (2000)...............................................................................17

*Herald Publishing Co. v. Florida Antennavision, Inc.*,
    173 So.2d 469 (Fla. Dist. Ct. App. 1965) ....................................10

*IBM Corp. v. Liberty Mutual Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004) ...........................................................8

*In re Allstate Ins. Co.*,
    81 N.Y.2d 219, 597 N.Y.S.2d 904 (1993) ......................................8

*International News Service v. Associated Press*,
    248 U.S. 215 (1918)......................................................1, 9, 10, 14

*ITC Ltd. v. Punchgini, Inc.*,
    9 N.Y.3d 467, 850 N.Y.S.2d 366 (2007) ........................................9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941).........................................................................8

*KVOS, Inc. v. Associated Press*,
    299 U.S. 269 (1936).........................................................................7

*La Salle Nat'l Bank v. Duff & Phelps Credit Rating Co.*,
    951 F. Supp. 1071 (S.D.N.Y. 1996) ..............................................11

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
    186 F. Supp. 2d 592 (D. Md. 2002)...............................................14

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
    271 F. Supp. 2d 737 (D. Md. 2003)...............................................14

*Lynch Jones & Ryan, Inc. v. Standard & Poor's*,
    Index No. 117064/97, P.C. No. 13165, 1998 N.Y. Misc. LEXIS 334 (Supreme Ct.,
    N.Y. County, June 11, 1998) ...........................................................9

*McClatchey v. The Associated Press*,
    No. 3:05-cv-145, 2007 U.S. Dist. LEXIS 17768 (W.D. Pa. Mar. 9, 2007).............17

*McKevitt v. Pallasch*,
    339 F.3d 530 (7th Cir. 2003) .....................................................6, 10

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
    938 F.2d 1544 (2d Cir. 1991) ........................................................21

## TABLE OF AUTHORITIES
(continued)

Page

*Merck & Co. v. Mediplan Health Consulting, Inc.*,
  425 F. Supp. 2d 402 (S.D.N.Y. 2006) .................................................................. 19

*Morris Commc'ns. Corp. v. PGA Tour, Inc.*,
  117 F. Supp. 2d 1322 (M.D. Fla. 2000), *later case at* 235 F. Supp. 2d 1269 (M.D. Fla.
  2002), *aff'd*, 364 F.3d 1288 (11th Cir. 2004) ......................................................... 11

*Mylan Pharmaceuticals, Inc. v. Procter & Gamble, Inc.*,
  443 F. Supp. 2d 453 (S.D.N.Y. 2006) .................................................................. 21

*Nasdaq Stock Mkt. v. Archipelago Holdings*,
  336 F. Supp. 2d 294 (S.D.N.Y. 2004) .................................................................. 19

*National Basketball Association v. Motorola, Inc.*,
  105 F.3d 841 (2d Cir. 1997) (*NBA*) ............................................................... passim

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ............................................................................... 19

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
  85 F. Supp. 2d 282 (S.D.N.Y. 2000) .................................................................... 12

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) .................................................................. 12

*Pottstown Daily News Publ'g Co. v. Pottstown Broadcasting Co.*,
  411 Pa. 383, 192 A.2d 657 (1963) ....................................................................... 10

*PPX Enters., Inc. v. Audiofidelity Enters., Inc.*,
  818 F.2d 266 (2d Cir. 1987) ................................................................................ 21

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) ............................................................................................ 17

*Sack v. Low*,
  478 F.2d 360 (2d Cir. 1973) ................................................................................ 12

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*,
  483 U.S. 522 (1987) .............................................................................................. 7

*Schultz v. Boy Scouts of Am., Inc.*,
  65 N.Y.2d 189, 491 N.Y.S.2d 90 (1985) .............................................................. 11

*Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP*,
  303 F. 3d 460 (2d Cir. 2002) ................................................................................. 8

TABLE OF AUTHORITIES
(continued)

Page

*Stewart v. World Wrestling Fed'n. Entm't, Inc.*,
   No. 03-cv-2468 (RLC), 2004 U.S. Dist. LEXIS 26533 (S.D.N.Y. Jan. 11, 2005)................... 10

*Stoneworks, Inc. v. Empire Marble & Granite, Inc.*,
   No. 98-2017-CIV-HIGHSMITH, 1998 U.S. Dist. LEXIS 21762 (S.D. Fla. Nov. 20,
   1998) ............................................................................................................. 11

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
   280 F.3d 175 (2d Cir. 2001) ....................................................................... 10

*Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*,
   524 F. Supp. 2d 1184 (C.D. Cal. 2007) ........................................... 16, 17

*The IQ Group, Ltd. v. Wiesner Publishing, LLC*,
   409 F. Supp. 2d 587 (D. N.J. 2006) .................................................. 16, 17

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
   492 F. Supp. 2d 1314 (M.D. Fla. 2007) .............................................. 11

*Torah Soft, Ltd. v. Drosnin*,
   224 F. Supp. 2d 704 (S.D.N.Y. 2002) .................................................. 12

*West v. Gibson*,
   527 U.S. 212 (1999).................................................................................. 16

*Wolde-Meskel v. Vocational Instruction Project Community Servs., Inc.*,
   166 F.3d 59 (2d Cir. 1999) ....................................................................... 23

**STATUTES**

17 U.S.C. § 106 ..................................................................................................13

17 U.S.C. §301(a) .........................................................................................2, 13, 23

17 U.S.C. § 504(c) ............................................................................................24

15 U.S.C. § 1125(a)(1)(B) ..............................................................................20

17 U.S.C. § 1202(b)(1) ....................................................................................15

17 U.S.C. § 1202(b)(3) ....................................................................................15

17 U.S.C. § 1202(c)(3).....................................................................................16

**RULES**

Fed. R. Civ. P. 11 .............................................................................................13

5

## TABLE OF AUTHORITIES

(continued)

**Page**

Fed. R. Civ. P.12(b)(6)..................................................................................................2

## __OTHER AUTHORITIES__

H.R. No. 94-1476 at 132, *reprinted in* 1976 U.S.C.C.A.N. at 5748................................14

Random House Dictionary of The English Language (2d ed. 1987)............................21

S. Rep. No. 105-190 (1998)........................................................................................17

Victoria Smith Ekstrand, News Piracy and The Hot News Doctrine (New York, 2005)................3

Webster's Third International Dictionary Unabridged (1981) ......................................21

## INTRODUCTION

Defendants All Headline News Corp., AHN Media Corp., W. Jeffrey Brown ("Brown") and Danielle George ("George") (collectively referred to, except where distinction is needed, as "AHN") do not ask the Court to dismiss any aspect of the Associated Press's ("AP") copyright infringement claim. Instead, AHN focuses on AP's "hot-news" misappropriation claim, and, to a lesser extent, its claims for violation of the Digital Millennium Copyright Act (DMCA) and § 43(a) of the Lanham Act. The Court should reject these arguments and deny the motion.

The facts alleged in the First Amended Complaint present perhaps the most egregious case of hot-news misappropriation since that tort was first recognized as a branch of unfair competition in the seminal United States Supreme Court decision, *Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918) (*INS*). Moreover, those facts, if proven, will establish all the elements of the hot-news tort, as it was redefined for the modern era in the Second Circuit's controlling precedent, *National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) (*NBA*).

AHN does not argue that AP's hot-news claim is deficiently pled. Nor does AHN deny that its business is entirely parasitical. AP invests millions of dollars each year to pay reporters and maintain a journalistic infrastructure in the United States and abroad. To report news from Iraq and Afghanistan, for example, it must secure access, pay security, and hire interpreters. AHN does not dispute that by copying and reselling AP's news stories to the same market that AP seeks to service, it is simply leeching off of these extensive investments. Instead, it argues that this conduct is entirely legal, because the hot-news tort itself has somehow disappeared in the years since *INS* was decided. There is absolutely no merit to this contention.

The courts of New York, whose law controls here, as well as those of every other state to consider the question, have consistently recognized misappropriation of hot news as unfair

competition. The Supreme Court has never questioned, much less repudiated, the holding of

*INS*. And *NBA*, the controlling precedent for this Circuit, expressly holds that hot-news claims

are not preempted by § 301(a) of the Copyright Act. AP may therefore sue AHN both for

copyright infringement (to protect the expression in its news stories from copying) and for

misappropriation (to protect its labor and investment in gathering the news against competitive

interference).

The Court should reject AHN's other attacks on the complaint. AP's claim for removal

of "copyright management information" from AP copyrighted works does not depend on the

"copyright management information" being in digital form. AHN's "nominative fair use"

defense to AP's claim for trademark infringement presents a question of fact that cannot be

decided on a 12(b)(6) motion. AP's claim under § 43(a) of the Lanham Act does not allege false

claims of authorship, and is thus not barred by *Dastar Corp. v. Twentieth-Century Fox Film*

*Corp.*, 539 U.S. 23 (2003).

## STATEMENT OF FACTS

As AHN correctly states, on a motion under Fed. Civ. P. Rule 12(b)(6), the Court must

accept the truth all the factual allegations contained in AP's complaint in the light most favorable

to plaintiff. See AHN Br. at 2-3. AP will refer to relevant allegations of the First Amended

Complaint in the body of this brief.

## ARGUMENT

## I.

## AP STATES A CLAIM FOR
## MISAPPROPRIATION UNDER APPLICABLE NEW YORK LAW

### A.     The INS Misappropriation Doctrine

AP's First Cause of Action pleads a straightforward claim for misappropriation of hot

news, as the doctrine was initially first defined in *INS* and later adopted into state law. Although

90 years of technological change have taken place since *INS* was decided, the facts of this case closely match those involved in *INS*.[1]  In 1918, just as today, AP was a leading news service that made major investments in covering the news.  In 1918, many AP reporters were in Europe covering the big story of the day – the battles of the U.S. forces on the European fronts of World War I – just as today AP has reporters covering conflicts around the world.  AP was able to transmit its breaking war stories almost instantaneously to its US editors, using overseas telegraph cables, and the edited stories were then cabled to AP member newspapers which published them.  Although there was then no Internet, radio, or telephone, the newspapers were able to bring "hot" war news to the public by publishing multiple editions during the day and evening, and even posting the latest news on bulletin boards on the streets outside their offices.

INS was a competing news service owned by the Hearst organization that ultimately became part of United Press International (Hearst is now an AP member).  Unlike AHN, INS was a real news service, with reporters who gathered the news.  However, in 1918, INS was unable to provide its clients with news stories from the war zones because, having been accused of violating wartime censorship restrictions, it was barred from use of the British and French mail and cables.  To fill the gap, INS "routinely [took] early bulletins and editions of AP news printed in AP member newspapers and [sent] them to INS's clients." Ekstrand at 50.  Its reporters also copied the AP news stories posted on the bulletin boards posted outside of AP member newspapers, and sold that news to INS clients.

AP sued INS.  It showed, among other things, that INS had bribed employees of AP and of AP member newspapers to provide it with AP's news *before* that news was published by the AP member newspapers.  The district court granted, and the Second Circuit affirmed, an

---

[1]      See Victoria Smith Ekstrand, <u>News Piracy and The Hot News Doctrine</u> (New York, 2005) ("Ekstrand") at

injunction against these practices. *Associated Press v. Int'l News Serv.*, 240 F. 983, 985 (S.D.N.Y. 1917), *aff'd*, 245 F. 244 (2d Cir. 1917). AP also sought an injunction against the use of *already-published* news: INS's "[c]opying news on bulletin boards and in early editions of [AP] members [newspapers] and selling this news to [INS's customers]." The district court denied an injunction against this copying of published hot news, but the Second Circuit reversed and ordered entry of that injunction. 245 F. at 250-52. The Second Circuit held that AP had a property right, separate from copyright, in the news that it sold, arising from the labor and expense involved in its gathering and disseminating that news, that this right existed only against competitors and lasted as long as the news had commercial value, and that equity would intervene to protect this property right against INS's unfair competition. *Id.*

The only issue appealed to the Supreme Court was the injunction against INS's copying and use of AP's published news. INS argued in the Supreme Court, much as AHN now does, that news becomes the "common possession" of the public once published and may be communicated to anyone. The Court squarely rejected this argument. It concluded that while news cannot be copyrighted and AP cannot restrain the general public from using its published hot news, news is the "stock in trade " of a news agency. As a result, news gathered by one news service is "*quasi* property" as against another, 248 U.S. at 236, and may be protected against interference by a competitor while it still has value.

The Court ruled that by taking AP's news, INS was:

> taking material that has been acquired by [AP] as the result of organization and the expenditure of labor, skill, and money, and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown. . . . Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation

25-32, 49-64, from which the following background facts of the *INS* case are taken.

> of complainant's legitimate business precisely at the point where
> the profit is to be reaped, in order to divert a material portion of the
> profit from those who have earned it to those who have not; with
> special advantage to defendant in the competition because of the
> fact that it is not burdened with any part of the expense of
> gathering the news.  The transaction speaks for itself, and a court
> of equity ought not to hesitate long in characterizing it as unfair
> competition in business.

*Id.* at 239-240.  The Court noted that allowing one news agency to appropriate and sell another's current news would "render publication profitless, or so little profitable as in effect to cut off the service by rendering the cost prohibitive in comparison with the return."  *Id.* at 241.

**B.      The INS Doctrine Remains Good Law**

In *NBA*, the Second Circuit reviewed *INS* in detail, and synthesized five elements that a plaintiff must allege to establish an "*INS*-type hot-news misappropriation claim."  *NBA*, 105 F.3d at 852.  As AP shows below, the facts stated in its complaint satisfy all of these required elements.  *See infra* at 14-15.  AHN does not deny this; instead, it makes a series of efforts to show that *INS* either never was or no longer is no longer good law.  None of these arguments withstand critical scrutiny.

It is correct to say that *INS* is no longer a directly binding precedent, because it belongs to the pre-*Erie* period when the Supreme Court was declaring a federal common law.  *See NBA*, 105 F.3d at 851.  However, as noted *infra* at 9-10, *INS*'s misappropriation doctrine lives on after *Erie*, because it was widely adopted into the common law of the states (including New York, whose law governs here).

It is also true that some of the misappropriation claims recognized in early state-law decisions followed *INS's* rhetoric, rather than its rationale, and broadly read the case as empowering courts to prohibit any form of "commercial immorality."  Commercial immorality claims addressed to material within the subject matter of copyright are now considered

synonymous with copyright infringement and preempted by the Copyright Act of 1976. *See NBA*, 105 F.3d at 851. *NBA* also noted that old misappropriation cases involving unauthorized copying of live broadcasts were preempted and no longer "good law," because Congress had since extended copyright protection to broadcasts. *Id.* at 852. However, while courts now apply the misappropriation doctrine more narrowly than before, *McKevitt v. Pallasch*, 339 F.3d 530, 534 (7th Cir. 2003), a hot-news claim fits comfortably within these narrower limits. The rationale for the claim is the negative economic and public impact, not the immorality, of free-riding. *NBA*, 105 F.3d at 852 ("INS is not about ethics; it is about the protection of property rights in time-sensitive information so that the information will be made available to the public by profit-seeking entrepreneurs.").

AHN claims that the Supreme Court effectively overruled *INS* at a later date. In fact, the Court's decisions after *INS* have continued to cite the holding in *INS* with approval.[2] *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991) also does not support AHN's position. In *Feist*, Rural, a publisher, had obtained a copyright on its "white pages" directories, and Feist, a competitor, copied and published the listings and addresses as part of a competing directory. Rural sued Feist for copyright infringement, not misappropriation. The question presented to the Supreme Court was "whether the copyright in Rural's directory protects the names, towns, and telephone numbers copied by Feist." 499 U.S. at 344.

The Court found in favor of the defendant, holding that the Constitution limited copyright protection to the "writings" of "Authors." The names, addresses, and other facts in the directories were not original because they "do not owe their origin to an act of authorship," and therefore could not be protected by copyright as a constitutional matter. 499 U.S. at 346, 347.

The Court rejected the plaintiff's "sweat of the brow" argument, which asserted that the effort involved in collecting the facts would entitle them to copyright protection. *Id.* at 359-60.

In *Feist*, the Supreme Court made only two references to *INS*: to note with approval *INS*'s holding that facts are not subject to copyright, *Feist*, 499 U.S. at 353; and to observe that *INS* "ultimately rendered judgment for Associated Press on non-copyright grounds that *are not relevant here*." *Id.* at 354 n. (emphasis added).  By stating that *INS*'s holding was "not relevant" to the facts in *Feist*, the Court made clear that its holding addressed only the constitutional limitation on Congress's copyright power, and was not to be read as limiting the power of states to protect hot news against competitive copying.

The *NBA* decision is the best refutation to AHN's claim that *Feist* implicitly overruled *INS*. *NBA* was decided well after *Feist*, and even cites *Feist* as holding that facts may not be protected by copyright.[3] *NBA*, 105 F.3d at 847 (*citing Feist*, 499 U.S. at 350).  Nonetheless, the Second Circuit recognized that a "surviving 'hot-news' INS-like claim continues to exist," and is not preempted by the Copyright Act. *Id.*  The Second Circuit extensively analyzed the NBA's argument that it had pleaded a non-preempted misappropriation claim, and ultimately concluded that the NBA had failed to establish critical elements of the hot-news claim. *Id.* at 852-54.  Had *Feist* actually "gutted" the *INS* holding, as AHN now argues, this entire analysis would have been unnecessary; the Second Circuit would simply have dismissed the misappropriation claim as no longer stating a valid cause of action.

The Jazz Age insights of *INS* have fresh vitality in the Internet era.  Today, the news cycle has sped up to the point where AP licensees post AP stories as soon as AP transmits them,

---

[2]    *See, e.g., Carpenter v. United States,* 484 U.S. 19, 26 (1987); *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 541 (1987); *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 276-77 (1936).

and AP constantly updates the stories as news continues to break.  Moreover, hot news has

increased value on the Internet, because they drive viewers to ad-supported websites like Yahoo!

(an AP licensee).  But the ability to free-ride has also increased: with a few keystrokes by its

underpaid "writers" and so-called "editors," AHN can copy and redistribute AP news almost as

soon as it is initially published, and at a cost so low that AP could never profitably compete.

Today, more than ever, the public needs the hot-news doctrine to protect its access to

news. News happens globally, in conflict zones and disaster areas.  Most of the time, the reporter

has to go to the news, often only by overcoming various barriers to access.  To collect this news

requires massive, continuing investments by news services.  For those services to continue to

collect and report the news, they must be able to recoup their costs by selling their news stories

to newspapers, websites, and other publishers.  They cannot profitably do so in the face of

parasites like AHN.  Unless AHN and its ilk are enjoined from unfair competition, the public's

access to vital news will eventually be choked off.

## C.    AP Pleads A Valid Misappropriation Claim Under Applicable State Law

### 1.    New York and Florida Both Recognize the Hot-News Tort

AP's misappropriation claim is asserted under the Court's diversity and supplemental

jurisdiction.  Under the rule of *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97

(1941), the choice of law rules of New York, the forum state, apply.  Where plaintiff and

defendant argue for application of the laws of different states, the Court is to first decide whether

there is an actual conflict between the two states' laws.  *Harris v. Provident Life & Accident Ins.

Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d

904, 905 (1993).  If no conflict exists, the Court need not analyze further.  *IBM Corp. v. Liberty*

---

[3]     *Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP*, 303 F. 3d 460 (2d Cir. 2002), cited by defendants,
simply repeats the well-settled rule that copyright does not protect facts from being copied.

*Mutual Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  If there is a conflict, the Court applies the

state law that a New York court would select.  *Harris*, 310 F.3d at 81.

New York unquestionably recognizes misappropriation as a valid branch of the tort of

unfair competition.  See, e.g., *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476, 850 N.Y.S.2d 366

(2007) ("We have long recognized two theories of common law unfair competition: palming off

and misappropriation"; noting that misappropriation was adopted by New York "after the United

States Supreme Court sanctioned the misappropriation theory of unfair competition in

*International News Service v. Associated Press*.").  New York courts have repeatedly recognized

a specific claim for misappropriation of published time-sensitive information by a competitor of

the original publisher.  *See, e.g., ElectroLux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 567-68, 190

N.Y.S.2d 977, 986 (1959); *Bond Buyer v. Dealers Digest Publishing Company*, 25 A.D.2d 158,

267 N.Y.S. 2d 944 (1st Dep't 1966); *Lynch Jones & Ryan, Inc. v. Standard & Poor's*, Index No.

117064/97, P.C. No. 13165, 1998 N.Y. Misc. LEXIS 334 at * 4-6 (Supreme Ct., N.Y. County,

June 11, 1998).  *See also Financial Information, Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d

204, 209 (2d Cir. 1986) (recognizing that hot-news claim is viable tort and not preempted by

New York law, but holding that plaintiff failed to establish the time-sensitivity of its copied

information).  *Capitol Records, Inc. v. Naxos of Am., Inc.*, 262 F. Supp. 2d 204 (S.D.N.Y. 2003),

a case AHN itself cites which was decided long after *Feist*, recognized the continuing vitality of

the "'hot-news' doctrine . . . [which] creates a narrow quasi property right in news . . . only as

against competitors and only until its commercial value as 'hot news' has passed."  *Id.* at 209.

New York has not adopted any "limiting principles" that affect the viability of the hot-

news tort.  The New York decisions cited by AHN involve claims that differ substantially from

hot-news misappropriation.[4]  Fraud or abuse of a fiduciary relationship is not a required element

of an *INS*-type claim.  *See NBA*, 105 F.3d at 852.  And bad faith, a required element of New

York unfair competition, is inherent in hot-news misappropriation, which involves knowing

interference by a competitor with a news agency's ability to sell its product.  *INS*, 248 U.S. at

239.

Many other cases outside of New York have recognized the continuing vitality of the hot-

news doctrine.[5]  Florida would also recognize that claim.  *Glazer v. Hoffman*, 16 So. 2d 53 (Fla.

1943), on which AHN relies, had nothing to do with *INS*-type hot-news misappropriation; it

involved the copying of one magician's tricks by another.  No other Florida case has ever read

*Glazer* as precluding the assertion of a hot-news claim in Florida.  The only other Florida state

decision cited by AHN, *Herald Publishing Co. v. Florida Antennavision, Inc.*, 173 So.2d 469,

474-75 (Fla. Dist. Ct. App. 1965), involved cable TV retransmissions of over-the-air broadcasts,

and relied not on *Glazer*, but on a Ninth Circuit decision, *Cable Vision, Inc. v. KUTV, Inc.*, 335

F.2d 348 (9th Cir. 1964).  *Cable Vision*, however, expressly *recognized* the continuing viability

of the hot-news tort as defined in *INS*.  *Id.* at 352.  It rejected application of *INS* to the cable TV

---

[4]     *See Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 302-03 (2d Cir. 2006) (index provider plaintiffs did not have misappropriation claim against defendant exchange that listed options on index-based funds without authorization,  because index providers relinquished property rights by authorizing sale of shares in the funds); *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) (no competition; one contracting party held not to have a property interest in research and development that it freely disclosed to its contracting partner); *ABC, Inc. v. Flying J, Inc.*, No. 06 Civ. 2967 (DAB), 2007 U.S. Dist. LEXIS 13252 at * 2-4 (S.D.N.Y. Feb. 22, 2007) (unfair competition claim based upon a right to perform copyrightable audio visual works held preempted by Copyright Act); *Stewart v. World Wrestling Fed'n. Entm't, Inc.*, No. 03-cv-2468 (RLC), 2004 U.S. Dist. LEXIS 26533 at * 4-7 (S.D.N.Y. Jan. 11, 2005) (denying motion to dismiss against claim for misappropriation of novel idea, which is distinct tort from *INS*-type misappropriation).

[5]     *See, e.g., McKevitt*, 339 F.3d at 534; *Pollstar v. Gigmania Ltd.*, 170 F. Supp. 2d 974, 977 (E.D. Cal. 2000); *Fred Wehrenberg Circuit of Theatres, Inc. v. Moviefone, Inc.*, 73 F. Supp. 2d 1044, 1050 (E.D. Mo. 1999); *Pottstown Daily News Publ'g Co. v. Pottstown Broadcasting Co.*, 411 Pa. 383, 393, 192 A.2d 657, 663 (1963).

context because news was not copyrightable, while retransmitted broadcasts were generally copyrighted, and because the plaintiff at bar was a licensee, not the originator of the broadcasts.

AHN also ignores a case that AP cited in its March 20, 2008 letter to the Court: *Morris Commc'ns. Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2000), *later case at* 235 F. Supp. 2d 1269, 1279 (M.D. Fla. 2002), *aff'd*, 364 F.3d 1288 (11th Cir. 2004).  This decision, citing both *INS* and *NBA*, recognized that the PGA Tour could have property rights in the scoring data it collects during tournaments, and that these rights, under appropriate factual circumstances, could be protected against a competitor's free-riding.  117 F.Supp.2d at 1329. Finally, AHN's assertion that misappropriation is strictly limited to deceptive palming off in Florida fails to address the decisions cited in AP's March 20, 2008 letter to the Court, which uphold misappropriation claims outside of the palming off context, and place Florida squarely in the mainstream of modern unfair competition law.[6]

2.   New York Law Applies To AP's Hot-News Claim If There Is A Conflict of Law

If there is a conflict between New York and Florida law over recognition of the hot-news tort, New York law wins.  In New York, the law governing a tort claim is determined by "the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *La Salle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1091 (S.D.N.Y. 1996).  *See also AroChem Int'l Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d

---

[6]     *See CBS, Inc. v. Garrod*, 622 F. Supp. 532, 535-56 (M.D. Fla. 1985)  (holding that "Florida courts seek to apply the generally prevailing view of unfair competition"; and that "[W]here the basis of the complaint is . . . that defendant is misappropriating plaintiff's property, the test to be applied clearly does not require a showing of palming off."). *Accord, Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007); *Audio Sys. of Fla. Inc. v. Siimplexgrinnell LP*, 68 U.S.P.Q.2d (BNA) 1681, 1684 (M.D. Fla. 2003) ; *Stoneworks, Inc. v. Empire Marble & Granite, Inc.*, No. 98-2017-CIV-HIGHSMITH, 1998 U.S. Dist. LEXIS 21762 at *14 (S.D. Fla. Nov. 20, 1998).

189, 196, 491 N.Y.S.2d 90, 94 (1985). When, like unfair competition, the law is one which regulates conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006).

Under New York law, a tort occurs in "the place where the injury was inflicted [which] . . . is usually where the plaintiff is located." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001) (emphasis supplied; citation and quotation marks omitted). *Accord*, *Sack v. Low*, 478 F.2d 360, 365-66 (2d Cir. 1973); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 427 (S.D.N.Y. 2006); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006); *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 292 (S.D.N.Y. 2000). New York law applies to AP's hot-news claim because AP is a New York not-for-profit corporation, is headquartered in New York, and suffers economic loss in this state from AHN's misappropriation.

*Computer Associates Int'l v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992), which AHN cites, is not to the contrary. That decision applied New Jersey, not New York, choice-of-law principles to a trade secret claim. It affirmed the district court's conclusion that choice of law was irrelevant because the outcome would be the same under the laws of the two affected jurisdictions (New Jersey and Texas), and because the claim was in any event preempted by federal copyright law. *Id.* at 718; *see Computer Associates Int'l v. Altai, Inc.*, 775 F. Supp. 544, 566 (E.D.N.Y. 1991).

*Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704 (S.D.N.Y. 2002), also cited by AHN, involved unusual facts where all of the possible harm suffered by the counterclaim plaintiff occurred other than at his New York residence. He alleged that the counterclaim defendant had committed unfair competition by falsely using his name to sell software in Israel. There was no

evidence that the counterclaim plaintiff had suffered any economic effect in New York or the United States from these sales. Magistrate Judge Francis held that because the software was made and sold exclusively in Israel, and the alleged false representation was only made there, the Israeli law of unfair competition would apply.  Here, in contrast, AP is suffering loss at its domicile in New York, since it is losing the revenue that it would otherwise have made from selling its news product to AHN's customers; it is also suffering the loss of its incentive to invest in its newsgathering enterprise in New York.  In addition, AHN's misappropriating acts are not localized in one jurisdiction.  AHN's "writers" commit the initial act of misappropriation (copying AP news reports) "at their individual home offices or places of business throughout the world" (AHN Br. at 13); and AHN does not deny that it sells its news stories created from these misappropriating acts to customers in New York and elsewhere.  See First Amended Complaint ¶ 19.

**D.    AP's Hot-News Claim Is Not Preempted**

In arguing that AP's hot-news claim is preempted by § 301(a) of the Copyright Act, AHN skates dangerously close to a violation of Fed. R. Civ. P. 11.  A party violates Rule 11 by arguing a position in its pleadings or briefs that is clearly barred by binding Circuit precedent, unless it is also making a non-frivolous argument for extending, modifying, or reversing that precedent. *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir. 2000).  Two controlling rulings of the Second Circuit expressly hold that a properly-pleaded "hot news" claim is not preempted by copyright law, and AHN makes no argument for modifying or reversing those rulings.

Section 301(a) of the Copyright Act, 17 U.S.C. §301(a), provides that after the effective date of the Act, any legal or equitable rights that are equivalent to any of the rights within the general scope of copyright under 17 U.S.C. § 106 in works of authorship, fixed in a tangible medium of expression, are governed only by federal law.  As a result, any equivalent common-

law or statutory right under state law is preempted and may not be sued on.  However, the

legislative history of this section shows clearly that Congress did not intend to preempt state hot-

news misappropriation claims.  The House Report on the 1976 Copyright Act, which the

Supreme Court has called the "authoritative source for finding this Legislature's intent in

enacting the Copyright Act," *Eldred v. Ashcroft*, 537 U.S. 186, 210 (2003), expressly stated that:

> [A] cause of action is not preempted if it is in fact based neither on
> a right within the general scope of copyright as specified by
> section 106 or a right equivalent thereto.  For example, state law
> should have the flexibility to afford a remedy (under traditional
> principles of equity) against a consistent pattern of unauthorized
> appropriation by a competitor of the facts (i.e., not the literary
> expression) constituting 'hot news,' [including] in the traditional
> mold of *International News Service v. Associated Press*."

H.R. No. 94-1476 at 132, *reprinted in* 1976 U.S.C.C.A.N. at 5748.

Based on this clear legislative intent, the Second Circuit first held in *Financial*

*Information*, 808 F.2d at 209, that a hot-news claim is not preempted by the Copyright Act.  It

reaffirmed this holding in *NBA*.  *NBA*, 105 F.3d at 850-52 ("Our conclusion, therefore, is that

only a narrow 'hot-news' misappropriation claim survives preemption for actions concerning

material within the realm of copyright.").  This was not dictum, as AHN asserts, but an essential

part of the court's ruling that the NBA's allegations did not satisfy some of the required elements

of an *INS* hot-news claim, and that its misappropriation claim was therefore preempted.[7]  *Id.*

Unlike the NBA, AP does plead each of the five elements of a hot-news claim as defined

by *NBA*.  Indeed, AHN does not dispute the adequacy of AP's pleading.  First, AP's complaint

---

[7]        The only authority that AHN cites as holding that hot-news claims are preempted is *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737 (D. Md. 2003).  To the extent that this decision disagrees with *Financial Information* and *NBA*, it is contrary to controlling precedent in this Circuit and must be disregarded.  However, two facts are worth noting: (1) *Legg Mason* itself recognizes that "[s]ome 'hot-news' claims may yet survive" preemption, 271 F. Supp. 2d at 756; and (2) a different judge of the District of Maryland, in a prior ruling in the same lawsuit, held that "hot-news" claims are *not* preempted by copyright law.  *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592, 595 (D. Md. 2002).

alleges that AP generates or collects the news at "some cost or expense." *NBA*, 105 F.3d at 852. *See* First Amended Complaint ¶ 23-24 (AP "invests vast resources. . . in gathering the news and creating original reports and accounts of the news"). Second, AP alleges that the value of the news it collects is "highly time-sensitive." *NBA*, 105 F.3d at 852. *See* First Amended Complaint ¶¶ 34-37, 60, 75. Third, it alleges that AHN's use of the news gathered by AP "constitutes free-riding on the plaintiff's costly efforts to generate or collect it," *NBA*, 105 F.3d at 852, because AHN does not invest in a reporting staff, but merely copies the news from current AP news stories using "writers" who "surf the Web." *See* First Amended Complaint ¶¶ 59, 70, 72. Fourth, AP alleges that AHN's "use of [AP news] in direct competition with a product or service offered by [AP]." *NBA*, 105 F,3d at 852. *See* First Amended Complaint ¶¶ 5, 54, 71. Finally, AP alleges that "the ability of other parties to free-ride on the efforts of [AP] would so reduce the incentive to produce the [news] product or service that its existence or quality would be substantially threatened." *NBA*, 105 F.3d at 852. *See* First Amended Complaint ¶¶ 72, 78. As a result, AP's hot-news claim is not preempted by federal law.

**II.**

**AP STATES A VALID CLAIM FOR ALTERATION OR<br>REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION<br>UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA).**

17 U.S.C. § 1202(b)(1) and (3), which were enacted as part of the DMCA, forbids a defendant from intentionally removing or altering "copyright management information" (CMI) from a copyrighted work, or distributing any work knowing that CMI has been removed therefrom, without the permission of the copyright holder or authorization by the Copyright Act. Congress defined "copyright management information" in relevant part as "*any* of the following information conveyed in connection with copies . . . of a work or . . . any displays of a work, *including in digital form. . .* (2) The name of, and other identifying information about, the

copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3) (emphasis added).

The Third Cause of Action of AP's complaint alleges that when AP transmits its news reports to its customers, the reports contain AP's name, symbols, and copyright notice, and that this information ordinarily appears in AP stories when displayed on a computer browser or otherwise redistributed by AP customers. First Amended Complaint ¶¶ 30-32.  It further alleges that when AHN "writers" search AP stories on the Internet, acting under instructions from Defendants Brown and George, they strip out this CMI , and AHN then distributes news stories that copy the expressive portion of AP's copied news stories, knowing that AP's CMI has been removed therefrom. *Id.* ¶ 32.

AHN asserts that only digitally-embedded copyright management information such as metadata or watermarks qualify for protection under the DMCA.  AHN Br. at 18-19.  This contention is belied by the plain language of the DMCA.  Congress's use of the word "including," in the phrase "any of the following information . . . including in digital form," expressed an intention not to limit the scope of CMI to digital information (much less information hidden from the human eye such as metadata or watermarks), but to encompass information regardless of whether it appeared in digital or non-digital form. *See West v. Gibson*, 527 U.S. 212, 218 (1999); *Federal Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.")

The two cases on which AHN relies for its contrary argument, *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007) and *The IQ Group, Ltd. v. Wiesner Publishing, LLC,* 409 F. Supp. 2d 587 (D. N.J. 2006), expressly refused to apply the plain meaning of § 1202's CMI definition, and instead resorted to the statute's legislative history for a

artificial "narrowing interpretation" that limited CMI to "automated systems which protect and manage copyrights." *IQ Group*, 409 F. Supp. at 593, 597; *Textile Secrets*, 524 F. Supp. 2d at 1196. This use of legislative history to rewrite the plain language of a law violates basic principles of statutory construction:

> When a statute's language is clear, our only role is to enforce that language "'according to its terms.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)). We "do not resort to legislative history to cloud a statutory text that is clear" even if there are "contrary indications in the statute's legislative history." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal quotations and citations omitted)).

*Arciniaga v. General Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006). Moreover, *The IQ Group* and *Textile Secrets* effectively read the words "any" and "including" out of the statute, thereby ignoring another settled rule: a law should not be interpreted so as to render any word superfluous. *See Bell v. Reno*, 218 F.3d 86, 91 (2d Cir. 2000). Finally, assuming that legislative history were relevant, both of AHN's cited cases ignored the most direct expression of Congress's intent on this point: the Senate Committee on the Judiciary's report on the DMCA, which stated that under § 1202 , "CMI need not be in digital form, but CMI in digital form is expressly included." S. Rep. No. 105-190 (1998).

The correct approach to interpretation of § 1202 was taken by the Western District of Pennsylvania in *McClatchey v. The Associated Press*, No. 3:05-cv-145, 2007 U.S. Dist. LEXIS 17768 at * 3 (W.D. Pa. Mar. 9, 2007). Rejecting the interpretation in *The IQ Group*, and applying the proper "plain meaning" rule of interpretation, *McClatchey* held that the alleged

removal of the title and copyright notice from a photographic copy of the plaintiff's photograph would qualify as the removal of CMI even though the copyright notice was not "digital." *Id.* at *15-16. Under *McClatchey*'s reading, which accords with both rules of statutory construction and Congress's express intent, AP's complaint states a valid claim for removal or alteration of CMI under § 1202.

Finally, even if § 1202 were read – contrary to the intent of Congress – to forbid only removal or alteration of digital CMI from copyrighted works, APs DMCA claim would still not be subject to dismissal on a 12(b)(6) motion.  AP would still be entitled to show at trial that what defendants removed was in fact digital CMI.  As expressed or implicit in AP's complaint, and as AP will prove, AP transmits its news reports to its clients in digital form and those clients post the AP reports (including AP's name and copyright notice) in digital form when displayed on their own Internet websites and portals.  First Amended Complaint ¶ 30-32.  AHN "writers" observe these digital news reports on their computer screens, then copy them and retransmit them in digital form to AHN while stripping out the digital CMI of the original, in accordance with the instructions of defendants Brown and George. *Id.* ¶ 58.  The resulting AHN stories, transmitted digitally via the Internet, intentionally omits AP's digital CMI. *Id.* ¶ 59.

## III.

## AP STATES A VALID CLAIM FOR TRADEMARK INFRINGEMENT

Count IV of the First Amended Complaint alleges that AHN infringes AP's registered trademarks "AP," "ASSOCIATED PRESS," and "THE ASSOCIATED PRESS," when it systematically copies or paraphrases AP stories, and then attributes the copied reports to AP in its own "news stories." *See* First Amended Complaint ¶ 57.  AP has attached some examples of this use as exhibits to its complaint, and will show, following discovery, that such use is a frequent practice at AHN.  This is trademark infringement because AP licensees are the only

ones allowed to carry AP news and to rewrite AP news into news stories, and the public understands from long-standing practice that a news outlet that regularly carries stories attributed to AP is authorized to do so by AP.  By systematically using AP trademarks in its unauthorized publications, AHN causes confusion and mistake among the public and potential clients of AHN's "news service" by falsely suggesting that AHN is an AP licensee.  *Id.* ¶ 10.

AHN seeks dismissal of this Count on two grounds.  The first – that trademark infringement requires a use in commerce of the plaintiff's trademark – is a straw man.  Count IV does not claim that when AHN copies an AP story, but does not use AP's trademark in the story, the non-use is a trademark infringement.  *Cf.* AHN Br. at 19-20.

AHN also argues that its use of AP's trademarks is a nominative fair use.  AHN Br. at 21. However, while nominative fair use is a theoretical defense to trademark infringement, that defense cannot be decided on a motion to dismiss.  The defense requires proof that "first, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir. 1992).  The third element of the defense, which requires the defendant to show that the use of the trademark does not create a likelihood of confusion as to the mark owner's sponsorship, endorsement, or affiliation, requires "an analysis based on a factual inquiry inappropriate to a motion to dismiss." *See Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006); *Nasdaq Stock Mkt. v. Archipelago Holdings,* 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004).

AHN's constant use of AP's trademarks in the AHN "news product," which creates the belief that it is an AHN licensee, differs materially from the *occasional* attribution that occurs

when a news agency, newspaper, or broadcaster breaks a particularly important news story. In such a case, many other newspapers and broadcasters may report the substance of the important news story, and credit the original publisher. News consumers and potential buyers of news services understand on those rare occasions that the news content does not appear with the authority of the original publisher. *Cf.* AHN Br. at 21. However, AHN systematically uses AP trademarks even on everyday news stories, and, as AP will show at trial, this falsely suggests to the public and news service purchasers that AHN is an AP licensee.

IV.

**AP STATES A VALID CLAIM UNDER SECTION 43(A) OF THE
LANHAM ACT AND FOR NEW YORK COMMON-LAW UNFAIR COMPETITION**

After amendment of the complaint, AP's Fifth Cause of Action is now limited to a claim under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). This gives a cause of action to one who believes he or she is likely to be injured by a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact," which "in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities of his or her . . . services or commercial activities." AHN, in its advertising and promotion, claims to provide a "news service" and to have a "news division," and to provide potential customers with "the news and content you want, in the format that you need, at a price you can afford." First Amended Complaint ¶ 55, 105. AP alleges that these statements are false in that they represent that AHN actually gathers the news that it reports, while in reality AHN has no reporters, but copies published reports from AP and other true news agencies without the agencies' authorization.

AHN makes several arguments for dismissal, none of which have merit. First, it asserts that even though it has no reporters and gets its news by unauthorized copying from legitimate

20

services like AP, its representation of being a "news service" is "literally true." AHN Br. at 22.
In reality, that statement is literally false. "News service" is not a term of "puffery," but a factual
word with a well-accepted meaning: it connotes a journalistic business that actually gathers or
collects the news it reports. *See, e.g.*, Random House Dictionary of The English Language (2d
ed. 1987) ("news service" defined as "an agency that gathers news stories for its members or
subscribers"); Webster's Third International Dictionary Unabridged (1981) "news service"
synonymous with "news agency," which is defined as "a commercial organization that collects
and supplies news to subscribing newspapers, periodicals, and news broadcasters."). AHN is not
a "news service" because it does not gather or collect news; it hires underpaid web surfers who
copy stories containing news that was gathered by real news agencies. Thus, AHN's advertising
is a plain violation of the Lanham Act and may be enjoined without showing what the impact of
that advertising may be on the buying public. *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*,
938 F.2d 1544, 1549 (2d Cir. 1991); *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d
266, 272-73 (2d Cir. 1987).

Moreover, even if "news service" and "news division" were literally a true description of
AHN, AP could prevail under the Lanham Act by showing that use of these terms by AHN, in
the context of its promotion, would be likely to mislead or confuse the actual and potential
consumers of AHN services into the belief that AHN is a real news service with reporters, or at a
minimum a licensee of a real news service. Whether these descriptions are impliedly false would
be a question of fact which cannot be decided at the motion to dismiss stage. *See Mylan
Pharmaceuticals, Inc. v. Procter & Gamble, Inc.*, 443 F. Supp. 2d 453, 459-60 (S.D.N.Y. 2006)
(PKC)

AHN next argues that AP has not shown any "actionable statement" by AHN to the
public that it has permission to use AP's news stories. AHN Br. at 23. But, as shown above, AP

alleges that AHN, by its representations and acts, causes potential customers of its "news service" to falsely believe that it is an AP licensee. First Amended Complaint ¶ 57. AP expects to show that to convince potential buyers to purchase its "news service," AHN makes that "service" available to those customers, and that as a result they see numerous AHN stories that carry AP news with attribution. These stories, provided for promotional purposes, will be understood by those buyers as representing that AHN is authorized to edit and redistribute AP news content. *See supra* at 19. This provision or display of sample AHN stories to potential purchasers of the AHN "service" to demonstrate the nature of the "service" is "commercial promotion" within the meaning of the Lanham Act. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) ("[P]romotion may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers."). AP is likely to suffer damage as a result of such promotion, because such buyers typically subscribe to only one news service. First Amended Complaint ¶ 71. If those buyers believe that they can get "hot" AP news stories from AHN at a lower price than AP itself charges for the same news stories, they will naturally buy from AHN and not AP. *Id.* ¶¶ 70-71, 106.

Finally, AP's amended Lanham Act claim is not barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth-Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* involved a claim for "reverse passing off," asserting that the defendant misrepresented that it had created the ideas and communications embodied in the plaintiff's goods or services. 539 U.S. at 27. However, AP's amended Lanham Act claim alleges ordinary "passing off"; that is, that AHN has falsely represented that its own services are licensed or otherwise authorized by AP. *See Dastar*,

539 U.S. at 28. This "passing off" claim is not affected by *Dastar*.[8] Nor does *Dastar* affect the

other part of AP's Lanham Act claim, which alleges that AHN falsely represents in commercial

advertising and promotion that it is a "news service" and that its stories originate with a "news

division." First Amended Complaint at ¶ 105. This claim does not assert that AHN has failed to

attribute authorship of stories to AP, which would be the analog to the issue decided in *Dastar*; it

instead addresses AHN's promotional misrepresentation of the "nature, characteristics, or

qualities" of AHN's own business. The truth is that AHN is a "copying service," not a "news

service" as it styles itself, and the Lanham Act forbids such false representations.

## V.

## THE COURT HAS JURISDICTION OVER AP'S BREACH OF CONTRACT CLAIM

AHN finally argues that the Court should not exercise supplemental jurisdiction over

AP's claim for breach of contract. The Court need not tarry on this argument, because regardless

of supplemental jurisdiction, the Court unquestionably has diversity jurisdiction over AP's

breach of contract claim. There is complete diversity between AP and defendants, First

Amended Complaint ¶¶ 12-13, and the matter in controversy exceeds the sum of $75,000,

exclusive of interest and costs. *Id.* ¶ 17. Although the particular amount at stake in AP's breach

of contract claim is less than $75,000, AP may aggregate all of its claims to satisfy the

jurisdictional amount, and those claims need not be related. *Wolde-Meskel v. Vocational*

*Instruction Project Community Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999). More than $75,000

is at stake in AP's copyright infringement claim alone. *See* First Amended Complaint ¶¶ 42, 65,

---

[8]    AP's common-law unfair competition claim, also based on "passing off," is not preempted by § 301(a) of
the Copyright Act. *Briarpatch, Ltd, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004), *cert. denied*,
544 U.S. 949 (2005).

86-87 (alleging infringement of five separate works and seeking statutory damages in the alternative); 17 U.S.C. § 504(c).

## CONCLUSION

For the reasons set forth above, the Court should deny AHN's partial motion to dismiss in its entirety.

Dated:   New York, New York
         June 12, 2008

                            DLA PIPER US LLP


                            By: /s/ Andrew L. Deutsch
                                Andrew L. Deutsch
                                Christine M. Jaskiewicz
                            1251 Avenue of the Americas
                            New York, New York 10020
                            Telephone (212) 335-4500
                            Facsimile (212) 335-4501

                            *Attorneys for Plaintiff*
                            *The Associated Press*