Steven E. Lipman (SL-9395)
Robert L. Jacobson (*pro hac vice*)
DARBY & DARBY P.C.
7 World Trade Center
250 Greenwich Street
New York, NY  10007
Telephone:  212.527.7700
Facsimile:  212.527.7701
Email:  slipman@darbylaw.com
           rjacobson@darbylaw.com

*Attorneys for Defendants*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE ASSOCIATED PRESS,                             :
                                                                      :
       *Plaintiff*,                                     :      No. 1:08-CV-000323 (PKC)
                                                                      :              ECF CASE
   v.                                                            :
                                                                      :
ALL HEADLINE NEWS CORP., ET AL.,           :
                                                                      :
       *Defendants*.                                 :
-------------------------------------------------------------x


**DEFENDANTS' REPLY IN SUPPORT OF
THEIR RENEWED MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................. 1

II.  AP'S "HOT NEWS" MISAPPROPRIATION CLAIM (COUNT I) IS PREEMPTED BY FEDERAL COPYRIGHT LAW.................................................................................. 1

   A.   AP's Cause of Action for "Hot News" Misappropriation Under New York Law is a Mere Duplication of Its Copyright Claim, and is Therefore Preempted by The Copyright Act................................................................................................ 1

   B.   The INS Misappropriation Doctrine is Not Applicable. ........................................ 2

   C.   AP's Misappropriation Claim Fails the NBA Elements. ....................................... 3

   D.   AP Misconstrues Congressional Intent as Interpreted by Feist. ............................ 4

   E.   Florida Law Would Apply in a Conflict of Law Situation. ................................... 5

   F.   Under the Alleged Facts, Misappropriation is Not a Valid State Law Claim in Either Florida or New York. ................................................................................ 5

III. AP FAILS TO STATE A VALID CLAIM UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA) (COUNT III)................................................................ 7

IV.  AP FAILS TO STATE A VALID CLAIM FOR INFRINGEMENT OF A REGISTERED TRADEMARK IN VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114 (COUNT IV). ............................................................................................................. 8

   A.   AHN is Not Infringing Any of AP's Registered Marks; AHN is Engaging in a Nominative Fair Use of AP's Mark. ..................................................................... 8

V.   AP FAILS TO STATE A VALID CLAIM FOR UNFAIR COMPETITION AND MISREPRESENTATION IN VIOLATION OF § 43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a) (COUNT V). ...................................................................................... 9

   A.   AP's Claims of False Association And Endorsement Fail Because AHN Properly Uses AP's Trademark to Identify Its News Service. ............................................ 9

      1.   AP Has Failed to State a Claim Against AHN For "Reverse Passing Off" Under § 43(a)(1)(A) of the Lanham Act. ...................................................... 9

      2.   AP Has Failed to State a Claim Against AHN For "Passing Off" Under § 43(a)(1)(A) of the Lanham Act. ................................................................. 11

    B.    Because AHN Has Neither Issued Advertising Which is Literally False Nor Been Likely to Deceive or Confuse Consumers With Advertising That is Literally True, AHN Has Not Violated § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). ............. 12

VI.    AP'S CLAIM OF UNFAIR COMPETITION UNDER NEW YORK COMMON LAW (COUNT VI) IS PREEMPTED BY § 301(A) OF THE COPYRIGHT ACT. .................. 13

VII.    AP FAILS TO STATE A VALID CLAIM FOR BREACH OF CONTRACT (COUNT VII)................................................................................................................................... 13

VIII.    CONCLUSION......................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

ABC, Inc. v. Flying J, Inc., 2007 U.S. Dist. LEXIS 13252 (S.D.N.Y. 2007) .............................. 6

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296 (2nd Cir. 2004) ........................... 2

CBS Inc. v. Garrod, 622 F.Supp. 532 (M.D. Fla. 1985) ............................................................. 6

Dastar Corp. v. Twentieth-Century Fox Film Corp., 539 U.S. 23 (2003) ............................. 11, 12

Dow Jones & Co. v. Intl' Sec. Exch., Inc., 451 F.3d 295 (2d Cir. 2006) ..................................... 10

E. R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc., 536 F. Supp. 523 (S.D.N.Y. 1982) ..................................................................................................................................... 14

Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938) ................................................................... 6

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48 (2d Cir. 2002) ............... 13

Glazer v. Hoffman, 16 So. 2d 53 (Fla.1943) .............................................................................. 7

International News Serv. v. Associated Press, 248 U.S. 215 (1918) ........................................ 3, 4

IQ Group, Ltd. V. Wiesner Publishing LLC, 409 F. Supp. 2d 587 (D.N.J. 2006) ....................... 8

James v. Delilah Films, Inc., 544 N.Y.S. 2d 447 (1989) ............................................................ 3

Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737 (D. Md. 2003) ....................... 4

McClatchey v. AP, 2007 U.S. Dist. LEXIS 17768 (W.D. Pa. 2007) ........................................ 7, 8

Mayer v. Wedgwood & Sons, Ltd., 601 F. Supp. 1523 (S.D.N.Y. 1985) ................................... 3

Nat'l Basketball Assoc. v. Motorola, Inc., 105 F.3d 841 (2d Cir. 1997) .................................. 3, 4

Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175 (2nd Cir. 2001) ...................................... 7

Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc., 524 F. Supp. 2d 1184 (C.D. Cal. 2007) .......... 7, 8

Third Party Verification, Inc. v. Signaturelink, Inc., 492 F.Supp. 2d 1314 (M.D. Fla. 2007) ..................................................................................................................................... 7

Torah Soft, Ltd. v. Drosnin, 224 F.Supp. 2d 704 (S.D.N.Y. 2002) ............................................. 6

Trade-Mark Cases, 100 U.S. 82 (1879) .................................................................................... 12

**STATUTES**

15 U.S.C. § 1114 .................................................................................................................... 9

15 U.S.C. § 1115(b)(4) ........................................................................................................... 9

15 U.S.C. §1125(a) ................................................................................................. 10, 11, 12, 13

17 U.S.C. § 301 ...................................................................................................................... 2

H. Rep. No. 1476 ................................................................................................................... 5

S. Rep. No. 4738 .................................................................................................................... 5

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 25

**I.      INTRODUCTION**

Defendants (collectively, AHN) seek dismissal of Counts I, III, IV, V, VI and VII of Plaintiff's (AP) First Amended Complaint (Complaint).[1]

Count I of AP's Complaint, which concerns AP's "Hot News" Misappropriate claim, is preempted by the Federal Copyright Act and the INS exception does not apply. Likewise, Count III fails to state a valid claim under the Digital Millennium Copyright Act (DMCA); Counts IV and V fail because neither states a valid claim under §§32 or 43(a) of the Lanham Act; and Count VII fails because Defendant is not a party to the alleged contract.

Accordingly, as set forth in AHN's opening Memorandum, and below, Counts I and III-VII should be dismissed from this case with prejudice.

**II.     AP'S "HOT NEWS" MISAPPROPRIATION CLAIM (COUNT I) IS PREEMPTED BY FEDERAL COPYRIGHT LAW**

**A.      AP's Cause of Action For "Hot News" Misappropriation Under New York Law is a Mere Duplication of Its Copyright Claim, And is Therefore Preempted by The Copyright Act.**

The Copyright Act of 1976 expressly preempts all state legal and equitable rights "that are equivalent to any of the exclusive rights within the general scope of copyright." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2nd Cir. 2004); 17 U.S.C. § 301. A state law is preempted by the Copyright Act if (1) it is a type of work protected by the copyright laws and (2) the state law seeks to protect rights that are equivalent to those rights protected by the copyright laws. Id. A claim will be preempted if it is not "qualitatively different". Id. The determination of whether a claim is "qualitatively different", focuses on what the plaintiff seeks

---

[1] This brief has been prepared by K&L Gates, under the circumstances set forth in the concurrently-filed Motion for Leave to File a Substitute Brief. Undersigned counsel have had no substantive involvement in preparing this brief, but have attached their signatures to this brief and filed it out of an abundance of caution to ensure compliance with the scheduling order that directs the submission of a reply brief by today, June 27, 2008. As stated in the Motion for Leave to File a Substitute Brief, undersigned counsel respectfully request leave to withdraw this brief and file a substituted brief by early next week.

to protect, the theories in which the matter is thought to be protected, and the rights sought to be enforced. Id.

AP's misappropriation claim is not "qualitatively different" from its copyright infringement claim. First, both claims rest entirely on allegations that AHN copied AP's news articles published on the Internet and placed in the public domain. Second, both claims rely solely on the identical scope of protection afforded by the copyright act:

> By systematically **copying, rewriting, displaying and redistributing AP's news stories without AP's permission**, Defendants are willfully infringing AP's copyrights in those stories. In addition, Defendants are free-riding on the substantial investment and effort that AP makes in generating accurate, time-sensitive news reports and are using those reports to operate a news service that directly competes with AP's news service, this constitutes illegal hot-news misappropriation under New York Common law.

Complaint ¶ 8.

AP may not duplicate its a claim for copyright infringement under the guise of state law misappropriation. See James v. Delilah Films, Inc., 544 N.Y.S. 2d 447, 450 (1989) (holding that the Copyright Act preempts state law claim have identical scope).

**B.     The INS Misappropriation Doctrine Is Not Applicable.**

AP assertion that its "hot news" misappropriation claim falls within the narrowly construed and limited exception to preemption introduced by International News Serv. v. Associated Press, 248 U.S. 215 (1918) ("INS") is misplaced. INS concerns a plaintiff who: (1) bribed AP employees and telegraph operators to intercept news stories and divert them ***before*** publication, (2) induced AP members to grant unlawful access to news stories ***before*** publication, and (3) copied news content from East Coast bulletin boards for transmission to West Coast bulletin boards via telegraph ***before*** publication. Id. These acts allowed INS to publish AP content ***before*** publication by AP – facts certainly not alleged in the present dispute. Id. at 238-39.

2

**C.     AP's Misappropriation Claim Fails the NBA Elements.**

AP has not pled the necessary "extra elements" required to demonstrate a distinct change in the nature of the action to be deemed "qualitatively different" from a copyright infringement. Mayer v. Wedgwood & Sons, Ltd., 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985); Nat'l Basketball Assoc. v. Motorola, Inc., 105 F.3d 841, 851 (2d Cir. 1997) ("NBA").  To be to be deemed "qualitatively different" under NBA, AP must show: (1) AP generates or collects information at some cost or expense; (2) the value of the information is time-sensitive; (3) the AHN's use of the information constitutes free riding on the AP's costly efforts to generate or collect it; (4) the AHN's use of the information is in direct competition with a product or service offered by the AP; and (5) the ability of other parties to free ride on the efforts of the AP would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.  Id. at 852.  Here, AP cannot meet at least elements (2), (3) and (5) of the NBA test.

With respect to element (2), AP cannot show that the value of the information is time sensitive.  Here, AP alleges only that AHN "copied" its news upon AP's publication over the Internet.  Thus, as in NBA, and as distinguished from INS where the information was misappropriated ***before*** publication, the facts allegedly copied by AHN were already part of the public domain – losing their time sensitivity.

With respect to elements (3) and (5), AP cannot show that AHN is "free-riding," because AP alleges that AHN merely takes facts that AP has already placed in the public domain.  AHN, like any individual Internet user, is free to access AP's published reports.

In bringing this claim, AP is attempting to exercise a monopoly over all news and history as a whole.  The INS court noted that when the framers drafted Article I, §8, it is not to be supposed that they intended "to confer upon one who might happen to be the first to report a historic event the exclusive right for any period to spread the knowledge of it."  Id. at 234.

3

The Copyright Act makes clear that a copyright is not a tool by which a compilation author may keep others from using facts or data collected. Feist, 499 U.S. at 358 (holding that the compilation of facts (e.g., names, phone numbers and addresses) is not copyrightable). Thus, AP's assertion that AHN is "free-riding" is "indistinguishable from the right to reproduce, perform, distribute or display a work" governed by the Copyright Act. Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737, 756 (D. Md. 2003) (finding preemption where defendant's conduct was not qualitatively different than conduct that would infringe an exclusive right provided by the Copyright Act).

AP's "Hot News" claim is further weakened by the holding in Feist that an author is not entitled to protection of un-copyrighted facts merely because of the author's effort or cost in collecting and reporting these facts. Feist, 499 U.S. at 344-45. This "sweat of the brow" doctrine "eschewed the most fundamental axiom of copyright law – that no one may copy facts or ideas." Id. at 353. Feist cites INS favorably only to the extent that the facts in news articles are not subject to copyright protection. Id. at 353-354. Thus, AP cannot argue that it can obtain "property rights" in un-copyrighted facts because of its efforts in collecting them.

**D.    AP Misconstrues Congressional Intent as Interpreted by Feist.**

AP mistakenly contends that Congress did not intend to preempt claims for misappropriation of so-called "hot news." AP misinterprets Congress' intent based on a misreading of a single paragraph from the legislative history of § 301 set forth below:

> A cause of action is not preempted if it is in fact based neither on a right within the general scope of copyright as specified by § 106 or a right equivalent thereto. For example, state law should have the flexibility to afford a remedy (under traditional principles of equity) against a consistent pattern of unauthorized expression) constituting 'hot news,' in the traditional mold of [INS].

H. Rep. No. 1476, 94th Cong., 2d Sess. 132 (1976); see also S. Rep. No. 473, 94th Cong., 1st Sess. 116 (1975). This passage clearly ***distinguishes*** between (1) a cause of action labeled as

4

'misappropriation' which is preempted under § 301 and (2) a "consistent pattern of unauthorized appropriation by a competitor of the facts... constituting 'hot news,' in the traditional mold of [INS]." Therefore, AP's misappropriation claim under New York law is preempted under §301, unless it fits the specific mold of INS.

### E.  Florida Law Would Apply in a Conflict of Law Situation.

Should it be determined that federal law did not preempt state claims of misappropriation, AP's assertion that New York law should apply is incorrect; Florida law would apply. In New York, the locus of the tort is the dominant consideration. Torah Soft, Ltd. v. Drosnin, 224 F.Supp. 2d 704, 719 (S.D.N.Y. 2002). Florida has the most significant interest because it has the most significant contacts with the underlying facts of the alleged misappropriation. AHN and the individual defendants are all Florida citizens. It possesses no offices or assets in New York and none of the accused conduct took place here. The analysis does not, as AP asserts, turn on the issue of where the plaintiff feels harm. Id. at 720 (Israeli unfair competition law applied where the accused conduct occurred in Israel, though the alleged injury was felt in New York).

### F.  Under the Alleged Facts, Misappropriation is Not a Valid State Law Claim in Either Florida or New York.

Regardless of whether Florida or New York law applies (should the court decide the state claims are not preempted by federal law), AP's theory of misappropriation under state law remains viable only to the extent that Florida or New York has recognized such a cause of action. When federal law does not apply, a federal court sitting in diversity must consider the laws of the implicated states. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Even though federal law has preempted a state law remedy for misappropriation, rendering a discussion of state law moot, neither Florida nor New York law recognizes a cause of action for "misappropriation" under the facts presented.

5

No Florida opinion has ever recognized a cause of action for "hot news" misappropriation. Although AP asserts that CBS Inc. v. Garrod, 622 F.Supp. 532 (M.D. Fla. 1985) recognized a cause of action for misappropriation, that case dealt with piracy under the pre-Copyright Act Florida law of unfair competition. The closest claim to misappropriation in Florida is unfair competition. A successful claim requires elements of: 1) deceptive or fraudulent conduct of a competitor; 2) likelihood of consumer confusion. Third Party Verification, Inc. v. Signaturelink, Inc., 492 F.Supp. 2d 1314, 1324 (M.D. Fla. 2007). AP fails to allege any facts that support these requirements. Furthermore, Florida courts have rejected attempts to inject theories of misappropriation under INS into their common law, stating that the general rule is that an owner of literary or intellectual property terminates his private interest or common law rights by publication. Glazer v. Hoffman, 16 So. 2d 53, 55-56 (Fla.1943).

Although New York courts do recognize a cause of action called "misappropriation," it is subject to stringent limitations and would not apply to a mere copying of information that is freely available on the Internet. See Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 198 (2nd Cir. 2001) (finding that Defendant gained access to a plaintiff's business idea through fraud or deception or an abuse of a fiduciary or confidential relationship). Furthermore, in ABC, Inc. v. Flying J, Inc., 2007 U.S. Dist. LEXIS 13252, *26 (S.D.N.Y. 2007), the court held that bad faith is essential to establishing liability on a claim of unfair competition. Although AP alleges that AHN acted in bad faith, it fails to provide any supporting evidence, positing instead that bad faith is inherent in hot news misappropriation, which involves knowing interference by a competitor with a news agency's ability to sell its product. Compl. ¶ 80. AP cannot prevail on a claim that lawful use of facts that are in the public domain is somehow done in "bad faith."

6

### III.    AP FAILS TO STATE A VALID CLAIM UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA) (COUNT III).

The DCMA protects against a narrow form of copyright infringement: the removal of ***digital*** copyright management information (digital CMI).  See Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc., 524 F. Supp. 2d 1184, 1201-1202 (C.D. Cal. 2007).  In Textile Secrets the court stressed the importance of a "technological process," such as digital rights management (DRM), which protects music files from unauthorized copying, and held that that the DMCA did not extend protection to a copyright notice printed on a section of fabric. Id. at 1201-1202.

Here, AP's Complaint fails to assert that AHN has circumvented any digital protection of copyright information.  Rather, AP asserts only that AHN has violated the DMCA by removing AP's copyright notice – "© 2007 Associated Press" – and byline from AP news stories.  Compl. ¶ 1, 9; Pl. Opp at 16.  Such behavior is not protected by the DMCA.  Like the copyright notice in Textile Secrets, such an allegation is not protected under the DMCA.  Textile Secrets, 524 F. Supp. 2d at 1200.

Likewise, the court in IQ Group, Ltd. V. Wiesner Publishing LLC, 409 F. Supp. 2d 587, 597 (D.N.J. 2006) made clear "[§ 1202] should not be construed to cover copyright management performed by people, which is covered by the Copyright Act, as it preceded the DMCA; it should be construed to protect copyright management performed by the technological measures of automated systems."

AP advocates for an adoption of the court's interpretation of § 1202 in McClatchey v. Associated Press, 2007 U.S. Dist. LEXIS 17768 (W.D. Pa. March 9, 2007).  Pl. Opp. at 17-18.  The court in McClatchey takes an expansive view of § 1202, however, even considering this overly broad view of protection, the case is distinguishable from the facts at hand.  2007 U.S. Dist. LEXIS at *5.  In McClatchey, a "technological process" (a computer software program)

7

was used to embed copyright protections into photographs.  Id.  While the court in McClatchey did conclude that § 1202 included protection for non-digital information, there, a technological process was clearly present; the printing of "© 2007 Associated Press" at the end of news stories cannot be considered such a technological process.  Id.

**IV.   AP FAILS TO STATE A VALID CLAIM FOR INFRINGEMENT OF A REGISTERED TRADEMARK IN VIOLATION OF § 32 OF THE LANHAM ACT, 15 U.S.C. § 1114 (COUNT IV).**

**A.   AHN is Not Infringing Any of AP's Registered Marks; AHN is Engaging in a Nominative Fair Use of AP's Mark.**

AHN concedes the validity of AP's marks, and AHN does not use any of AP's registered marks at any time except when quoting directly from an AP news article.  In such a situation, the Lanham Act provides an explicit defense to a claim of trademark infringement in § 33(b)(4): a defendant is not infringing a plaintiff's mark if its "use of the name, term, or device charged to be an infringement is a use…used fairly and in good faith only to describe the goods or services of such party[.]" 15 U.S.C. § 1115(b)(4).  This "nominative fair use" defense is proven when (1) "the product or service in question must be one not readily identifiable without use of the trademark;" (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service;" and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." Merck & Co., 425 F. Supp. 2d at 413 (citing New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 308 (9th Cir. 1992)).

Satisfying the first two prongs (the ease of identifiability without the mark, and whether only a reasonably necessary amount of the mark is used) is simple: it would be impossible for AHN to attribute a quote to AP without the use of one of AP's marks.  Compl., Exs. 7-10.  Furthermore, when AHN attributes a quote to an AP news article, the AHN article simply states,

8

"According to an AP report". Compl., Ex. 22. Such usage of "AP" is the only mark that can be used to identify AP as the source of a quote.

In its opposition, AP tries to argue that Merck & Co. discourages resolving this issue at the motion to dismiss stage: "the existence of consumer confusion necessitates focusing on 'the minds of the relevant purchasers—an analysis based on a factual inquiry inappropriate to a motion to dismiss.'" Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 19 (quoting 425 F. Supp. 2d at 414). However, Merck & Co. was speaking generally; AP's excerpt removes the critical language, where the court partially grants the motion to dismiss. 425 F. Supp. 2d at 414-15. Merck & Co. makes clear that where a defendant is only referencing the actual goods or services which the trademark protects, without attempting to imitate or deceive, there is no likelihood of confusion as to the trademark holder's sponsorship or endorsement. Such reference is a nominative fair use of the trademark, and a motion to dismiss should be granted if such use is challenged.

Indeed, AP's own submissions have satisfied the three prongs of the "nominative fair use" test, proving that AHN's limited use of AP's registered marks constitutes a nominative fair use of the marks under § 33(b)(4) of the Lanham Act. AHN's use is a valid defense against AP's claim of trademark infringement under § 32 of the Lanham Act, and AP's claim under Count IV must be dismissed. See Dow Jones & Co. v. Intl' Sec. Exch., Inc., 451 F.3d 295, 307-08 (2d Cir. 2006) (dismissing a trademark infringement claim where challenged use was a fair use).

**V.     AP FAILS TO STATE A VALID CLAIM FOR UNFAIR COMPETITION AND MISREPRESENTATION IN VIOLATION OF § 43(A) OF THE LANHAM ACT, 15 U.S.C. §1125(A) (COUNT V).**

**A.     AP's Claims of False Association and Endorsement Fail Because AHN Properly Uses AP's Trademark to Identify Its News Service.**

    1.     AP Has Failed to State a Claim Against AHN For "Reverse Passing Off" Under § 43(a)(1)(A) of the Lanham Act.

9

Under § 43(a)(1)(A) of the Lanham Act, the only question before the court is whether AHN takes AP's news stories and passes them off as its own, and AHN does not. Without question, AHN *is* a news service, which delivers news stories to paying consumers who prefers AHN's presentation of current news stories in an easy-to-digest format. AP's own exhibit proves that it is merely the format and the manner of repackaging which makes a news service's work unique. AP's submitted copyright certificates state generally that the author's creation is "Original authorship of news articles; rewriting, editing & expanding previously published news articles; selection and arrangement of news articles". Compl. Exs. 2-6. But the "new material included" in each copyright is as follows: "For articles based on news reports from AP members, AP has compiled, selected, and arranged textual material, added additional expressive editorial content and textual material and rewritten, expanded, and edited the members' news reports." Id.

Regardless of where AHN gets the facts of its reports, it does exactly what AP does: compiles, selects, and arranges those facts, and then adds editorial content, turning them into AHN news stories. These stories, written by AHN reporters, are delivered to AHN customers, who prefer the short, easy-to-digest format of its news. Id. at Exs. 20-24. AP cannot challenge the very same method of news-gathering it performs itself as misrepresentation. Thus, AP has failed to state a claim against AHN for "reverse passing off", because AHN does not copy AP's news reports and pass them off as its own; AHN reports the facts of news stories in its own words, and attributes direct quotes to AP.

AP attempts to avoid the bar to its claim represented by Dastar Corp. v. Twentieth-Century Fox Film Corp., 539 U.S. 23 (2003) by arguing that Dastar only deals with a claim of "reverse passing off", which AP wrongly believes is irrelevant here. Dastar addresses precisely the question at issue here: the supposed "origin" of the news. In Dastar, the Supreme Court

10

interpreted the phrase "origin" of "goods" in § 43(a)(1)(A) of the Lanham Act. 539 U.S. at 31. Adjudicating a dispute between two video producers, the Supreme Court held that "the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." The Court explained that "[t]he words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." Id. Similarly, purchasers of news services do not typically care where the facts originated; their preferences are dictated by the presentation of those facts.

    2.    <u>AP Has Failed to State a Claim Against AHN For "Passing Off" Under § 43(a)(1)(A) of the Lanham Act.</u>

AP next argues that in properly attributing quotes to AP, AHN held itself out to be a licensee of AP, thus "passing off" AHN's news services as part of AP's service. Actually, AHN's proper attributions to AP exemplify the three purposes of trademark law laid out <u>Dastar</u>: federal trademark law "has no necessary relation to invention or discovery," but rather, by (1) preventing competitors from copying "a source-identifying mark," it (2) "reduces the customer's costs of shopping and making purchasing decisions," and (3) "helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." <u>Id.</u> at 34 (quoting <u>Trade-Mark Cases</u>, 100 U.S. 82, 94 (1879)). AHN does not pretend to be a licensee of AP by imitating or copying AP's mark or typical AP licensee language. By repackaging the facts in the public domain into a format which can be quickly and easily read, AHN's news services are unique; AHN's attributions to AP when necessary only make it more clear that AHN is not a licensee of AP. Thus, AP has failed to state a claim that AHN is "passing off" its products as if they were sponsored or endorsed by AP; AHN makes its separation from AP evident by referring to it as a separate entity. AP's claim for "passing off" under § 43(a)(1)(A) of the Lanham Act must be dismissed.

11

**B.    Because AHN has Neither Issued Advertising Which is Literally False Nor Been Likely to Deceive or Confuse Consumers With Advertising That is Literally True, AHN Has Not Violated § 43(a)(1)(B) of The Lanham Act, 15 U.S.C. § 1125(a)(1)(B).**

Section 43(a)(1)(B) of the Lanham Act creates a cause of action against a defendant who, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The test for whether an action by a defendant qualifies as "commercial advertising or promotion" is laid out in <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.</u>, 314 F.3d 48 (2d Cir. 2002): "The contested representations must be '(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services'; and, (4) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." 314 F.3d at 56.

AP alleges that AHN, "by its representations and acts, causes potential customers of its 'news service' to falsely believe that it is an AP licensee." Compl. ¶ 57; Pl. Opp. at 21. However, AP fails to show any actionable statement which "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." Memorandum in Support of Defendants' Renewed Motion to Dismiss ("Def. Mem.") at 23. To contradict this fact, AP provides the following:

> AP expects to show that to convince potential buyers to purchase its 'news service,' AHN makes that 'service' available to those customers, and that as a result they see numerous AHN stories that carry AP news with attribution. These stories, provided for promotional purposes, will be understood by those buyers as representing that AHN is authorized to edit and redistribute AP news content.

Pl. Opp. at 22. AP is apparently arguing (without supportive case law) that by properly attributing quotes to AP, AHN is pretending to be an AP licensee. This is clearly not the case— as shown by AP's exhibits, AHN does not attach the AP licensee statements which consumers

12

are accustomed to seeing.  Compl., Exs. 11, 20-24.  AP licensees would not have statements like "According to an AP report" in their stories, because their stories *are* the AP reports.  Id. at Ex. 22.

### VI. AP'S CLAIM OF UNFAIR COMPETITION UNDER NEW YORK COMMON LAW (COUNT VI) IS PREEMPTED BY § 301(A) OF THE COPYRIGHT ACT.

As its final trademark infringement claim, AP alleges unfair competition under New York common law.  "The standard for unfair competition under the Lanham Act differs very little from that of unfair competition under New York law.  The essence of both sources of protection is the likelihood that the consuming public will be confused about the source of the allegedly infringing product."  E. R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc., 536 F. Supp. 523, 526-27 (S.D.N.Y. 1982).

As explained above, AP's unfair competition claims fail to state a claim for which relief may be granted under the Lanham Act.  Therefore, the identical claims under New York common law fail as well, and should be dismissed.  Thomas Publ'g, 2007 U.S. Dist. LEXIS 55086 at *11-13 (holding that misappropriation and misrepresentation claims under New York unfair competition laws were preempted).

### VII. AP FAILS TO STATE A VALID CLAIM FOR BREACH OF CONTRACT (COUNT VII).

AmeriClicks and AP entered into the contract in question on December 1, 2003.  Compl. ¶ 46.  The contract specifically provided that Press Association ("PA"), a wholly owned subsidiary of AP, was granting AmeriClicks "a non-transferable limited license."  Ex. 11, § 2.  The contract further provided that "[a]ny attempted Assignment by SUBSCRIBER without the express prior written consent of AP shall be void and have no effect on the rights or obligations of either party."  Id. at § 10.8.

13

AHN purchased AmeriClicks in 2004. AP never provided written consent for the Assignment of AmeriClick's obligations under the contract to AHN. AHN never became bound by the terms of the contract. Any breach of contract claim could only be sustained against AmeriClicks, which is now dissolved. Thus, since AHN was never entered into any contract with AP, AP cannot state claim for breach of this contract.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts I, III, IV, V, VI, and VII.

Dated:	June 27, 2008
	New York, New York

										Respectfully submitted,

							By:	s/ Steven E. Lipman
								Steven E. Lipman (SL-9395)
								Robert L. Jacobson (*pro hac vice*)
								DARBY & DARBY P.C.
								7 World Trade Center
								250 Greenwich Street
								New York, NY  10007
								Telephone: 212.527.7700
								Facsimile:  212.527.7701
								E-mail:  slipman@darbylaw.com
								         rjacobson@darbylaw.com

								*Attorneys for Defendants*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing:

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR RENEWED MOTION TO DISMISS**

was submitted to the Court's CM/ECF system on June 27, 2008 for service by the Court's

Electronic Transmission Facilities upon the following:

>Andrew Lawrence Deutsch
>Christine M. Jaskiewicz
>DLA Piper US LLP (NY)
>1251 Avenue of the Americas
>New York, NY 10020
>(212) 335-4500
>Fax: (212) 335-4501
>Email:   andrew.deutsch@dlapiper.com
>         christine.jaskiewicz@dlapiper.com
>
>*Counsel for Plaintiff*
>*The Associated Press*

>s/ Steven E. Lipman
>By:  Steven E. Lipman