UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THE ASSOCIATED PRESS,

                          Plaintiff,                    08 Civ. 323 (PKC)

    -against-                                 MEMORANDUM
                                                   AND ORDER

ALL HEADLINE NEWS CORP., AHN MEDIA
CORP., W. JEFFREY BROWN and DANIELLE
GEORGE,
                         Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        This action arises out of the activities of All Headline News Corp. ("AHN"), an online venture that disseminates news reports to customer web sites, including reports of breaking news. The Associated Press ("AP"), which describes itself as "one of the world's oldest and largest news organizations" and "the 'gold standard' of objective journalism" (Amended Complaint ("AC") ¶ 2), brings this action alleging that the defendants have engaged in "free riding" on the AP's news articles. Specifically, it alleges that defendants have unlawfully copied and altered AP news stories in violation of the federal Copyright Act, 17 U.S.C. §§ 106, the Digital Millennium Copyright Act, 17 U.S.C. § 1202, the Lanham Act, 15 U.S.C. §§ 1114 & 1125(a), and New York common law.

        Pursuant to Rule 12(b)(6), Fed. R. Civ. P., the defendants move to dismiss all claims except Count Two, which alleges copyright infringement. For the reasons explained below, the defendants' motion is granted in part and denied in part.

BACKGROUND

For the purposes of the motion, the allegations of the Amended Complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiff Associated Press as the non-movant. United States v. City of New York, 359 F.3d 83, 91 (2d Cir. 2004), cert. denied, 543 U.S. 1146 (2005).

The Associated Press, through its employees, affiliates and subsidiaries, engages in effort and great expense "to get access to news and to gather, report, package and transmit news stories from every country in the world." (AC ¶¶ 2, 22-26, 34.) It employs a large number of reporters throughout the United States and internationally, and retains editors who conform stories to the organization's reporting and writing standards. (AC ¶¶ 38-40.) The AP is particularly focused on providing reports of timely, breaking news. (AC ¶¶ 28, 37.) It makes its news available to a variety of subscribing publications and licenses its stories to clients with internet web sites. (AC ¶¶ 2-3, 27.) It offers various licensing options for its clients, who pay a subscription fee and agree to terms and limitations on their use of AP stories. (AC ¶¶ 30-31, 33, 35-36.) Each story contains copyright information and identifies the Associated Press as author and/or owner of the story. (AC ¶ 32.) The AP holds registered copyrights relating to its news stories and photographs, as well as registered trademarks pertaining to its goods and services. (AC ¶¶ 42-43.)

By contrast, defendant AHN does not undertake any original reporting. (AC ¶ 4.) It hires "poorly paid individuals" to find news stories on the internet and prepare them for republication under the AHN banner, either rewriting the text or copying the stories in full. (AC ¶ 5.) Defendants W. Jeffrey Brown and Danielle George,

who oversee AHN's day-to-day operations, instruct AHN writers to locate breaking news stories and revise them for AHN use. (AC ¶¶ 4-5, 57.) Many of AHN's stories are based on the original work of the AP, but they are marketed as originating with AHN. (AC ¶¶ 6-7.) Brown and George instructed reporters to remove or alter the identification of the AP as author or copyright holder of the articles. (AC ¶¶ 57, 61.) Once completed, AHN distributes its articles to paying clients – web sites to which AHN markets itself as a news provider. (AC ¶¶ 5, 54-55, 59-60.) As noted, the AP characterizes AHN's conduct as "free riding" on the original reporting of others. (AC ¶ 8.)

The AP identifies six specific instances of alleged copyright infringement by AHN. (AC ¶ 65.) It alleges that AHN copied the text of stories legitimately licensed to subscribers, including the AP writers' original expressions. (AC ¶¶ 66-67.) The AP also alleges that it has lost customers because of AHN's "free riding." (AC ¶¶ 70-72.)

MOTION TO DISMISS STANDARD

Rule 8(a)(2), Fed. R. Civ. P., requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (quotation omitted, ellipsis in original). To survive dismissal under Rule 12(b)(6), plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief above the speculative level. ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S.Ct. at 1965). The Amended Complaint is

measured against a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original), cert. granted, 128 S. Ct. 2931 (2008). This "does not require heightened fact pleading of specifics, [but] it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 127 S.Ct. at 1974) (second alteration in original); see also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to defeat the motion. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotations omitted) (quoting Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)). Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See Int'l Audiotext Network, Inc. v. Am. Telephone & Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995).

ANALYSIS

I.  The Motion to Dismiss Count One is Denied.

The cause of action for misappropriation of "hot news" has its origins in International News Service v. Associated Press, 248 U.S. 215 (1918), a decision arising under federal common law and one that pre-dates Erie R. Co. v. Tompkins, 304 U.S. 64

(1938). The defendants move to dismiss this claim on two grounds. First, they contend that choice of law requires that plaintiff's claim of misappropriation of hot news be considered under the law of Florida, which, defendants contend, has rejected such a cause of action. Second, they contend that a claim for misappropriation of hot news is preempted by the federal Copyright Act.

International News Service held that breaking news (sometimes described as "hot news") was the "quasi property" of a news-gathering organization, 248 U.S. at 236, and thus subject to protection against a competitor's interference. The Supreme Court held that allowing one news agency to appropriate and profit from the work of another would "render publication profitless, or so little profitable as in effect to cut off the service by rendering the cost prohibitive in comparison with the return." Id. at 241. Newsgathering carries with it "the expenditure of labor, skill, and money," and the Supreme Court held that its appropriation by another "is endeavoring to reap what it has not sown." Id. at 239-40. Although Erie would render the federal common law origins of International News Service non-binding in the federal courts, the cause of action is still recognized under the laws of various states, including the state of New York. See generally Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 845 (2d Cir. 1997) (claim for misappropriation of hot news is valid under New York law and not preempted by the federal Copyright Act); see also Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 567-68 (1959); Bond Buyer v. Dealers Digest Publishing Co., 25 A.D.2d 158, 159-60 (1st Dep't 1966); Capitol Records, Inc. v. Naxos of America, Inc., 262 F. Supp. 2d 204, 209-10 (S.D.N.Y. 2003).

Defendants assert that the action is governed by the law of the state of

Florida, not New York. They argue that Florida has the most significant interest in this claim. The Amended Complaint alleges defendant AHN to be a privately held corporation with its principal place of business in Florida and organized under the laws of that state. (AC ¶ 13.) The individual defendants are alleged to reside in Florida. (AC ¶¶ 14-15.) The Amended Complaint also alleges that AHN maintains an office and/or a bureau in New York. (AC ¶ 16.)

Under Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496-97 (1941), I must apply the choice-of-law rules of New York, the forum state. Pursuant to New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Insurance Co., 81 N.Y.2d 219, 223 (1993).

The plaintiff argues that no conflict exists between the laws of New York and Florida, and that a claim for hot news misappropriation "would" be recognized under Florida law. As evidence for this prediction, plaintiff cites Morris Communications Corp. v. PGA Tour, Inc., 117 F. Supp. 2d 1322, 1328-29 (M.D. Fla. 2000), a Sherman Act opinion issued by a district court that cites the Second Circuit's NBA opinion as part of an "essential facilities" antitrust analysis. No authority has been cited to show that Florida recognizes a cause of action for hot news misappropriation. Then again, defendants have not persuasively demonstrated that Florida would not recognize such a claim.[1] Because of the uncertainty as to whether an actual conflict exists, I will assume

---

[1] Defendants' reliance on Glazer v. Hoffman, 16 So.2d 53, 55-56 (Fla. 1943), as authority for rejecting a hot news misappropriation claim also is unavailing. Glazer considered the copyright and common law protections afforded to magic routines that involve the drinking of beverages. It concluded that a "sleight of hand performance whereby the thirty odd drinks are produced from 'seemingly' empty beakers" did not constitute "an intellectual production protected by the common law," and declined to apply International News Service in that context. Id. at 55. Glazer's analysis is inapplicable here.

for the purposes of this motion that there is such a conflict, and proceed to the next step of a choice-of-law analysis.

"[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 382 (1969). The parties have not explained in meaningful detail the respective interests of Florida and New York as relates to the recognition of a hot news misappropriation claim. AHN argues that it hires writers out of its Florida office and contracts for them to write stories from locations around the world, and that editing by AHN then occurs in Florida, where AHN web servers also are located. (AC ¶¶ 57-60.) Plaintiff asserts that as a non-profit corporation headquartered in New York, it suffered economic loss in New York, and that New York law therefore governs.

When a defendant's allegedly tortious conduct arises in one jurisdiction and the injury occurs in another, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195 (1985). Generally, the location of the tort is the place "where the plaintiff suffered the injury sued upon." Ackerman v. Price Waterhouse, 252 A.D.2d 179, 192-93 (1st Dep't 1998). The parties have cited no opinions concerning place-of-injury considerations in a hot news misappropriation case, and I am aware of none. However, the courts of the Second Circuit have often addressed the considerations employed for a choice-of-law analysis for a misappropriation claim. See Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 968

(2d Cir. 1997) (applying New York law when defendant maintained New York offices, plaintiff maintained domicile and office in New York, and misappropriation apparently occurred in New York); Stewart v. World Wrestling Federation Entertainment, Inc., 2005 WL 66890, at *1 (S.D.N.Y. Jan. 11, 2005) (applying New York law in part because "whatever harm incurred to plaintiff due to the alleged misappropriation of his ideas and concepts was felt in New York"); Frink America, Inc. v. Champion Road Machinery Ltd., 48 F. Supp. 2d 198, 205 (N.D.N.Y. 1999) (applying law of New York rather than Canada when New York plaintiff was allegedly injured in New York based on conduct that occurred in Canada).

Here, New York law governs the plaintiff's claims. The plaintiff is headquartered in New York and suffered the alleged injury in New York. AHN is alleged to have maintained an office and/or bureau in New York, located at 1230 Avenue of the Americas, Rockefeller Center, New York, NY (AC ¶ 16), a contention that neither party mentions in their motion papers. Assuming as true the Amended Complaint's allegations, the property of a New York newsgathering organization has been misappropriated.

There is no support for an argument that the fundamental public policy of Florida would be contravened by applying New York law. See Don King Productions, Inc. v. Douglas, 742 F. Supp. 786, 791 n.6 (S.D.N.Y. 1990) (discussing conflicting public policies as part of a choice-of-law analysis). In addition, the defendants tacitly acknowledge that Florida courts have not clearly spoken to the issue. (Def. Mem. at 9 ("the Florida Supreme Court today would not recognize a common law theory of 'misappropriation' to restrict competition . . . .") (emphasis added).)

A cause of action for misappropriation of hot news remains viable under New York law, and the Second Circuit has unambiguously held that it is not preempted by federal law. NBA holds that under New York law, a valid, non-preempted claim for misappropriation arises when:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

NBA, 105 F.3d at 845; see also Financial Information, Inc. v. Moody's Investment Service, Inc., 808 F.2d 204, 209 (2d Cir. 1986) (hot news misappropriation is "a branch of the unfair competition doctrine not preempted by the Copyright Act according to the House Report."). NBA's five elements are set forth in the Amended Complaint. (AC ¶¶ 70-82.) The defendants have set forth no persuasive reason why the Second Circuit's preemption analysis in NBA should be rejected or overruled by this Court, and fails to explain how a district court would be empowered to do so in any event.

The defendants' motion to dismiss Claim One is denied.

II. The Motion to Dismiss Count Three is Denied.

The Amended Complaint's third cause of action alleges that defendants violated the Digital Millennium Copyright Act ("DMCA") by removing and/or altering copyright-management information from Associated Press news reports, which is conduct made unlawful by 17 U.S.C. § 1202(b). (AC ¶¶ 90-97.) The Amended Complaint alleges that the Associated Press and its members and affiliates identify the

Associated Press as the owner and author of published articles. (AC ¶ 32.) It asserts that the defendants are "intentionally altering or removing copyright management information appearing in AP reports, in violation of the [DMCA]." (AC ¶ 9.) The DMCA defines "copyright management information" as including "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3). Section 1202(e) contains limitations on liability not at issue here.

Defendants argue that the DMCA should be construed to apply only "to protect copyright management performed by the technological measures of automated systems." IQ Group, Ltd. v. Wiesner Publishing LLC, 409 F. Supp. 2d 587, 597 (D.N.J. 2006); see also Textile Secrets Int'l, Inc. v. Ya-Ya Brand, Inc., 524 F. Supp. 2d 1184, 1201-02 (C.D. Cal. 2007). IQ Group and Textile Secrets relied heavily on the DMCA's legislative history in reaching their conclusions about the goals and purpose of the DMCA and limiting its reach. As the plaintiff notes, the Second Circuit has held that legislative history should not be considered as a first resort, and that statutory language should be applied as written:

> When a statute's language is clear, our only role is to enforce that language "'according to its terms.'" Arlington Central School District Board of Education v. Murphy, 126 S.Ct. 2455, 1459 (2006) (quoting Hartford Underwriters Insurance co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000)). We "do not resort to legislative history to cloud a statutory text that is clear" even if there are "contrary indications in the statute's legislative history." Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994); see also Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal quotations and citations omitted)).

Arciniaga v. General Motors Corp., 460 F.3d 231, 235 (2d Cir. 2006).  The defendants have cited no textual support for limiting the DMCA's application to "the technological measures of automated systems" – a phrase that appears nowhere in the statute.  Defendants have come forth with no basis to dismiss plaintiff's DMCA claim at the Rule 12 stage.  Accord McClatchey v. Associated Press, 2007 WL 776103, at **5-6 (W.D. Pa. Mar. 9, 2007) (language of DMCA does not limit statute's application merely to digital information or automated copyright protection).

   The defendants' motion to dismiss Count Three is denied.

   III.  <u>The Motion to Dismiss Count Four is Granted.</u>

   Count Four alleges that the Associated Press trademark has been infringed under section 32 of the Lanham Act, 15 U.S.C. § 1114(1).  According to the Amended Complaint, the plaintiff has valid registered trademarks in "AP," "ASSOCIATED PRESS," and "THE ASSOCIATED PRESS."  (AC ¶¶ 43, 99.)  It contends that the defendants infringe upon the marks by using them "in connection with the sale and offering for sale of the AHN 'news service,'" thereby causing confusion and mistake among clients and potential clients.  (AC ¶ 10.)

   In their motion papers, both parties rely on fact-intensive arguments, including discussion of AHN's usage of its own mark, its editing process and the impressions of reasonable consumers.  Such factual discussion is better left to the summary judgment stage or trial.  No party suggests that I should convert this motion into one for summary judgment and I decline to do so.

   However, the defendants also point out the thinness of the plaintiff's

trademark allegations.  It is unclear from the Amended Complaint precisely what conduct by the defendants is alleged to have infringed the plaintiff's marks.  Read with extraordinary generosity, paragraph 57, at most, vaguely hints that AHN's articles cite to or reference the plaintiff's marks.  ("[W]here an original story is copied in whole or part, the AHN writers are told by Brown and George to attribute the directly-copied portion of the news source . . . ."  (AC ¶ 57.))

In Dow Jones & Company, Inc. v. International Securities Exchange, Inc., 451 F.3d 295, 307 (2d Cir. 2006), Judge Leval concluded that a trademark claim "fails under even the liberal standard of Rule 12(b)(6)" when a complaint "consists of conclusory allegations unsupported by factual assertions." (quotation marks omitted)  The opinion also dismissed a trademark claim that arose because the defendant referred to the plaintiff's mark by name, and observed that trademark law "generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product."  Id. at 308.  The memoranda of law indicate that plaintiff's claim is based on a theory that AHN's articles mislead readers into believing that they are issued by the plaintiff, inasmuch as the text of one AHN article attributed certain facts to Associated Press reporting by using a phrase like "[a]ccording to an AP report."  (See Def. Mem. at 20-21; Pl. Mem. at 18-19.)  However, the Amended Complaint consists entirely of "conclusory allegations" that lack factual support, and the theory of liability suggested in the plaintiff's memorandum of law is of the type that Judge Leval concluded must fail as a matter of law.  Dow Jones, 451 F.3d at 307-08.

The plaintiff's trademark infringement claim is dismissed.

IV. <u>The Motion to Dismiss Count Five is Granted.</u>

Plaintiff's fifth cause of action asserts an unfair competition count under the Lanham Act, 15 U.S.C. § 1125(a). The Lanham Act claim alleges that defendants falsely indicate that AHN maintains a "news division" when it does no original reporting; that AHN falsely implies that it has permission to republish Associated Press articles; and that AHN wrongfully deletes information that would identify sources of the reports that it publishes. (AC ¶ 105.) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Though it employs broad terms, section 43(a) "does not have boundless application as a remedy for unfair trade practices." <u>Alfred Dunhill, Ltd. v. Interstate Cigar Co.</u>, 499 F.2d 232, 237 (2d Cir. 1974). "Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill. . . . The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 32-33 (2003). "[A]s a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 473 (2d Cir. 1995).

AHN's self-described status as a news-gathering organization is an inadequate basis for a Lanham Act claim. As framed here, this claim would require the Court or a jury to sit in judgment of whether a self-described news service is required by the Lanham Act to do "original reporting." (AC ¶ 105.) Assuming the truth of plaintiff's allegation that AHN labels itself a "news service" but employs no reporters, the statute does not render such conduct unlawful. The Second Circuit has held that puffery (defined in part as "subjective claims" not susceptible to being proved true or false) is not actionable under the Lanham Act, and "'amounts to a seller's privilege to lie his head off, so long as he says nothing specific.'" Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007) (quoting Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993)). Here, the definition of a "news service" does not lend itself to absolute criteria, and is exempt from the reach of section 43(a). See id. at 160.

As to the plaintiff's allegation that consumers and potential AP customers could mistakenly believe that AHN was affiliated with the AP, this claim suffers from the same flaw as plaintiff's trademark infringement claim: a failure to allege more than the conclusory and implausible in the Amended Complaint. In opposition to the defendants' motion to dismiss, plaintiff again relies on paragraph 57 of the Amended Complaint, which does not assert (or even imply) a risk of consumer confusion. See Dastar, 539 U.S. 23 at 32 ("Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill."). Instead, paragraph 57 sets forth allegations concerning the process used by AHN writers to edit stories, including an alleged instruction to omit the creators of original source material when paraphrasing them but to cite them by name when directly quoted. (AC ¶ 57.) The paragraph does not

allege false or misleading representations by AHN asserting that its own work was authorized by the AP. Though it might be construed to implicate an allegation of reverse passing off, see Integrative Nutrition Corp. v. Academy of Healing Nutrition, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) (reverse passing off claim is equivalent to a claim of copyright infringement), the plaintiff explicitly disclaims any allegation of reverse passing off, and instead argues "that AHN has falsely represented that its own services are licensed or otherwise authorized by AP." (Pl. Mem. at 22.) Conclusory assertions in a memorandum of law are not a substitute for plausible allegations in a complaint. Count Five is dismissed.

V. The Motion to Dismiss Count Six is Denied.

For the purposes of this motion, the defendants have lumped together the plaintiff's Lanham Act section 43(a) claim with plaintiff's cause of action for New York common law unfair competition, and they move for their dismissal in tandem. As a result, the defendants' briefing papers do not distinguish whether and to what extent the causes of action differ, including whether they share common elements for pleading purposes. Instead, the defendants argue, in conclusory fashion, that "[t]he claims under the New York common law of unfair competition must be dismissed for the same reasons" as the Section 43(a) Lanham Act claim. (Def. Mem. at 24.) Defendants fail to cite to any authority or to explain in any detail why this should be the case.

Defendants additionally contend that the unfair competition claim is preempted by section 301(a) of the Copyright Act. The Second Circuit has held that certain common law unfair competition claims are preempted by the Copyright Act. See

Kregos v. Associated Press, 3 F.3d 656, 666 (2d Cir. 1993) (federal copyright law preempts a New York common law misappropriation claim when "the claim contains no element to qualitatively differentiate it from those areas protected by copyright"). However, federal law does not preempt misappropriation claims that a defendant "passed off" copies made by one creator as those of another. Princess Fabrics, Inc. v. CHF, Inc., 922 F.2d 99, 104 (2d Cir. 1990). Given the lack of clarity in defendants' preemption argument, as well as the plaintiff's contention in its motion papers that its misappropriation claim is based on a passing-off theory (Pl. Mem. at 22), the state-law misappropriation claims are not dismissed on preemption grounds.

CONCLUSION

The defendants' motion to dismiss is denied as to Counts One, Three and Six, and granted as to Counts Four and Five, which are dismissed.

SO ORDERED.

*[signature]*
P. Kevin Castel
United States District Judge

Dated: New York, New York
February 17, 2009